**No. 24-10933-H**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————

TIFFANY WINGO, ET AL.,

*Plaintiffs/Appellants,*

v.

BRANSON HARRIS, ET AL.,

*Defendants/Appellees.*

———————————

On Appeal from the United States District Court
for the Northern District of Georgia

Case No. 1:20-cv-03662-VMC
Hon. Victoria M. Calvert, District Judge

———————————

**APPELLANTS' APPENDIX VOLUME I**

———————————

Timothy J. Gardner
Georgia Bar No. 115430
Gardner Trial Attorneys, LLC
3100 Cumberland Blvd., Suite 1470
Atlanta, Georgia 30339
Phone: 770-693-8202
tjg@gardnertrialattorneys.com

June 11, 2024

INDEX OF APPENDIX

Docket/Tab #

Volume I

District Court Docket Sheet ..........................................................................A

Plaintiffs' Complaint ...................................................................................1

Gordon, Harris, and Wilkerson's Answer to Plaintiffs' Complaint ...................... 17

Plaintiffs' Third Amended Complaint… ..........................................................…...166

Gordon, Harris, Marshall, McPhee, and Wilkerson's
Answer to Plaintiff's Third Amended Complaint ...............................................175

Marshall's Deposition Transcript Excerpts ....................................................... 191-4

Volume II

Harris' Deposition Transcript Excerpts ............................................................ 191-5

Gordon's Deposition Transcript Excerpts ......................................................... 191-6

Wilkerson's Deposition Transcript Excerpts....................................................... 191-7

Dr. Kenneth Vega's Deposition Transcript ........................................................ 191-8

Defendants' Brief in Support of Motion for Summary
Judgment. ...................................................................................................... 196-1

Defendants' Motion to Exclude Testimony of Dr. Brian
Myers and Mark Johnson with Brief in Support....................................................198

Plaintiffs' Response in Opposition to Defendants' Motion to
Exclude Testimony of Dr. Brian Myers and Mark Johnson..................................207

Plaintiffs' Response in Opposition to Defendants' Motion
for Summary Judgment…………………………………………………... ......209

Dr. Brian Myers' Expert Report……………………………………..…………209-27

Volume III

Dr. Brian Myers' Deposition Transcript ...........................................................211-2

Visser's Deposition Transcript Excerpts ..........................................................211-3

Womack's Deposition Transcript Excerpts ......................................................211-6

Plaintiff's Notice of Filing EME (1 USB)—Exhibit 7: Infirmary
Video View 1; Exhibit 8: Marshall's Internal Affairs Interview
Audio; Exhibit 9: Infirmary Video View 2; Exhibit 11: Marshall
and Wilkerson's Internal Phone Call; Exhibit 12: Marshall
and Harris' Internal Phone Call; Exhibit 18: Corridor Video;
Exhibit 19: Outside Padded Cell Video; Exhibit 20: Inside
Padded Cell Video; Exhibit 22: Vanderbogart's Internal Affairs
Video Interview; and Exhibit 34: Wilkerson' Internal Affairs Video
Interview ...........................................................................................................212

Plaintiff's Notice of filing EME (1 USB)—Exhibit 6: Infirmary
Video View 1; Exhibit 7: Infirmary Video View 2; Exhibit 9:
Marshall and Harris' Internal Phone Call; Exhibit 12: Marshall
and Wilkerson's Internal Phone Call; Exhibit 14: Nurse Visser's
Internal Affairs Video Interview; Exhibit 15: Corridor Video;
Exhibit 16: Outside Padded Cell Video; and Exhibit 17: Inside
Padded Cell Video  ...........................................................................................213

Plaintiffs' Amended Response and Objections to Defendant's
Statement of Undisputed Material Facts to Motion
for Summary Judgment...…………….................................................................221

Defendants' Reply Brief to Plaintiff's Response in
Opposition to Defendants' Motion to Exclude
Dr. Brian Myers and Mark Johnson……………………... ..............................223

Defendants' Reply Brief to Plaintiff's Response
in Opposition to Defendants' Motion for Summary Judgment…………………224

## Volume IV

Defendants' Response to Plaintiffs' Additional Facts in Opposition
to Defendants' Motion for Summary Judgment………………………...………....225

Order Granting Defendants' Motion for Summary Judgment
and Motion to Exclude Testimony of Dr. Brian Myers, denying
Plaintiffs' Motion for Partial Summary Judgment, and denying
as moot Plaintiffs' Motion to Exclude Defendants' Expert
James C. Upshaw, Downs, M.D. ………………………...................................227

Judgment………………………………………………………………………....228

Notice of Appeal…………………………………………………………...…..230

Certificate of Service…………………………………………………………….B

DISTRICT COURT DOCKET SHEET / TAB A

**U.S. District Court**
**Northern District of Georgia (Atlanta)**
**CIVIL DOCKET FOR CASE #: 1:20-cv-03662-VMC**

| | |
|---|---|
| Wingo et al v. WellStar Health System, Inc. et al | Date Filed: 09/03/2020 |
| Assigned to: Judge Victoria M. Calvert | Date Terminated: 02/26/2024 |
| Case in other court: USCA- 11th Circuit, 24-10933-HH | Jury Demand: Both |
| Cause: 42:1983 Civil Rights Act | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Tiffany Wingo**
*as Administrator of the Estate of Kevil Wingo, Sr.*

represented by **Henrietta G. Brown**
Gardner Trial Attorneys, LLC
Suite 1470
3100 Cumberland Blvd.
Atlanta, GA 30339
770-693-8202
Fax: 404-393-9838
Email: hgb@gardnertrialattorneys.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy J. Gardner**
Gardner Trial Attorneys, LLC
Suite 1470
3100 Cumberland Blvd.
Atlanta, GA 30339
770-693-8202
Fax: 404-393-9838
Email: tjg@gardnertrialattorneys.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kieara Wingo**
*as surviving child of Kevil Wingo, Sr.*

represented by **Henrietta G. Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy J. Gardner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Angel Calloway**
*as mother and next friend of Erika Wingo, surviving minor child
of Kevil Wingo, Sr.*
*TERMINATED: 04/25/2023*

represented by **Henrietta G. Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy J. Gardner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Fatima Thomas**
*as mother and next friend of Kevil Wingo, Jr., surviving minor
child of Kevil Wingo, Sr.*
*TERMINATED: 04/25/2023*

represented by **Henrietta G. Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy J. Gardner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Erika Wingo**
*as Surviving Child of Kevin Wingo, Sr.*

represented by **Henrietta G. Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy J. Gardner**
(See above for address)

**Plaintiff**

**Esq. Teri Fields**
*Conservator of Kevil Wingo, Jr., Surviving Minor Child of Kevil Wingo, Sr.*

represented by **Henrietta G. Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy J. Gardner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**WellStar Health System, Inc.**
*TERMINATED: 09/01/2021*

represented by **Paul E. Weathington**
Weathington LLC-Atl
Suite 3900
191 Peachtree Street, NE
Atlanta, GA 30303
404-524-1600
Email: pweathington@weathington.com
*LEAD ATTORNEY*

**Robert Donald Ingram**
Moore Ingram Johnson & Steele, LLP -Atl
326 Roswell St.
Suite 100
Marietta, GA 30060
770-429-1499
Email: ringram@mijs.com
*LEAD ATTORNEY*

**Ryan M. Ingram**
Moore Ingram Johnson & Steele, LLP -Atl
326 Roswell St.
Suite 100
Marietta, GA 30060
770-429-1499
Email: RMIngram@mijs.com
*LEAD ATTORNEY*

**Gabe Banks**
Weathington LLC-Atl
Suite 3900
191 Peachtree Street, NE
Atlanta, GA 30303
404-891-9280
Fax: 404-891-9283
Email: gabe@banksweaver.com

**Marie Wilcox**
MMPO Defense at MagMutual
PO Box 52979
30355
Atlanta, GA 30355
470-877-1036
Email: mwilcox@mmpodefense.com

**Maximilian Philip Perwich**
Moore Ingram Johnson & Steele, LLP -Atl
326 Roswell St.
Suite 100
Marietta, GA 30060
770-429-1499
Email: mpperwich@mijs.com

**Defendant**

**Annaleen Visser**
*R.N.*
*TERMINATED: 09/01/2021*

represented by **Jacob Stalvey O'Neal**
Hall Booth Smith, P.C. - ATL
191 Peachtree Street Northeast
Suite 2900
Atlanta, GA 30303
404-954-5000
Fax: 404-954-5020
Email: joneal@hallboothsmith.com

**Meghan Hatfield Yanacek**
Hall Booth Smith, PC
191 Peachtree St., Suite 2900
20th Floor
Atlanta
Atlanta, GA 30303
404-954-6940
Fax: 404-954-5400
Email: meg@summervillefirm.com
*LEAD ATTORNEY*

**Russell Alan Britt**
Hall Booth Smith, P.C. - ATL
191 Peachtree Street Northeast
Suite 2900
Atlanta, GA 30303
404-954-5000
Email: rbritt@hallboothsmith.com
*LEAD ATTORNEY*

**R. David Ware**
Hall Booth Smith, P.C. - ATL
191 Peachtree Street Northeast
Suite 2900
Atlanta, GA 30303
404-954-5400
Email: dware@hallboothsmith.com

**Defendant**

**Yvette Burton**
*R.N.*
*TERMINATED: 09/01/2021*

represented by **Paul E. Weathington**
(See above for address)
*LEAD ATTORNEY*

**Robert Donald Ingram**
(See above for address)
*LEAD ATTORNEY*

**Ryan M. Ingram**
(See above for address)
*LEAD ATTORNEY*

**Gabe Banks**
(See above for address)

**Maximilian Philip Perwich**
(See above for address)

**Defendant**

**Shanna Griffith**
*R.N.*
*TERMINATED: 09/01/2021*

represented by **Paul E. Weathington**
(See above for address)
*LEAD ATTORNEY*

**Robert Donald Ingram**
(See above for address)
*LEAD ATTORNEY*

**Ryan M. Ingram**
(See above for address)
*LEAD ATTORNEY*

**Gabe Banks**
(See above for address)

**Maximilian Philip Perwich**
(See above for address)

**Defendant**

**Kelly Jones**
*L.P.N.*
*TERMINATED: 09/01/2021*

represented by **Paul E. Weathington**
(See above for address)
*LEAD ATTORNEY*

**Robert Donald Ingram**
(See above for address)
*LEAD ATTORNEY*

**Ryan M. Ingram**

*(See above for address)*
*LEAD ATTORNEY*

**Gabe Banks**
(See above for address)

**Maximilian Philip Perwich**
(See above for address)

**Defendant**

**Samantha Garland**                                    represented by **Paul E. Weathington**
*R.N.*                                                                          (See above for address)
*TERMINATED: 09/01/2021*                                          *LEAD ATTORNEY*

                                                                              **Robert Donald Ingram**
                                                                              (See above for address)
                                                                              *LEAD ATTORNEY*

                                                                              **Ryan M. Ingram**
                                                                              (See above for address)
                                                                              *LEAD ATTORNEY*

                                                                              **Gabe Banks**
                                                                              (See above for address)

                                                                              **Maximilian Philip Perwich**
                                                                              (See above for address)

**Defendant**

**Shannea Hopkins**                                    represented by **Paul E. Weathington**
*L.P.N.*                                                                        (See above for address)
*TERMINATED: 09/01/2021*                                          *LEAD ATTORNEY*

                                                                              **Robert Donald Ingram**
                                                                              (See above for address)
                                                                              *LEAD ATTORNEY*

                                                                              **Ryan M. Ingram**
                                                                              (See above for address)
                                                                              *LEAD ATTORNEY*

                                                                              **Gabe Banks**
                                                                              (See above for address)

                                                                              **Maximilian Philip Perwich**
                                                                              (See above for address)

**Defendant**

**Major Branson Harris**                               represented by **Hugh William Rowling , Jr.**
*individually*                                                                 Office of Cobb County Attorney
                                                                              Law Department
                                                                              100 Cherokee Street
                                                                              Suite 350
                                                                              Marietta, GA 30090-7003
                                                                              770-528-4000
                                                                              Email: H.William.Rowling@cobbcounty.org
                                                                              *LEAD ATTORNEY*
                                                                              *ATTORNEY TO BE NOTICED*

                                                                              **Lauren S. Bruce**
                                                                              Cobb County Attorney's Office
                                                                              Suite 350
                                                                              100 Cherokee Street
                                                                              Marietta, GA 30090
                                                                              770-528-4000
                                                                              Email: Lauren.Bruce@cobbcounty.org
                                                                              *LEAD ATTORNEY*
                                                                              *ATTORNEY TO BE NOTICED*

                                                                              **Marisa M. Beller**
                                                                              Freeman, Mathis, & Gary, LLP
                                                                              100 Galleria Parkway
                                                                              Suite 1600
                                                                              Atlanta, GA 30092
                                                                              678-996-9089
                                                                              Email: marisa.beller@fmglaw.com
                                                                              *ATTORNEY TO BE NOTICED*

Freeman Mathis & Gary
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
770-818-0000
Email: schoy@fmglaw.com
*ATTORNEY TO BE NOTICED*

**Wesley Calvin Jackson**
Freeman Mathis & Gary, LLP -Atl
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
770-818-4246
Email: wjackson@fmglaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lieutenant Charles Gordon**
*individually*

represented by **Hugh William Rowling , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren S. Bruce**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marisa M. Beller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sun S. Choy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Wesley Calvin Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Deputy Paul Wilkerson**
*individually*

represented by **Hugh William Rowling , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren S. Bruce**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marisa M. Beller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sun S. Choy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Wesley Calvin Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Cobb County Sheriff's Office**
*TERMINATED: 11/08/2021*

represented by **Wesley Calvin Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Neil Warren**
*Individually and in his official capacity as Former Cobb County Sheriff*
*TERMINATED: 11/03/2022*

represented by **Richard A. Carothers**
Carothers & Mitchell, LLC
1809 Buford Highway
Buford, GA 30518
770-932-3552
Fax: 770-932-6348
Email: richard.carothers@carmitch.com
*LEAD ATTORNEY*

Brian R. Dempsey
Carothers & Mitchell, LLC
1809 Buford Highway
Buford, GA 30518
770-932-3552
Fax: 770-932-6348
Email: brian.dempsey@carmitch.com

**Wesley Calvin Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sonya Allen**                                        represented by **Richard A. Carothers**
*individually and in her official capacity as Former Cobb County*        (See above for address)
*Chief Deputy Sheriff*                                      *LEAD ATTORNEY*
*TERMINATED: 11/03/2022*

**Brian R. Dempsey**
(See above for address)

**Wesley Calvin Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Deputy Britton McPhee**                              represented by **Marisa M. Beller**
*individually*                                                   (See above for address)
*TERMINATED: 07/12/2023*                                       *ATTORNEY TO BE NOTICED*

**Sun S. Choy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Wesley Calvin Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Deputy Lynda Marshall**                              represented by **Marisa M. Beller**
*individually*                                                   (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Sun S. Choy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Wesley Calvin Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**John Does 1-10**
*individually and in their capacity as employees of Cobb County*
*Sheriff's Office*

**Defendant**

**Jane Does 1-10**
*individually and in their official capacity as employees of Cobb*
*County Sheriff's Office*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/03/2020 | 1 | COMPLAINT with Jury Demand filed by Angel Calloway, Kieara Wingo, Tiffany Wingo, Fatima Thomas. (Filing fee $400, receipt number BGANDC-10105367) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Civil Cover Sheet)(rvb) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 09/08/2020) |
| 09/03/2020 | 2 | Electronic Summons Issued as to Yvette Burton, Samantha Garland, Charles Gordon, Shanna Griffith, Branson Harris, Shannea Hopkins, Kelly Jones, Annaleen Visser, WellStar Health System, Inc., Paul Wilkerson. (Attachments: # 1 Summons Garland, # 2 Summons Gordon, # 3 Summons Griffith, # 4 Summons Harris, # 5 Summons Hopkins, # 6 Summons Jones, # 7 Summons Wellstar, # 8 Summons Wilkerson, # 9 Summons Visser)(rvb) (Entered: 09/08/2020) |
| 09/08/2020 | 3 | SEVENTH AMENDMENT TO GENERAL ORDER 20-01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID19 AND RELATED CORONA VIRUS. Signed by Judge Thomas W. Thrash, Jr. on 09/01/2020. (rvb) (Entered: 09/08/2020) |

USCA11 Case: 24-10933    Document: 3-1    Date Filed: 06/11/2024    Page: 12 of 238

| | | |
|---|---|---|
| 09/12/2020 | 4 | Return of Service Executed by Tiffany Wingo. Shannea Hopkins served on 9/10/2020, answer due 10/1/2020. (Gardner, Timothy) Modified on 9/14/2020 to edit text, modify answer due date(tmf). (Entered: 09/12/2020) |
| 09/12/2020 | 5 | Return of Service Executed by Tiffany Wingo. Samantha Garland served on 9/10/2020, answer due 10/1/2020. (Gardner, Timothy) (Entered: 09/12/2020) |
| 09/12/2020 | 6 | Return of Service Executed by Tiffany Wingo. Annaleen Visser served on 9/10/2020, answer due 10/1/2020. (Gardner, Timothy) (Entered: 09/12/2020) |
| 09/12/2020 | 7 | Return of Service Executed by Tiffany Wingo. Charles Gordon served on 9/9/2020, answer due 9/30/2020. (Gardner, Timothy) (Entered: 09/12/2020) |
| 09/12/2020 | 8 | Return of Service Executed by Tiffany Wingo. Paul Wilkerson served on 9/9/2020, answer due 9/30/2020. (Gardner, Timothy) (Entered: 09/12/2020) |
| 09/14/2020 | 9 | Return of Service Executed by Tiffany Wingo. Shanna Griffith served on 9/13/2020, answer due 10/5/2020. (Gardner, Timothy) (Entered: 09/14/2020) |
| 09/14/2020 | 10 | Return of Service Executed by Tiffany Wingo. Kelly Jones served on 9/10/2020, answer due 10/1/2020. (Gardner, Timothy) (Entered: 09/14/2020) |
| 09/15/2020 | 11 | ACKNOWLEDGMENT OF SERVICE Executed filed by Tiffany Wingo. Yvette Burton served on 9/14/2020. (Gardner, Timothy) (Entered: 09/15/2020) |
| 09/15/2020 | 12 | Return of Service Executed by Tiffany Wingo. WellStar Health System, Inc. served on 9/10/2020, answer due 10/1/2020. (Gardner, Timothy) (Entered: 09/15/2020) |
| 09/15/2020 | 13 | Return of Service Executed by Tiffany Wingo. Branson Harris served on 9/10/2020, answer due 10/1/2020. (Gardner, Timothy) (Entered: 09/15/2020) |
| 09/15/2020 | 14 | STANDING ORDER: GUIDELINES TO PARTIES AND COUNSEL PROCEEDING BEFORE THE HONORABLE AMY TOTENBERG. You are required to sign and file a Certificate of Compliance in a format consistent with the Certificate of Compliance attached hereto. To request to file material under seal, the Parties should follow the mechanism described in Section II(J) of Appendix H to theCourt's Local Civil Rules. Signed by Judge Amy Totenberg on 9/15/20. (rlb) (Entered: 09/15/2020) |
| 09/15/2020 | 15 | CERTIFICATE of Compliance (Gardner, Timothy) (Entered: 09/15/2020) |
| 09/29/2020 | 16 | EIGHTH AMENDMENT TO GENERAL ORDER 20-01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID19 AND RELATED CORONA VIRUS. Signed by Judge Thomas W. Thrash, Jr. on 9/28/2020. (ddm) (ADI) (Entered: 09/29/2020) |
| 09/30/2020 | 17 | ANSWER to 1 COMPLAINT with Jury Demand by Charles Gordon, Branson Harris, Paul Wilkerson. Discovery ends on 3/1/2021.(Choy, Sun) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 09/30/2020) |
| 10/01/2020 | 18 | NOTICE of Appearance by Wesley Calvin Jackson on behalf of Charles Gordon, Branson Harris, Paul Wilkerson (Jackson, Wesley) (Entered: 10/01/2020) |
| 10/01/2020 | 19 | NOTICE of Appearance by Hugh William Rowling, Jr on behalf of Charles Gordon, Branson Harris, Paul Wilkerson (Rowling, Hugh) (Entered: 10/01/2020) |
| 10/01/2020 | 20 | NOTICE of Appearance by Lauren S. Bruce on behalf of Charles Gordon, Branson Harris, Paul Wilkerson (Bruce, Lauren) (Entered: 10/01/2020) |
| 10/01/2020 | 21 | MOTION to Dismiss with Brief In Support by Annaleen Visser. (Attachments: # 1 Brief in Support of Motion to Dismiss)(Ware, R.) (Entered: 10/01/2020) |
| 10/01/2020 | 22 | MOTION to Stay with Brief In Support by Annaleen Visser. (Attachments: # 1 Brief in Support of Motion to Stay)(Ware, R.) (Entered: 10/01/2020) |
| 10/01/2020 | 23 | NOTICE of Appearance by James Gabriel Banks on behalf of WellStar Health System, Inc. (Banks, James) (Entered: 10/01/2020) |
| 10/01/2020 | 24 | **Duplicative re 23** NOTICE of Appearance by James Gabriel Banks on behalf of Yvette Burton, Samantha Garland, Shanna Griffith, Shannea Hopkins, Kelly Jones (Banks, James) Modified on 10/2/2020 to add text (rlb). (Entered: 10/01/2020) |
| 10/01/2020 | 25 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM with Brief In Support by WellStar Health System, Inc.. (Attachments: # 1 Brief)(Banks, James) (Entered: 10/01/2020) |
| 10/01/2020 | 26 | MOTION to Stay with Brief In Support by WellStar Health System, Inc.. (Attachments: # 1 Brief)(Banks, James) (Entered: 10/01/2020) |
| 10/01/2020 | 27 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM with Brief In Support by Yvette Burton, Samantha Garland, Shanna Griffith, Shannea Hopkins, Kelly Jones. (Attachments: # 1 Brief)(Banks, James) (Entered: 10/01/2020) |
| 10/01/2020 | 28 | MOTION to Stay with Brief In Support by Yvette Burton, Samantha Garland, Shanna Griffith, Shannea Hopkins, Kelly Jones. (Attachments: # 1 Brief)(Banks, James) (Entered: 10/01/2020) |
| 10/05/2020 | 29 | NOTICE of Appearance by Ryan M. Ingram on behalf of WellStar Health System, Inc. (Ingram, Ryan) (Entered: 10/05/2020) |
| 10/05/2020 | 30 | NOTICE of Appearance by Marie Wilcox on behalf of WellStar Health System, Inc. (Wilcox, Marie) (Entered: 10/05/2020) |
| 10/05/2020 | 31 | NOTICE of Appearance by Robert Donald Ingram on behalf of WellStar Health System, Inc. (Ingram, Robert) (Entered: 10/05/2020) |
| 10/06/2020 | 32 | RESPONSE in Opposition re 25 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Tiffany Wingo. (Gardner, Timothy) (Entered: 10/06/2020) |
| 10/06/2020 | 33 | RESPONSE in Opposition re 21 MOTION to Dismiss , 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Tiffany Wingo. (Gardner, Timothy) (Entered: 10/06/2020) |
| 10/06/2020 | 34 | RESPONSE in Opposition re 28 MOTION to Stay , 26 MOTION to Stay , 22 MOTION to Stay filed by Tiffany Wingo. (Gardner, Timothy) (Entered: 10/06/2020) |

| Date | Doc # | Description |
|---|---|---|
| 10/09/2020 | | ORDER, by docket entry only, extending the time for the Rule 26(f) conference to be conducted until after the Court rules on the Motions to Stay. By Judge Amy Totenberg on 10/9/20. (hfm) (Entered: 10/09/2020) |
| 10/20/2020 | 35 | REPLY to Response to Motion re 21 MOTION to Dismiss filed by Annaleen Visser. (Ware, R.) (Entered: 10/20/2020) |
| 10/20/2020 | 36 | REPLY BRIEF re 25 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Yvette Burton, Samantha Garland, Shanna Griffith, Shannea Hopkins, Kelly Jones, WellStar Health System, Inc.. (Banks, James) (Entered: 10/20/2020) |
| 10/21/2020 | | Submission of 28 MOTION to Stay , 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 26 MOTION to Stay , 25 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 22 MOTION to Stay , and 21 MOTION to Dismiss, to District Judge Amy Totenberg. (rlb) (Entered: 10/21/2020) |
| 11/16/2020 | 37 | Supplemental Brief re 28 MOTION to Stay , 26 MOTION to Stay *Proceedings* filed by Yvette Burton, Samantha Garland, Shanna Griffith, Shannea Hopkins, Kelly Jones, WellStar Health System, Inc.. (Attachments: # 1 Exhibit, # 2 Exhibit)(Ingram, Robert) Modified on 11/17/2020 (rjs). (Entered: 11/16/2020) |
| 11/18/2020 | 38 | RESPONSE in Support re 22 MOTION to Stay *Proceedingsu* filed by Annaleen Visser. (Ware, R.) (Entered: 11/18/2020) |
| 11/24/2020 | 39 | MOTION to Strike 37 Response to Motion, 38 Response in Support of Motion by Tiffany Wingo. (Gardner, Timothy) (Entered: 11/24/2020) |
| 12/04/2020 | 40 | ORDER: Defendants' Motions to Stay 22 , 26 , and 28 are GRANTED. The Court enters a STAY of all deadlines and proceedings in this case UNTIL FURTHER ORDER OF THE COURT. Defendants are DIRECTED to file a status report NO LATER THAN FEBRUARY 12, 2021 to update the Court regarding the status of the federal criminal investigation and any charges that are filed. Defendants are DIRECTED to file a Notice with the Court EX PARTE UNDER SEAL identifying the specific Assistant United States Attorney who has been in contact with them regarding the criminal investigation. The Clerk is DIRECTED to ADMINISTRATIVELY CLOSE the case and RESUBMIT this matter to the undersigned upon the filing of Defendant's status report. Signed by Judge Amy Totenberg on 12/4/20. (rlb) (Entered: 12/04/2020) |
| 12/04/2020 | | Civil Case Terminated. (rlb) (Entered: 12/04/2020) |
| 12/08/2020 | 41 | RESPONSE in Opposition re 39 MOTION to Strike 37 Response to Motion, 38 Response in Support of Motion filed by Annaleen Visser. (O'Neal, Jacob) (Entered: 12/08/2020) |
| 12/08/2020 | 42 | RESPONSE in Opposition re 39 MOTION to Strike 37 Response to Motion, 38 Response in Support of Motion filed by Yvette Burton, Samantha Garland, Shanna Griffith, Shannea Hopkins, Kelly Jones, WellStar Health System, Inc.. (Wilcox, Marie) (Entered: 12/08/2020) |
| 12/09/2020 | 43 | SEALED Response *Ex Parte Notice Under Seal* re 40 Order on Motion to Stay filed by WellStar Health System, Inc... (Banks, James) Modified on 12/9/2020 to serve document ex parte (rvb). (Entered: 12/09/2020) |
| 02/11/2021 | 44 | PROVISIONALLY SEALED NOTICE Of Filing FBI Criminal Investigation by WellStar Health System, Inc. re 40 Order on Motion to Stay, (Banks, James) (Entered: 02/11/2021) |
| 02/11/2021 | 45 | Status Report Regarding ongoing Federal Criminal Investigation by WellStar Health System, Inc. re 40 Order on Motion to Stay, (Banks, James) Modified on 02/12/2021 to add text. (Entered: 02/11/2021) |
| 02/12/2021 | | Submission of 40 Order, to District Judge Amy Totenberg. (rlb) (Entered: 02/12/2021) |
| 02/17/2021 | 46 | NOTICE Of Appearance by Maximilian Philip Perwich on behalf of Yvette Burton, Samantha Garland, Shanna Griffith, Shannea Hopkins, Kelly Jones, WellStar Health System, Inc. (Perwich, Maximilian) (Entered: 02/17/2021) |
| 04/21/2021 | 47 | NOTICE Of Filing Letter Regarding Re-Opening Administratively Closed Case by Tiffany Wingo (Gardner, Timothy) (Entered: 04/21/2021) |
| 04/21/2021 | | ORDER, by docket entry only, DIRECTING Defendants to file a response re 47 Letter MOTION to Reopen Case by the close of business on Tuesday, April 27, 2021. Entered by Judge Amy Totenberg on 4/21/21. (hfm) (Entered: 04/21/2021) |
| 04/27/2021 | 48 | RESPONSE re 47 MOTION to Reopen Case filed by Charles Gordon, Branson Harris, Paul Wilkerson. (Jackson, Wesley) (Entered: 04/27/2021) |
| 04/27/2021 | 49 | RESPONSE in Opposition re 47 MOTION to Reopen Case filed by Yvette Burton, Samantha Garland, Shanna Griffith, Shannea Hopkins, Kelly Jones, Annaleen Visser, WellStar Health System, Inc.. (Ingram, Robert) (Entered: 04/27/2021) |
| 06/25/2021 | | ORDER, by docket entry only, allowing Plaintiff to file a motion to amend complaint. Entered by Judge Amy Totenberg on 6/25/21. (hfm) (Entered: 06/25/2021) |
| 08/02/2021 | 50 | Consent MOTION for Settlement *Involving Interests of Minor Children* by Tiffany Wingo. (Attachments: # 1 Exhibit A - General Release, # 2 Exhibit B - Petition for Conservatorship, # 3 Exhibit C - Closing Statement, # 4 Exhibit D - Birth Certificate, # 5 Exhibit E - Investment Documents, # 6 Exhibit F - Proposed Order)(Gardner, Timothy) (Entered: 08/02/2021) |
| 08/02/2021 | 51 | Consent MOTION for Leave to File Matters Under Seal re: 52 Notice of Filing Exhibits re consent MOTION for Settlement *Involving Interests of Minor Children* with Brief In Support by Tiffany Wingo. (Attachments: # 1 Exhibit A - Proposed Order)(Gardner, Timothy) Modified on 8/3/2021 to add link/edit text (rlb). (Entered: 08/02/2021) |
| 08/03/2021 | | Submission of 50 Consent MOTION for Settlement *Involving Interests of Minor Children*, 51 Consent MOTION for Leave to File Matters Under Seal re: 52 Notice of Filing to District Judge Amy Totenberg. (rlb) (Entered: 08/03/2021) |
| 08/06/2021 | 53 | Minute Entry for proceedings held before Judge Amy Totenberg: Telephone Conference held on 8/6/2021. Teleconference re Motion for Settlement. The parties will provide the Court with a proposed order. (Court Reporter Shannon Welch)(rlb) (Entered: 08/09/2021) |
| 08/09/2021 | 54 | MOTION for Leave to File Matters Under Seal re 56 Brief and 50 Consent MOTION for Settlement *Involving Interests of Minor Children* by Tiffany Wingo. (Gardner, Timothy) Modified on 8/9/2021 to add link (rlb). (Entered: 08/09/2021) |
| 08/09/2021 | 55 | NOTICE Of Filing Exhibit A Proposed Order for Motion for Leave to File Under Seal Supplemental Brief by Tiffany Wingo re 54 MOTION for Leave to File Matters Under Seal re: 50 Consent MOTION for Settlement *Involving Interests of Minor Children* (Gardner, Timothy) (Entered: 08/09/2021) |
| 08/12/2021 | 57 | Order Approving 50 Consent Motion to Approve Settlement Involving the Interests of Minor Children and Allocation of Settlement Proceeds. The Court Orders and directs that the Clerk seal the details of the financial proceeds that have been paid and that will be received by the minor children. The Court further orders that Exhibits A, C, E be filed under seal. The Court also authorizes the Plaintiffs to file a |

USCA11 Case: 24-10983   Document: 7   Date Filed: 06/04/2024   Page: 14 of 238

| | | Consent Motion to Dismiss Less Than All Parties with prejudice filed on their behalf. Wellstar Defendants Signed by Judge Amy Totenberg on 8/12/21. (rlh) (Entered: 08/13/2021) |
|---|---|---|
| 09/01/2021 | 58 | Consent MOTION to Dismiss *Less Than All Parties* by Tiffany Wingo. (Attachments: # 1 Order Granting Consent Motion to Dismiss Less Than All Parties)(Gardner, Timothy) (Entered: 09/01/2021) |
| 09/01/2021 | 59 | ORDER granting 58 Motion to Dismiss Less Than All Parties. It is ORDERED that Defendants Wellstar Health Systems, Inc., Annaleen Visser, R.N., Yvette Burton, R.N., Shanna, Griffith, R.N., Kelly Jones, L.P.N., Samantha Garland, R.N. and Shannea Hopkins, L.P.N. are dismissed with prejudice from this action. Signed by Judge Amy Totenberg on 9/1/21. (rlh) (Entered: 09/01/2021) |
| 09/22/2021 | 60 | MOTION for Leave to File Plaintiff's First Amended Complaint by Tiffany Wingo. (Attachments: # 1 Exhibit Plaintiffs First Amended Complaint)(Gardner, Timothy) (Entered: 09/22/2021) |
| 09/24/2021 | | ORDER, by docket entry only granting 47 Motion to Reopen Case and 60 Motion for Leave to File Amended Complaint. Entered by Judge Amy Totenberg on 9/24/21. (hfm) (Entered: 09/24/2021) |
| 09/24/2021 | 61 | First Amended COMPLAINT with Jury Demand filed by Angel Calloway, Kieara Wingo, Tiffany Wingo, Fatima Thomas.(rlh) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 09/24/2021) |
| 09/26/2021 | 62 | PROPOSED SUMMONS filed by Tiffany Wingo *for Cobb County Sheriff's Office* (Gardner, Timothy) (Entered: 09/26/2021) |
| 09/26/2021 | 63 | PROPOSED SUMMONS filed by Tiffany Wingo *for Neil Warren* (Gardner, Timothy) (Entered: 09/26/2021) |
| 09/26/2021 | 64 | PROPOSED SUMMONS filed by Tiffany Wingo *for Sonya Allen* (Gardner, Timothy) (Entered: 09/26/2021) |
| 09/26/2021 | 65 | PROPOSED SUMMONS filed by Tiffany Wingo *for Britton McPhee* (Gardner, Timothy) (Entered: 09/26/2021) |
| 09/26/2021 | 66 | PROPOSED SUMMONS filed by Tiffany Wingo *for Lynda Marshall* (Gardner, Timothy) (Entered: 09/26/2021) |
| 09/26/2021 | 67 | PROPOSED SUMMONS filed by Tiffany Wingo *for Cobb County Sheriff's Office c/o Commissioner Lisa Cupid* (Gardner, Timothy) (Entered: 09/26/2021) |
| 09/27/2021 | 68 | Electronic Summons Issued as to Sonya Allen, Cobb County Sheriff's Office, Lynda Marshall, Britton McPhee, Neil Warren. (Attachments: # 1 Summons Warren, # 2 Summons Allen, # 3 Summons McPhee, # 4 Summons Marshall, # 5 Summons Cobb County Sheriff's Office c/o Cupid)(rlh) (Entered: 09/27/2021) |
| 09/29/2021 | 69 | Return of Service Executed by Tiffany Wingo. Cobb County Sheriff's Office served on 9/28/2021, answer due 10/19/2021. (Attachments: # 1 Affidavit Executed Affidavit of Service for Cobb County Sheriff's Office)(Gardner, Timothy) (Entered: 09/29/2021) |
| 09/29/2021 | 70 | Return of Service Executed by Tiffany Wingo. (Attachments: # 1 Executed Affidavit of Service for Cobb County Sheriff's Office)(Gardner, Timothy) (Entered: 09/29/2021) |
| 09/29/2021 | 71 | Return of Service Executed by Tiffany Wingo. Lynda Marshall served on 9/28/2021, answer due 10/19/2021. (Attachments: # 1 Executed Affidavit of Service for Defendant Lynda Marshall)(Gardner, Timothy) (Entered: 09/29/2021) |
| 09/30/2021 | 72 | Return of Service Executed by Tiffany Wingo. Neil Warren served on 9/28/2021, answer due 10/19/2021. (Attachments: # 1 Executed Affidavit of Service for Neil Warren)(Gardner, Timothy) (Entered: 09/30/2021) |
| 10/01/2021 | 73 | Return of Service Executed by Tiffany Wingo. Sonya Allen served on 9/28/2021, answer due 10/19/2021. (Attachments: # 1 Executed Affidavit of Service for Defendant Sonya Allen)(Gardner, Timothy) (Entered: 10/01/2021) |
| 10/01/2021 | 74 | PROPOSED SUMMONS filed by Tiffany Wingo *for Defendant Britton McPhee* (Gardner, Timothy) (Entered: 10/01/2021) |
| 10/01/2021 | 75 | Return of Service Unexecuted by Tiffany Wingo as to Britton McPhee. (Gardner, Timothy) (Entered: 10/01/2021) |
| 10/01/2021 | 76 | NOTICE Of Filing Affidavit of Non-Service on Defendant Britton McPhee by Tiffany Wingo re 75 Return of Service Unexecuted (Gardner, Timothy) (Entered: 10/01/2021) |
| 10/04/2021 | 77 | Electronic Summons Issued as to Britton McPhee. (rlh) (Entered: 10/04/2021) |
| 10/06/2021 | 78 | Return of Service Executed by Tiffany Wingo. Britton McPhee served on 10/1/2021, answer due 10/22/2021. (Attachments: # 1 Executed Affidavit of Service for Defendant Britton McPhee)(Gardner, Timothy) (Entered: 10/06/2021) |
| 10/08/2021 | 79 | ANSWER to 61 COMPLAINT with Jury Demand by Charles Gordon, Branson Harris, Paul Wilkerson. Discovery ends on 3/7/2022.(Choy, Sun) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 10/08/2021) |
| 10/19/2021 | 80 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *and Lack of Subject Matter Jurisdiction Plaintiffs' Amended Complaint* 61 with Brief In Support by Sonya Allen, Cobb County Sheriff's Office, Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Neil Warren, Paul Wilkerson. (Attachments: # 1 Brief Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint)(Jackson, Wesley) (Entered: 10/19/2021) |
| 10/19/2021 | 81 | ANSWER to 61 COMPLAINT with Jury Demand by Lynda Marshall, Britton McPhee.(Choy, Sun) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 10/19/2021) |
| 10/19/2021 | 82 | MOTION to Stay *Discovery and Rule 26 Requirements* with Brief In Support by Sonya Allen, Cobb County Sheriff's Office, Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Neil Warren, Paul Wilkerson. (Attachments: # 1 Brief Memorandum of Law in Support of Defendants' Motion to Stay Discovery and Rule 26 Requirements, # 2 Text of Proposed Order)(Jackson, Wesley) (Entered: 10/19/2021) |
| 10/28/2021 | 83 | STIPULATION of Dismissal *of Cobb County Sheriff's Office* by Tiffany Wingo. (Gardner, Timothy) (Entered: 10/28/2021) |
| 10/29/2021 | 84 | Second AMENDED COMPLAINT against Sonya Allen, Charles Gordon, Branson Harris, Jane Does 1-10, John Does 1-10, Lynda Marshall, Britton McPhee, Neil Warren, Paul Wilkersonwith Jury Demand by Tiffany Wingo. (Attachments: # 1 Exhibit A - Ante Litem Notice) (Gardner, Timothy) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 10/29/2021) |
| 11/08/2021 | | Clerk's Entry of Dismissal APPROVING 83 Stipulation of Dismissal as to Cobb County Sheriff's Office pursuant to Fed.R.Civ.P.41(a)(1)(A)(ii) (vs) (Entered: 11/08/2021) |

| | | |
|---|---|---|
| 11/08/2021 | | Submission of 80 MOTION to Stay Discovery and Rule 26 Requirements, 80 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Lack of Subject Matter Jurisdiction Plaintiffs' Amended Complaint 61, to District Judge Amy Totenberg. (vs) (Entered: 11/08/2021) |
| 11/12/2021 | 85 | ANSWER to 84 Amended Complaint by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson.(Choy, Sun) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 11/12/2021) |
| 11/12/2021 | 86 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM the Second Amended Complaint with Brief In Support by Sonya Allen, Neil Warren. (Attachments: # 1 Brief Memorandum of Law in Support)(Jackson, Wesley) (Entered: 11/12/2021) |
| 11/26/2021 | 87 | RESPONSE in Opposition re 86 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM the Second Amended Complaint filed by Tiffany Wingo. (Gardner, Timothy) (Entered: 11/26/2021) |
| 12/10/2021 | | Submission of 86 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM the Second Amended Complaint, to District Judge Amy Totenberg. (hfm) (Entered: 12/10/2021) |
| 12/10/2021 | 88 | REPLY BRIEF re 86 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM the Second Amended Complaint filed by Sonya Allen, Neil Warren. (Jackson, Wesley) (Entered: 12/10/2021) |
| 12/13/2021 | 89 | Certificate of Interested Persons by Tiffany Wingo. (Gardner, Timothy) (Entered: 12/13/2021) |
| 12/13/2021 | 90 | Initial Disclosures by Tiffany Wingo.(Gardner, Timothy) (Entered: 12/13/2021) |
| 12/13/2021 | 91 | JOINT PRELIMINARY REPORT AND DISCOVERY PLAN filed by Tiffany Wingo. (Gardner, Timothy) (Entered: 12/13/2021) |
| 12/15/2021 | 92 | CERTIFICATE OF SERVICE of Discovery Materials (Defendants' Initial Disclosures) by Sonya Allen, Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Neil Warren, Paul Wilkerson.(Jackson, Wesley) (Entered: 12/15/2021) |
| 12/16/2021 | 93 | SCHEDULING ORDER: The time limits for adding parties, amending the pleadings, filing motions, and completing discovery are as stated in JPRDP. The Parties request for an 8-month discovery period is GRANTED. Signed by Judge Amy Totenberg on 12/16/2021. (vs) (Entered: 12/16/2021) |
| 04/04/2022 | 94 | CERTIFICATE OF SERVICE by Sonya Allen, Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Neil Warren, Paul Wilkerson.(Jackson, Wesley) (Entered: 04/04/2022) |
| 04/11/2022 | | Case Reassigned to Judge Victoria M Calvert. Judge Amy Totenberg no longer assigned to case. NOTICE TO ALL COUNSEL OF RECORD: The Judge designation in the civil action number assigned to this case has been changed to 1:20-cv-3662-VMC. Please make note of this change in order to facilitate the docketing of pleadings in this case. (vs) (Entered: 04/11/2022) |
| 04/11/2022 | | Submission of 80 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Lack of Subject Matter Jurisdiction Plaintiffs' Amended Complaint 61, 82 MOTION to Stay Discovery and Rule 26 Requirements, 86 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM the Second Amended Complaint, to District Judge Victoria M Calvert. (vs) (Entered: 04/11/2022) |
| 04/13/2022 | 95 | Notice for Leave of Absence for the following date(s): 5/23/22, 5/24/22, 5/25/22, 5/26/22, 5/27/22, 5/30/22, 5/31/22, 6/1/22, 6/27/22, 6/28/22, 6/29/22, 6/30/22, 7/1/22, 7/5/22, 8/8/22, 8/9/22, 8/10/22, 8/11/22, 8/12/22, and 8/15/22, by Timothy J. Gardner. (Gardner, Timothy) (Entered: 04/13/2022) |
| 04/20/2022 | 96 | STANDING ORDER: Guidelines to Parties and Counsel in Cases Proceeding Before the Honorable Victoria M. Calvert. Signed by Judge Victoria M. Calvert on 4/20/2022.(rvb) (Entered: 04/20/2022) |
| 04/21/2022 | 97 | NOTICE by Sonya Allen, Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Neil Warren, Paul Wilkerson of Allocation of Fault to Non-Parties (Jackson, Wesley) (Entered: 04/21/2022) |
| 05/03/2022 | 98 | ORDER denying 86 Motion to Dismiss for Failure to State a Claim, and ORDER denying as moot 80 Motion to Dismiss the now superseded Amended Complaint. Signed by Judge Victoria M. Calvert on May 3, 2022. (lwb) (Entered: 05/03/2022) |
| 05/17/2022 | 99 | CERTIFICATE OF SERVICE by Angel Calloway, Fatima Thomas, Kieara Wingo, Tiffany Wingo.(Gardner, Timothy) (Entered: 05/17/2022) |
| 05/17/2022 | 100 | ANSWER to 84 Amended Complaint by Sonya Allen, Neil Warren.(Dempsey, Brian) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 05/17/2022) |
| 05/18/2022 | 101 | NOTICE of Appearance by Richard A. Carothers on behalf of Sonya Allen, Neil Warren (Carothers, Richard) (Entered: 05/18/2022) |
| 06/06/2022 | | ORDER (by docket text only) denying as moot 82 Motion to Stay. Entered by Judge Victoria M. Calvert on 6/6/22. (vs) (Entered: 06/06/2022) |
| 06/15/2022 | 102 | NOTICE to Take Deposition of LYNDA MARSHALL filed by Kieara Wingo (Gardner, Timothy) (Entered: 06/15/2022) |
| 06/15/2022 | 103 | NOTICE to Take Deposition of PAUL WILKERSON filed by Kieara Wingo (Gardner, Timothy) (Entered: 06/15/2022) |
| 06/15/2022 | 104 | NOTICE to Take Deposition of BRITTON MCPHEE filed by Kieara Wingo (Gardner, Timothy) (Entered: 06/15/2022) |
| 06/15/2022 | 105 | NOTICE to Take Deposition of CHARLES GORDON filed by Kieara Wingo (Gardner, Timothy) (Entered: 06/15/2022) |
| 06/15/2022 | 106 | NOTICE to Take Deposition of Branson Harris filed by Kieara Wingo (Gardner, Timothy) (Entered: 06/15/2022) |
| 06/15/2022 | 107 | Joint MOTION to Amend Modification of Scheduling Order by Tiffany Wingo. (Attachments: # 1 Text of Proposed Order Proposed Order re Amended Scheduling Order)(Gardner, Timothy) (Entered: 06/15/2022) |
| 06/16/2022 | 108 | Request for Leave of Absence for the following date(s): July 15-26, 2022, October 7, 2022, October 12-18, 2022, November 21-25, 2022, by Brian R. Dempsey. (Dempsey, Brian) (Entered: 06/16/2022) |
| 06/29/2022 | 109 | SCHEDULING ORDER: Discovery ends on 11/10/2022. Signed by Judge Victoria M. Calvert on June 29, 2022. (lwb) (Entered: 06/29/2022) |
| 08/05/2022 | 110 | Amended NOTICE to Take Deposition of Britton McPhee filed by Kieara Wingo (Gardner, Timothy) (Entered: 08/05/2022) |
| 08/05/2022 | 111 | Amended NOTICE to Take Deposition of Lynda Marshall filed by Kieara Wingo (Gardner, Timothy) (Entered: 08/05/2022) |
| 08/05/2022 | 112 | Amended NOTICE to Take Deposition of Charles Gordon filed by Kieara Wingo (Gardner, Timothy) (Entered: 08/05/2022) |
| 08/05/2022 | 113 | Amended NOTICE to Take Deposition of Branson Harris filed by Kieara Wingo (Gardner, Timothy) (Entered: 08/05/2022) |

| 08/08/2022 | 114 | Amended NOTICE To Take Deposition of Paul Wilkerson filed by Kieara Wingo (Gardner, Timothy) (Entered: 08/08/2022) |
|---|---|---|
| 08/08/2022 | 115 | Second NOTICE to Take Deposition of Branson Harris filed by Kieara Wingo (Gardner, Timothy) (Entered: 08/08/2022) |
| 08/08/2022 | 116 | Second NOTICE to Take Deposition of Charles Gordon filed by Kieara Wingo (Gardner, Timothy) (Entered: 08/08/2022) |
| 08/18/2022 | 117 | First NOTICE to Take Deposition of Sonya Allen filed by Kieara Wingo (Gardner, Timothy) (Entered: 08/18/2022) |
| 08/18/2022 | 118 | First NOTICE to Take Deposition of Neil Warren filed by Kieara Wingo (Gardner, Timothy) (Entered: 08/18/2022) |
| 08/18/2022 | 119 | Second NOTICE to Take Deposition of Lynda Marshall filed by Kieara Wingo (Gardner, Timothy) (Entered: 08/18/2022) |
| 08/18/2022 | 120 | Second NOTICE to Take Deposition of Sonya Allen filed by Kieara Wingo (Gardner, Timothy) (Entered: 08/18/2022) |
| 08/18/2022 | 121 | Second NOTICE to Take Deposition of Neil Warren filed by Kieara Wingo (Gardner, Timothy) (Entered: 08/18/2022) |
| 09/15/2022 | 122 | Joint MOTION to Amend *Amended Scheduling Order* by Tiffany Wingo. (Attachments: # 1 Text of Proposed Order re Second Amended Scheduling Order)(Gardner, Timothy) (Entered: 09/15/2022) |
| 09/16/2022 | 123 | SECOND AMENDED SCHEDULING ORDER Granting 122 Motion to Amend. The discovery period will end on February 8, 2023. Signed by Judge Victoria M. Calvert on September 16, 2022. (lwb) (Entered: 09/16/2022) |
| 10/12/2022 | 124 | Joint MOTION to Dismiss *Less Than All Parties* by Sonya Allen, Neil Warren. (Attachments: # 1 Text of Proposed Order)(Dempsey, Brian) (Entered: 10/12/2022) |
| 10/17/2022 | 125 | RESPONSE re 124 Joint MOTION to Dismiss *Less Than All Parties* filed by Sonya Allen, Yvette Burton, Cobb County Sheriff's Office, Samantha Garland, Charles Gordon, Shanna Griffith, Branson Harris. (Jackson, Wesley) (Entered: 10/17/2022) |
| 10/20/2022 | 126 | First NOTICE to Take Deposition of Randy White filed by Kieara Wingo (Gardner, Timothy) (Entered: 10/20/2022) |
| 10/20/2022 | 127 | First NOTICE to Take Deposition of Nasie Mejia filed by Kieara Wingo (Gardner, Timothy) (Entered: 10/20/2022) |
| 11/02/2022 | | Submission of 124 Joint MOTION to Dismiss *Less Than All Parties*, to District Judge Victoria M. Calvert. (vs) (Entered: 11/02/2022) |
| 11/03/2022 | 128 | ORDER Granting 124 Motion to Dismiss Sonya Allen and Neil Warren without prejudice. Signed by Judge Victoria M. Calvert on November 3, 2022. (lwb) (Entered: 11/03/2022) |
| 11/04/2022 | 129 | First NOTICE to Take Deposition of Colonel Dave Sanders filed by Kieara Wingo (Gardner, Timothy) (Entered: 11/04/2022) |
| 12/08/2022 | 130 | CERTIFICATE OF SERVICE *for Plaintiff's Notice to Enter Upon Property for Inspection* by Kieara Wingo.(Gardner, Timothy) (Entered: 12/08/2022) |
| 12/13/2022 | 131 | MOTION to Substitute Attorney *as Associate Counsel* Marisa M. Beller by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson. (Attachments: # 1 Text of Proposed Order for Motion to Substitute Attorney)(Beller, Marisa) Modified on 12/14/2022 (lwb). (Entered: 12/13/2022) |
| 12/13/2022 | 132 | NOTICE of Appearance by Marisa M. Beller on behalf of Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson (Beller, Marisa) (Entered: 12/13/2022) |
| 12/19/2022 | 133 | CERTIFICATE OF SERVICE *for Plaintiffs Supplemental Responses to Defendants First Request for Production of Documents and First Interrogatories* by Kieara Wingo.(Gardner, Timothy) (Entered: 12/19/2022) |
| 12/19/2022 | 134 | Supplemental Initial Disclosures by Tiffany Wingo.(Gardner, Timothy) (Entered: 12/19/2022) |
| 12/20/2022 | 135 | First NOTICE to Take Deposition of Deputy Quintin Appleby filed by Tiffany Wingo (Gardner, Timothy) (Entered: 12/20/2022) |
| 12/20/2022 | 136 | First NOTICE to Take Deposition of Guy Vanderbogart filed by Tiffany Wingo (Gardner, Timothy) (Entered: 12/20/2022) |
| 12/21/2022 | 137 | CERTIFICATE OF SERVICE *for Subpoena to Testify at a Deposition in Civil Action to Dr. Brian Myers* by Tiffany Wingo.(Gardner, Timothy) (Entered: 12/21/2022) |
| 12/21/2022 | 138 | First NOTICE to Take Deposition of Brian S. Myers, M.D. filed by Tiffany Wingo (Gardner, Timothy) (Entered: 12/21/2022) |
| 12/21/2022 | 139 | First NOTICE to Take Deposition of Edward A. Stettner, M.D. filed by Tiffany Wingo (Gardner, Timothy) (Entered: 12/21/2022) |
| 12/21/2022 | 140 | First NOTICE to Take Deposition of Matthew Penno filed by Tiffany Wingo (Gardner, Timothy) (Entered: 12/21/2022) |
| 12/21/2022 | 141 | CERTIFICATE OF SERVICE *for Subpoena to Testify at a Deposition in Civil Action to Edward A. Stettner, M.D. and Matthew Penno* by Tiffany Wingo.(Gardner, Timothy) (Entered: 12/21/2022) |
| 12/21/2022 | 142 | First NOTICE to Take Deposition of Ken Starr, M.D. filed by Tiffany Wingo (Gardner, Timothy) (Entered: 12/21/2022) |
| 01/11/2023 | 143 | Joint MOTION to Amend *Second Scheduling Order* by Tiffany Wingo. (Attachments: # 1 Text of Proposed Order)(Gardner, Timothy) (Entered: 01/11/2023) |
| 01/17/2023 | 144 | SCHEDULING ORDER: Discovery ends on 5/8/2023. Plaintiff will disclose expert reports by January 31, 2023, along with dates for the experts' depositions. Defendants will disclose experts and expert reports by March 30, 2023, along with dates for the experts' depositions. Signed by Judge Victoria M. Calvert on January 17, 2023. (lwb) (Entered: 01/17/2023) |
| 01/20/2023 | 145 | Notice for Leave of Absence for the following date(s): March 6, 2023 through and including March 10, 2023, March 13, 2023, May 25, 2023 through and including May 26, 2023, June 29, 2023 through and including June 30, 2023, July 3, 2023, July 5, 2023 through and including July 7, 2023, August 7, 2023 through and including August 11, 2023, and August 14, 2023, by Timothy J. Gardner. (Gardner, Timothy) (Entered: 01/20/2023) |
| 01/25/2023 | 146 | NOTICE to Take Deposition of Tiffany Wingo, as administrator of the estate of Kevil Wingo, Sr. filed by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson (Beller, Marisa) (Entered: 01/25/2023) |
| 01/25/2023 | 147 | NOTICE to Take Deposition of Kieara Wingo, as surviving child of Kevil Wingo, Sr. filed by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson (Beller, Marisa) (Entered: 01/25/2023) |
| 01/25/2023 | 148 | NOTICE to Take Deposition of Angel Calloway, as Mother and next friend of surviving minor child E. W., of Kevil Wingo, Sr. filed by |

6/10/24, 10:07 PM        CM/ECF-GA Northern District Court

USCA11 Case: 24-10963 Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson 06/11/2024 Entered: 05/30/2024 Page: 17 of 238

| | | |
|---|---|---|
| 01/25/2023 | 149 | NOTICE to Take Deposition of Fatima Thomas, as Mother and next friend of K. W., Jr., surviving minor child of Kevil Wingo, Sr. filed by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson (Beller, Marisa) (Entered: 01/25/2023) |
| 01/30/2023 | 150 | CERTIFICATE OF SERVICE for Plaintiffs Second Supplemental Responses to Defendants Request for Production of Documents by Tiffany Wingo.(Gardner, Timothy) (Entered: 01/30/2023) |
| 01/30/2023 | 151 | Second Initial Disclosures by Tiffany Wingo.(Gardner, Timothy) (Entered: 01/30/2023) |
| 02/23/2023 | 152 | MOTION for Leave to File Plaintiff's Third Amended Complaint *To Substitute Named Plaintiffs* with Brief In Support by Tiffany Wingo. (Attachments: # 1 Exhibit Third Amended Complaint, # 2 Brief Plaintiffs' Memorandum of Law in Support of Motion For Leave to Amend Plaintiffs' Second Amended Complaint To Substitute Named Plaintiffs)(Gardner, Timothy) Modified on 2/23/2023 to edit text (lwb). (Entered: 02/23/2023) |
| 03/08/2023 | 153 | NOTICE to Take Deposition of BRIAN S. MYERS, M.D., F.A.C.S. filed by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson (Jackson, Wesley) (Entered: 03/08/2023) |
| 03/08/2023 | 154 | NOTICE to Take Deposition of MARGO L. FRASIER, J.D., C.P.O. filed by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson (Jackson, Wesley) (Entered: 03/08/2023) |
| 03/08/2023 | 155 | NOTICE by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson *of Service of Subpoenas* (Jackson, Wesley) (Entered: 03/08/2023) |
| 03/27/2023 | 156 | Joint MOTION for Modification of Third Amended Scheduling Order 144 Scheduling Order and Set Scheduling Order Deadlines, by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson. (Attachments: # 1 Text of Proposed Order)(Jackson, Wesley) Modified on 3/28/2023 (lwb). (Entered: 03/27/2023) |
| 04/05/2023 | 157 | ORDER Granting 156 Joint Motion for Modification of Schedule Order and Fourth Amended Scheduling Order. The discovery period will end on May 29, 2023. Defendants will disclose experts and expert reports by April 22, 2023, along with dates for the experts' depositions. Signed by Judge Victoria M. Calvert on April 5, 2023. (lwb) (Entered: 04/05/2023) |
| 04/13/2023 | 158 | NOTICE to Take Deposition of Nurse Yvette Colleen Burton filed by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson (Jackson, Wesley) (Entered: 04/13/2023) |
| 04/13/2023 | 159 | NOTICE by Cobb County Sheriff's Office, Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson *of Service of Subpoena* (Jackson, Wesley) (Entered: 04/13/2023) |
| 04/13/2023 | 160 | Amended NOTICE to Take Deposition of Matthew Penno filed by Tiffany Wingo (Gardner, Timothy) (Entered: 04/13/2023) |
| 04/13/2023 | 161 | CERTIFICATE OF SERVICE *for Subpoena to Testify at a Deposition in Civil Action to Matthew Penno* by Tiffany Wingo.(Gardner, Timothy) (Entered: 04/13/2023) |
| 04/19/2023 | | Submission of 152 MOTION for Leave to File Plaintiff's Third Amended Complaint*To Substitute Named Plaintiffs*, to District Judge Victoria M. Calvert. (vs) (Entered: 04/19/2023) |
| 04/21/2023 | 162 | NOTICE by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson *of Disclosure of Expert Witness Kenneth J. Vega, M.D.* (Jackson, Wesley) (Entered: 04/21/2023) |
| 04/21/2023 | 163 | NOTICE by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson *of Disclosure of Expert Witness J.C. Upshaw Downs, M.D.* (Jackson, Wesley) (Entered: 04/21/2023) |
| 04/25/2023 | 164 | ORDER Granting 131 Motion to Substitute Attorney. Signed by Judge Victoria M. Calvert on April 25, 2023. (lwb) (Entered: 04/25/2023) |
| 04/25/2023 | 165 | ORDER Granting 152 Motion for Leave to File Plaintiff's Third Amended Complaint to Substitute Named Plaintiffs. Signed by Judge Victoria M. Calvert on April 25, 2023. (lwb) (Entered: 04/25/2023) |
| 04/25/2023 | 166 | THIRD AMENDED COMPLAINT against Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson, Jane Does 1-10, and John Does 1-10, with Jury Demand filed by Tiffany Wingo, Erika Wingo, Kieara Wingo, and Teri Fields.(lwb) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 04/25/2023) |
| 04/25/2023 | 167 | CERTIFICATE OF SERVICE *for Plaintiffs' First Interrogatories and Request for Production of Documents to Defendants* by Tiffany Wingo. (Gardner, Timothy) (Entered: 04/25/2023) |
| 04/26/2023 | 168 | CERTIFICATE OF SERVICE *for Subpoena to Produce Documents to James C. Upshaw Downs, M.D* by Tiffany Wingo.(Gardner, Timothy) Modified on 4/27/2023 to edit text to upper and lower case (lwb). (Entered: 04/26/2023) |
| 04/27/2023 | 169 | CERTIFICATE OF SERVICE *for Subpoena for Production of Documents to Kenneth J. Vega, MD* by Tiffany Wingo.(Gardner, Timothy) (Entered: 04/27/2023) |
| 05/04/2023 | 170 | NOTICE to Take Deposition of Kelly Jones filed by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson (Jackson, Wesley) (Entered: 05/04/2023) |
| 05/04/2023 | 171 | NOTICE by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson *of Service of Subpoena* (Jackson, Wesley) (Entered: 05/04/2023) |
| 05/09/2023 | 172 | CERTIFICATE OF SERVICE *for Subpoena To Testify At A Deposition In A Civil Action To James C. Upshaw Downs, M.D. and Kenneth J. Vega, M.D.* by Tiffany Wingo.(Gardner, Timothy) (Entered: 05/09/2023) |
| 05/09/2023 | 173 | NOTICE to Take Deposition of James C. Upshaw Downs, M.D. filed by Tiffany Wingo (Gardner, Timothy) (Entered: 05/09/2023) |
| 05/09/2023 | 174 | NOTICE to Take Deposition of Kenneth J. Vega, M.D. filed by Tiffany Wingo (Gardner, Timothy) (Entered: 05/09/2023) |
| 05/09/2023 | 175 | ANSWER to 166 Amended Complaint by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson.(Jackson, Wesley) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 05/09/2023) |
| 05/10/2023 | 176 | Third Initial Disclosures by Tiffany Wingo.(Gardner, Timothy) (Entered: 05/10/2023) |

| Date | No. | Description |
|---|---|---|
| 05/10/2023 | 177 | CERTIFICATE OF SERVICE *for Plaintiffs' Supplemental Responses to Defendants Requests for Production of Documents* by Tiffany Wingo.(Gardner, Timothy) (Entered: 05/10/2023) |
| 05/11/2023 | 178 | NOTICE to Take Deposition of Shanna Griffith filed by Branson Harris (Jackson, Wesley) (Entered: 05/11/2023) |
| 05/12/2023 | 179 | NOTICE to Take Deposition of Nurse Analeen Visser filed by Branson Harris (Jackson, Wesley) (Entered: 05/12/2023) |
| 05/12/2023 | 180 | NOTICE to Take Deposition of Tiffany Womack filed by Branson Harris (Jackson, Wesley) (Entered: 05/12/2023) |
| 05/12/2023 | 181 | Amended NOTICE to Take Deposition of Analeen Visser filed by Branson Harris (Jackson, Wesley) (Entered: 05/12/2023) |
| 05/17/2023 | 182 | NOTICE to Take Deposition of ERIKA WINGO filed by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson (Jackson, Wesley) (Entered: 05/17/2023) |
| 05/17/2023 | 183 | NOTICE to Take Deposition of KEVIL WINGO, JR. filed by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson (Jackson, Wesley) (Entered: 05/17/2023) |
| 05/26/2023 | 184 | Fourth Initial Disclosures by Tiffany Wingo.(Gardner, Timothy) (Entered: 05/26/2023) |
| 05/26/2023 | 185 | CERTIFICATE OF SERVICE *of Discovery Rule 5.4* by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson. (Jackson, Wesley) (Entered: 05/26/2023) |
| 06/21/2023 | 186 | Joint MOTION for Extension of Time to File Dispositive and Daubert Motions , Joint MOTION for Leave to File Excess Pages by Charles Gordon, Branson Harris, Lynda Marshall, Britton McPhee, Paul Wilkerson. (Attachments: # 1 Text of Proposed Order)(Jackson, Wesley) (Entered: 06/21/2023) |
| 06/21/2023 | 187 | ORDER granting 186 Joint MOTION for Extension of Time to File Dispositive and Daubert Motions and Extension of Page Limits. The deadline is extended to July 12, 2023. The page limit for either party's motion for summary judgment is extended to 35 pages. Signed by Judge Victoria M. Calvert on June 21, 2023. (lwb) (Entered: 06/21/2023) |
| 07/11/2023 | 188 | MOTION to Exclude Defendants' Expert James C. Upshaw Downs, M.D. with Brief In Support by Tiffany Wingo, Kieara Wingo, Teri Fields, Erika Wingo. (Attachments: # 1 Exhibit A - Cobb County Medical Examiner Report, # 2 Exhibit B - Dr. James C. Upshaw Downs Deposition Transcript Condensed- Relevant Pages, # 3 Exhibit C - Dr. Kenneth J. Vega Deposition Transcript Condensed- Relevant Pages, # 4 Exhibit D - Dr. Down's Expert Disclosure, # 5 Exhibit E - Dr. Vega's Expert Disclosure)(Gardner, Timothy) Modified on 7/12/2023 to correct filers(ane). (Entered: 07/11/2023) |
| 07/11/2023 | 189 | Joint MOTION to Dismiss *Less Than All Parties (Defendant Deputy Britton McPhee, Individually)* by Tiffany Wingo. (Attachments: # 1 Text of Proposed Order)(Gardner, Timothy) (Entered: 07/11/2023) |
| 07/11/2023 | 190 | MOTION for Partial Summary Judgment *on Defendants' Apportionment of Fault to NonParties Defense* with Brief In Support by Tiffany Wingo, Kieara Wingo, Teri Fields, Erika Wingo. (Attachments: # 1 Statement of Material Facts, # 2 Brief, # 3 Table of Exhibits, # 4 Exhibit 1 - Quintin Appleby Deposition Condensed Transcript Relevant Pages, # 5 Exhibit 2 - Yvette Burton Deposition Condensed Transcript Relevant Page, # 6 Exhibit 3 - Britton McPhee Deposition Condensed Transcript Relevant Pages, # 7 Exhibit 4 - Lynda Marshall Deposition Condensed Transcript Relevant Pages, # 8 Exhibit 5 - Branson Harris Deposition Condensed Transcript Relevant Pages, # 9 Exhibit 6- Infirmary Jail Video View 1, # 10 Exhibit 7- Lynda Marshall Internal Affairs Interview Audio, # 11 Exhibit 8- Infirmary Video View 2, # 12 Exhibit 9 - Charles Gordon Deposition Condensed Transcript Relevant Pages, # 13 Exhibit 10- Lynda Marshall and Paul Wilkerson Internal Phone Call, # 14 Exhibit 11- Lynda Marshall and Branson Harris Internal Phone Call, # 15 Exhibit 12 - Paul Wilkerson Deposition Condensed Transcript Relevant Pages, # 16 Exhibit 13 - CCSO Close Observation Policy 2-03-07.00, # 17 Exhibit 14- Corridor Video (wheelchair), # 18 Exhibit 15- Outside Padded Cell Video, # 19 Exhibit 16- Inside Padded Cell Video, # 20 Exhibit 17 - Cobb County Medical Examiner Report Certified, # 21 Exhibit 18 - Margo Frasier Expert Report, # 22 Exhibit 19 - Dr. Brian Myers Expert Report, # 23 Exhibit 20 - Dr. Kenneth J. Vega Expert Report, # 24 Exhibit 21 - Dr. J.C. Upshaw Downs Expert Report, # 25 Exhibit 22 - Defendants' Notice of Allocation of Fault to Non-Parties, # 26 Exhibit 23 - Dr. Kenneth J. Vega Deposition Condensed Transcript Relevant Pages, # 27 Exhibit 24 - Dr. James C. Upshaw Downs Deposition Condensed Transcript Relevant Pages)(Gardner, Timothy) --Please refer to http://www.gand.uscourts.gov to obtain the Notice to Respond to Summary Judgment Motion form contained in the Court's website.-- Modified on 7/12/2023 to correct filers(ane). (Entered: 07/11/2023) |
| 07/11/2023 | 191 | NOTICE Of Filing Deposition Transcripts by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo (Attachments: # 1 Quentin Applebys Deposition taken on January 9, 2023, # 2 Yvette Burtons Deposition taken on May 2, 2023, # 3 Britton McPhees Deposition taken on August 25, 2022, # 4 Lynda Marshalls Deposition taken on September 15, 2022, # 5 Branson Harris Deposition taken on August 29, 2022, # 6 Charles Gordons Deposition taken on August 26, 2022, # 7 Paul Wilkersons Deposition taken on September 14, 2022, # 8 Kenneth J. Vegas M.D. Deposition taken on May 18, 2023, # 9 James C. Upshaw Downs M.D. Deposition taken on May 25, 2023)(Gardner, Timothy) (Entered: 07/11/2023) |
| 07/12/2023 | 192 | ORDER Granting 189 Motion to Dismiss Defendant Deputy Britton McPhee *individually* from this lawsuit without prejudice. Signed by Judge Victoria M. Calvert on July 12, 2023. (lwb) (Entered: 07/12/2023) |
| 07/12/2023 | 193 | NOTICE Of Filing Certificate of Service for Plaintiffs' Offer of Settlement to Defendants by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo (Gardner, Timothy) (Entered: 07/12/2023) |
| 07/12/2023 | 194 | NOTICE Of Filing Electronic Media Exhibits (1 USB) for Plaintiffs' Brief in Support of Motion for Partial Judgment by Angel Calloway, Samantha Garland, Fatima Thomas, Erika Wingo, Kieara Wingo, and Tiffany Wingo re 190 MOTION for Partial Summary Judgment *on Defendants' Apportionment of Fault to Non-Parties Defense*. (lwb) (Entered: 07/12/2023) |
| 07/12/2023 | 195 | NOTICE Of Filing Electronic Media Exhibits (1 USB) for Plaintiffs' Statement of Undisputed Material Facts for Motion for Partial Judgment by Angel Calloway, Teri Fields, Fatima Thomas, Erika Wingo, Kieara Wingo, and Tiffany Wingo re 190 MOTION for Partial Summary Judgment *on Defendants' Apportionment of Fault to Non-Parties Defense*. (lwb) (Entered: 07/12/2023) |
| 07/12/2023 | 196 | MOTION for Summary Judgment with Brief In Support by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson. (Attachments: # 1 Brief, # 2 Statement of Material Facts, # 3 Exhibit List, # 4 Exhibit A: Appleby Dep. Excerpts, # 5 Exhibit B: Allen Dep. Excerpts, # 6 Exhibit C: Burton Dep. Excerpts, # 7 Exhibit D: McPhee Dep. Excerpts, # 8 Exhibit E: Jones Dep. Excerpts, # 9 Exhibit F: Griffith Dep. Excerpts, # 10 Exhibit G: Marshall Dep. Excerpts, # 11 Exhibit H: Visser Dep. Excerpts, # 12 Exhibit I: Gordon Dep. Excerpts, # 13 Exhibit J: INF 2 WC Call Recording, # 14 Exhibit K: Wilkerson Dep. Excerpts, # 15 Exhibit L: INF to EXT Call Recording, # 16 Exhibit M: Harris Dep. Excerpts, # 17 Exhibit M: Harris Dep. Excerpts, # 18 Exhibit O: Mejia Dep. Excerpts, # 19 Exhibit P: Internal Affairs Report, # 20 Exhibit Q: Dr. Myers Report, # 21 Exhibit R: Dr. Myers Dep. Excerpts, # 22 Exhibit S: Dr. Vega Report, # 23 Exhibit T: Dr. Downs Report, # 24 Exhibit U: Burton Consent Order, # 25 Exhibit V: Visser Final Decision, # 26 Exhibit W: Policy 2-06-04.00, # 27 Exhibit X: Policy 2-03- |

| | | (7 Duplexer 24v4-09338) please log in to view) and uscourts, to I-cart, the docket, to tick, 282nd to respond to 3rd primary 10 Juli, 2201ion form contained on the Court's website.-- (Entered: 07/12/2023) |
|---|---|---|
| 07/12/2023 | 197 | MOTION to Exclude Testimony of Margo L. Frasier, J.D. with Brief In Support by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson. (Attachments: # 1 Exhibit A: Frasier Expert Report, # 2 Exhibit B: Frasier Dep. Excerpts)(Jackson, Wesley) (Entered: 07/12/2023) |
| 07/12/2023 | 198 | MOTION to Exclude Testimony of Dr. Brian Myers and Mark Johnson with Brief In Support by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson. (Attachments: # 1 Exhibit A: Mark Johnson Report)(Jackson, Wesley) (Entered: 07/12/2023) |
| 07/12/2023 | | RECIPT OF MANUAL FILING: 1 USB (blue - text on it states "PLAINTIFFS' ELECTRONIC MEDIA EXHIBITS MANUALLY FILED.") received in Atlanta Division re 195 Notice of Filing Electronic Media. USB scanned by IT Department and placed in the receptacle for filing by the Records Department. (bgt) Modified link to 195 on 7/13/2023 (bgt). (Entered: 07/13/2023) |
| 07/12/2023 | | RECIPT OF MANUAL FILING: 1 USB (blue - text on it states "PLAINTIFFS' ELECTRONIC MEDIA EXHIBITS MANUALLY FILED.") received in Atlanta Division re 194 Notice of Filing Electronic Media. USB scanned by IT Department and placed in the receptacle for filing by the Records Department. (bgt) (Entered: 07/13/2023) |
| 07/13/2023 | 199 | NOTICE Of Filing Defendants' Electronic Exhibit J and Exhibit L in support of MSJ by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson re 196 MOTION for Summary Judgment (Beller, Marisa) (Entered: 07/13/2023) |
| 07/14/2023 | 200 | NOTICE Of Filing Deposition Transcripts by Defendants by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson (Attachments: # 1 Exhibit 1 Deposition of Dr. Brian Meyers - March 13 2023 with Exhibits, # 2 Exhibit 2 Deposition of Kelly Jones - May 8 2023 with Exhibits, # 3 Exhibit 3 Deposition of Margo Fraiser - March 16 2023 with Exhibits, # 4 Exhibit 4 Deposition of Sgt Naise Mejia - Nov 8 2022 with Exhibits, # 5 Exhibit 5 Deposition of Nurse Annaleen Visser - May 16 2023 with Exhibits, # 6 Exhibit 6 Deposition of Shanna M. Griffith - March 22 2023 with Exhibits, # 7 Exhibit 7 Deposition of Sonya Allen - Sept 20 2022 with Exhibits, # 8 Exhibit 8 Deposition of Tiffany Womack - May 24 2023 with Exhibits)(Beller, Marisa) (Entered: 07/14/2023) |
| 07/20/2023 | | RECEIPT OF MANUAL FILING: 1 USB (silver) received in Atlanta Division re 199 Notice of Filing Electronic Media. USB scanned by IT Department and placed in the receptacle for filing by the Records Department. (dnb) (Entered: 07/20/2023) |
| 07/24/2023 | 201 | Joint MOTION for Extension of Time for Deadline for Responses to Dispositive and Daubert Motions by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson. (Attachments: # 1 Text of Proposed Order)(Jackson, Wesley) (Entered: 07/24/2023) |
| 07/24/2023 | 202 | ORDER granting 201 Joint MOTION for Extension of Time for Deadline for Responses to Dispositive and Daubert Motions. The pending dispositive and Daubert motions (Docs. 188 , 190 , 196 , 197 , and 198 ) are extended through and including August 9, 2023. Signed by Judge Victoria M. Calvert on this 24th day of July, 2023. (pdt) (Entered: 07/25/2023) |
| 08/02/2023 | 203 | Joint MOTION for Extension of Time for Deadline for Responses to Dispositive and Daubert Motions by Teri Fields, Fatima Thomas, Erika Wingo, Kieara Wingo, Tiffany Wingo. (Attachments: # 1 Text of Proposed Order)(Gardner, Timothy) (Entered: 08/02/2023) |
| 08/02/2023 | | ORDER (by docket text only) granting 203 Motion for Extension of Time re 203 Joint MOTION for Extension of Time for Deadline for Responses to Dispositive and Daubert Motions . Entered by Judge Victoria M. Calvert on 8/2/23. (vs) (Entered: 08/02/2023) |
| 08/21/2023 | 204 | Joint MOTION for Extension of Time for Deadline for Responses to Dispositive and Daubert Motions by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo. (Attachments: # 1 Text of Proposed Order)(Gardner, Timothy) (Entered: 08/21/2023) |
| 08/22/2023 | 205 | ORDER granting 204 Joint MOTION for Extension of Time for Deadline for Responses to Dispositive and Daubert Motions. The Court orders that the deadline for the parties response briefs to the pending dispositive and Daubert motions 188 , 190 , 196 , 197 , and 198 extended through and including August 31, 2023. Signed by Judge Victoria M. Calvert on 8/22/2023. (dnb) (Entered: 08/22/2023) |
| 08/30/2023 | 206 | RESPONSE in Opposition re 197 MOTION to Exclude Testimony of Margo L. Frasier, J.D. filed by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo. (Attachments: # 1 Exhibit A- Margo Frasier's Amended Expert Report, # 2 Exhibit B- Pages from Margo Frasier Condensed Deposition Transcript, # 3 Exhibit C- Margo Frasier's CV)(Brown, Henrietta) (Entered: 08/30/2023) |
| 08/30/2023 | 207 | RESPONSE in Opposition re 198 MOTION to Exclude Testimony of Dr. Brian Myers and Mark Johnson filed by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo. (Attachments: # 1 Exhibit A - Dr. Brian Myers Expert Report, # 2 Exhibit B- Pages from Brian Myers, MD Condensed Deposition Transcript, # 3 Exhibit C - Pages from Kenneth Vega Condensed Deposition Transcript)(Brown, Henrietta) (Entered: 08/30/2023) |
| 08/31/2023 | 208 | Response to Statement of Material Facts re 196 MOTION for Summary Judgment *and Objections* filed by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo. (Attachments: # 1 Table of Exhibits, # 2 Exhibit 1- Pages from Yvette Burton Condensed Deposition Transcript, # 3 Exhibit 2 -Pages from Shanna M. Griffith Condensed Transcript, # 4 Exhibit 3- Pages from Quintin Appleby Condensed Deposition Transcript, # 5 Exhibit 4- Pages from Brian Myers, MD Condensed Deposition Transcript, # 6 Exhibit 5- Pages from Annaleen Visser Condensed Deposition Transcript, # 7 Exhibit 6- Infirmary Jail Video View 1, # 8 Exhibit 7- Infirmary Video View 2, # 9 Exhibit 8 - Pages from Lynda Marshall Condensed Deposition Transcript, # 10 Exhibit 9 - Lynda Marshall and Branson Harris Internal Phone Call, # 11 Exhibit 10 - Pages from Charles Gordon's Condensed Deposition Transcript, # 12 Exhibit 11- CCSO's Close Observation Policy, # 13 Exhibit 12 - Lynda Marshall Nurse Visser Internal Phone Call, # 14 Exhibit 13 - Lynda Marshall and Branson Harris Internal Deposition Transcript, # 15 Exhibit 14 - Nurse Visser Internal Affairs Video Interview, # 16 Exhibit 15 - Corridor Video, # 17 Exhibit 16 - Outside Padded Cell Video, # 18 Exhibit 17 - Inside Padded Cell Video, # 19 Exhibit 18- Pages from Paul Wilkerson Condensed Deposition Transcript, # 20 Exhibit 19 - Pages from David Sanders Condensed Deposition Transcript)(Gardner, Timothy) (Entered: 08/31/2023) |
| 08/31/2023 | 209 | RESPONSE in Opposition re 196 MOTION for Summary Judgment filed by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo. (Attachments: # 1 Plaintiffs' Additional Facts in Opposition of Defendants' Motion for Summary Judgment, # 2 Table of Exhibits, # 3 Exhibit 1- Pages from Quintin Appleby Condensed Deposition Transcript, # 4 Exhibit 2- Pages from Yvette Burton Condensed Deposition Transcript, # 5 Exhibit 3- Pages from Britton McPhee Condensed Deposition Transcript, # 6 Exhibit 4- Lynda Marshall's Condensed Deposition Transcript, # 7 Exhibit 5- Pages from Branson Harris Condensed Deposition Transcript, # 8 Exhibit 6- Pages from Tiffany Womack Condensed Deposition Transcript, # 9 Exhibit 7- Infirmary Jail Video View 1, # 10 Exhibit 8- Lynda Marshall Internal Affairs Interview Audio, # 11 Exhibit 9- Infirmary Video View 2, # 12 Exhibit 10- Pages from Charles Gordon's Condensed Deposition Transcript, # 13 Exhibit 11- Lynda Marshall and Paul Wilkerson Internal Phone Call, # 14 Exhibit 12- Lynda Marshall and Branson Harris Internal Phone Call, # 15 Exhibit 13- Pages from Paul Wilkerson Condensed Deposition Transcript, # 16 Exhibit 14- Pages from Nasie Mejia Condensed Deposition Transcript, # 17 Exhibit 15- Pages from Chief Deputy Sheriff Sonya Allen Condensed Deposition Transcript, # 18 Exhibit 16- CCSO's Close Observation Policy, # 19 Exhibit 17- Pages from Guy Vanderbogart Condensed Deposition Transcript, # 20 Exhibit 18- Corridor Video, # 21 Exhibit 19- Outside Padded Cell Video, # 22 Exhibit 20- Inside Padded Cell Video, # 23 Exhibit 21- Pages from David Sanders Condensed Deposition Transcript, # 24 Exhibit 22- Vanderbogart Internal Affairs Video Interview, # 25 Exhibit 23- Pages from |

| | | |
|---|---|---|
| | | Randy White 24-pt Deposition Transcript, # 25 Exhibit 24 - Plaintiff Julie Wolfe Expert Report, # 27 Exhibit 25 - Dr. Brian Myers Expert Transcript, # 28 Exhibit 26 - Pages from Brian Myers, MD Condensed Deposition Transcript, # 29 Exhibit 27 - Dr. Kenneth J. Vega Expert Report, # 30 Exhibit 28 - Dr. J.C. Upshaw Downs Expert Report, # 31 Exhibit 29 - Pages from Kenneth J. Vega, MD Condensed Deposition Transcript, # 32 Exhibit 30 - Margo Frasier Expert Report, # 33 Exhibit 31 - Margo Frasier's CV, # 34 Exhibit 32- Pages from Margo Frasier's Condensed Deposition Transcript, # 35 Exhibit 33- Pages from Annaleen Visser Condensed Deposition Transcript, # 36 Exhibit 34- Paul Wilkerson Internal Affairs Video Interview)(Gardner, Timothy)(Entered: 08/31/2023) |
| 08/31/2023 | 210 | Consent MOTION for Extension of Time to File Responses to Dispositive and Daubert Motions by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson. (Attachments: # 1 Text of Proposed Order)(Jackson, Wesley) (Entered: 08/31/2023) |
| 08/31/2023 | 211 | NOTICE Of Filing Deposition Transcripts by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo (Attachments: # 1 Shanna M. Griffith Deposition taken on May 22, 2023, # 2 Brian Myers Deposition taken on March 13, 2023, # 3 Annaleen Visser Deposition taken on May 16, 2023, # 4 Randy White Deposition taken on November 8, 2022, # 5 David Sanders Deposition taken on November 9, 2022, # 6 Tiffany Womack Deposition taken on May 24, 2023, # 7 Nasi Mejia Deposition taken on November 8, 2022, # 8 Sonya Allen Deposition taken on September 20, 2022, # 9 Guy Vanderbogart Deposition taken on January 9, 2023, # 10 Margo Frasier Deposition taken on March 16, 2023) (Gardner, Timothy) (Entered: 08/31/2023) |
| 09/01/2023 | 212 | NOTICE Of Filing ELECTRONIC MEDIA by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo re 209 Response in Opposition to Motion (dnb) (Entered: 09/01/2023) |
| 09/01/2023 | 213 | NOTICE Of Filing ELECTRONIC MEDIA by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo re 208 Response to Statement of Material Facts (dnb) (Entered: 09/01/2023) |
| 09/01/2023 | 214 | RESPONSE in Opposition re 188 MOTION to Exclude Defendants' Expert James C. Upshaw Downs, M.D. filed by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson. (Jackson, Wesley) (Entered: 09/01/2023) |
| 09/01/2023 | 215 | RESPONSE in Opposition re 190 MOTION for Partial Summary Judgment on Defendants' Apportionment of Fault to NonParties Defense filed by Paul Wilkerson. (Attachments: # 1 Exhibit List, # 2 Statement of Material Facts Response to Plaintiffs' SMF, # 3 Statement of Material Facts Defendants Additional SMF, # 4 Exhibit A: Appleby Dep. Excerpts, # 5 Exhibit B: Allen Dep. Excerpts, # 6 Exhibit C: Burton Dep. Excerpts, # 7 Exhibit D: McPhee Dep. Excerpts, # 8 Exhibit E: Jones Dep. Excerpts, # 9 Exhibit F: Griffith Dep. Excerpts, # 10 Exhibit G: Marshall Dep. Excerpts, # 11 Exhibit H: Visser Dep. Excerpts, # 12 Exhibit I: Gordon Dep. Excerpts, # 13 Exhibit J: Harris Dep. Excerpts, # 14 Exhibit K: Womack Dep. Excerpts, # 15 Exhibit L: IA Report, # 16 Exhibit M: Burton Consent Order, # 17 Exhibit N: Visser Final Decision, # 18 Exhibit O: CCADC Policy 2-06-04.00, # 19 Exhibit P: CCADC Policy 2-03-07.00)(Jackson, Wesley) (Entered: 09/01/2023) |
| 09/05/2023 | | RECEIPT OF MANUAL FILING: 1 USB (silver and blue) received in Atlanta Division re 213 Notice of Filing Electronic Media. USB scanned by IT Department and placed in the receptacle for filing by the Records Department. (dnb) (Entered: 09/05/2023) |
| 09/05/2023 | | RECEIPT OF MANUAL FILING: 1 USB (silver and blue) received in Atlanta Division re 212 Notice of Filing Electronic Media. USB scanned by IT Department and placed in the receptacle for filing by the Records Department. ( (dnb) (Entered: 09/05/2023) |
| 09/08/2023 | 216 | Joint MOTION for Extension of Time to File Reply Briefs in Support of Dispositive and Daubert Motions by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson. (Attachments: # 1 Text of Proposed Order)(Jackson, Wesley) (Entered: 09/08/2023) |
| 09/11/2023 | 217 | ORDER granting 210 Consent MOTION for Extension of Time to File Responses to Dispositive and Daubert Motions. Deadline is extended through and including September 1, 2023. Signed by Judge Victoria M. Calvert on 9/11/2023 (dnb). (Entered: 09/11/2023) |
| 09/11/2023 | 218 | ORDER granting 216 Joint MOTION for Extension of Time to File Reply Briefs in Support of Dispositive and Daubert Motions. Deadline is extended through and including September 29, 2023. Signed by Judge Victoria M. Calvert on 9/11/2023. (dnb) (Entered: 09/11/2023) |
| 09/28/2023 | 219 | REPLY to Response to Motion re 188 MOTION to Exclude Defendants' Expert James C. Upshaw Downs, M.D. filed by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo. (Gardner, Timothy) (Entered: 09/28/2023) |
| 09/28/2023 | 220 | REPLY to Response to Motion re 190 MOTION for Partial Summary Judgment on Defendants' Apportionment of Fault to NonParties Defense filed by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo. (Gardner, Timothy) (Entered: 09/28/2023) |
| 09/28/2023 | 221 | Response to Statement of Material Facts re 196 MOTION for Summary Judgment and Objections (Amended) filed by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo. (Gardner, Timothy) (Entered: 09/28/2023) |
| 09/28/2023 | 222 | Response to Statement of Material Facts re 196 MOTION for Summary Judgment 215 filed by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo. (Gardner, Timothy) (Entered: 09/28/2023) |
| 09/29/2023 | 223 | REPLY BRIEF re 198 MOTION to Exclude Testimony of Dr. Brian Myers and Mark Johnson filed by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson. (Beller, Marisa) (Entered: 09/29/2023) |
| 09/29/2023 | 224 | REPLY BRIEF re 196 MOTION for Summary Judgment filed by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson. (Jackson, Wesley) (Entered: 09/29/2023) |
| 09/29/2023 | 225 | RESPONSE re 209 Response in Opposition to Motion to Plaintiffs' Statement of Material Facts 209 -1] filed by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson. (Jackson, Wesley) Modified to edit docket text on 10/2/2023 (dnb). (Entered: 09/29/2023) |
| 09/29/2023 | 226 | REPLY BRIEF re 197 MOTION to Exclude Testimony of Margo L. Frasier, J.D. filed by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson. (Jackson, Wesley) (Entered: 09/29/2023) |
| 10/02/2023 | | Submission of 198 MOTION to Exclude Testimony of Dr. Brian Myers and Mark Johnson, 196 MOTION for Summary Judgment , 197 MOTION to Exclude Testimony of Margo L. Frasier, J.D., to District Judge Victoria M. Calvert. (vs) (Entered: 10/02/2023) |
| 10/02/2023 | | Submission of 188 MOTION to Exclude Defendants' Expert James C. Upshaw Downs, M.D., 190 MOTION for Partial Summary Judgment on Defendants' Apportionment of Fault to Non Parties Defense, to District Judge Victoria M. Calvert. (vs) (Entered: 10/02/2023) |
| 02/26/2024 | 227 | ORDER: Defendants' Motion to Exclude Testimony of Dr. Brian Myers and Mark Johnson 198 is GRANTED IN PART as to the testimony of Dr. Myers and DENIED AS MOOT IN PART as to the testimony of Mr. Johnson. Plaintiffs' Motion for Partial Summary Judgment 190 is DENIED and Defendants' Cross-Motion for Summary Judgment 196 is GRANTED. Plaintiffs' Motion to Exclude Defendants' Expert James C. Upshaw Downs, M.D. 188 and Defendants' Motion to Exclude Testimony of Margo L. Frasier, J.D. 197 are DENIED AS MOOT. The Clerk is directed to enter judgment for Defendants and against Plaintiffs and to close the case. Signed by Judge Victoria M. Calvert on 2/26/2024. (jbu) (Entered: 02/27/2024) |

| 02/26/2024 | | Civil Case Terminated. (jbu) (Entered: 02/27/2024) |
|---|---|---|
| 02/27/2024 | 228 | CLERK'S JUDGMENT. It is Ordered and Adjudged that the plaintiffs take nothing; that the defendants recover their costs of this action, and the action be, and the same hereby is, dismissed. (jbu)--Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist-- (Entered: 02/27/2024) |
| 03/22/2024 | 229 | BILL OF COSTS by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson. (Jackson, Wesley) (Entered: 03/22/2024) |
| 03/25/2024 | 230 | NOTICE OF APPEAL as to 228 Clerk's Judgment, 227 Order on Motion to Exclude,,, Order on Motion for Partial Summary Judgment,,,, Order on Motion for Summary Judgment,,,,,,,, by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo. Case Appealed to USCA - 11th Circuit. Filing fee $ 605, receipt number AGANDC-13315566. Transcript Order Form due on 4/8/2024 (Gardner, Timothy) (Entered: 03/25/2024) |
| 03/25/2024 | 231 | TRANSCRIPT ORDER FORM (No transcript is required for appeal purposes) re: 230 Notice of Appeal. (Gardner, Timothy) Modified on 3/25/2024 to update text (pjm). (Entered: 03/25/2024) |
| 03/25/2024 | 232 | USCA Appeal Transmission Letter to USCA- 11th Circuit re: 230 Notice of Appeal, filed by Erika Wingo, Kieara Wingo, Tiffany Wingo and Teri Fields. (pjm) (Entered: 03/25/2024) |
| 03/25/2024 | 233 | Transmission of Certified Copy of Notice of Appeal, USCA Appeal Fees, Judgment, Order and Docket Sheet to USCA- 11th Circuit re: 230 Notice of Appeal. (pjm) (Entered: 03/25/2024) |
| 03/28/2024 | 234 | USCA Acknowledgment of 230 Notice of Appeal, filed by Erika Wingo, Kieara Wingo, Tiffany Wingo, Teri Fields. Case Appealed to USCA- 11th Circuit. Case Number 24-10933-H. (pjm) (Entered: 03/28/2024) |
| 03/29/2024 | 235 | RESPONSE re 229 Bill of Costs *Plaintiffs' Objection and Request for the Court to Deny or Defer Ruling on Defendants' Bill of Costs* filed by Teri Fields, Erika Wingo, Kieara Wingo, Tiffany Wingo. (Gardner, Timothy) (Entered: 03/29/2024) |
| 03/29/2024 | | Submission of 229 Bill of Costs to District Judge Victoria M. Calvert. (jbu) (Entered: 03/29/2024) |
| 04/12/2024 | 236 | RESPONSE in Opposition re 235 Response (Non-Motion) filed by Charles Gordon, Branson Harris, Lynda Marshall, Paul Wilkerson. (Jackson, Wesley) Modified docket text on 4/15/2024 (ajw). (Entered: 04/12/2024) |
| 06/10/2024 | | Pursuant to F.R.A.P.11(c), the Clerk certifies that the record is complete for purposes of this appeal, 230 Notice of Appeal. Case Appealed to USCA- 11th Circuit. Case Number 24-10933-HH. The record on appeal is available electronically with the exception of: Electronic Media Exhibits (1 USB) w/ 194 ; Electronic Media Exhibits (1 USB) w/ 195 ; 1 USB (silver) received in Atlanta Division re: 199 Notice of Filing Electronic Media; 1 USB (silver and blue) received in Atlanta Division re: 213 Notice of Filing Electronic Media; 1 USB (silver and blue) received in Atlanta Division re: 212 Notice of Filing Electronic Media. (pjm) (Entered: 06/10/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/10/2024 22:07:15 | | | |
| PACER Login: | TGardner74 | Client Code: | KevilWingo |
| Description: | Docket Report | Search Criteria: | 1:20-cv-03662-VMC |
| Billable Pages: | 28 | Cost: | 2.80 |

# DOCKET 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| TIFFANY WINGO as Administrator of the Estate of KEVIL WINGO, SR., KIEARA WINGO, as surviving child of KEVIL WINGO, SR., ANGEL CALLOWAY, as mother and next friend of ERIKA WINGO, surviving minor child of KEVIL WINGO, SR., and FATIMA THOMAS, as mother and next friend of KEVIL WINGO, JR., surviving minor child of KEVIL WINGO, Sr. | |
| Plaintiffs, | CIVIL ACTION FILE NO: |
| v. | |
| WELLSTAR HEALTH SYSTEM, Inc., ANNALEEN VISSER, R.N., YVETTE BURTON, R.N., SHANNA GRIFFITH, R.N., KELLY JONES, L.P.N., SAMANTHA GARLAND, R.N., SHANNEA HOPKINS, L.P.N., COBB COUNTY SHERIFF'S OFFICE MAJOR BRANSON HARRIS, in his individual capacity, COBB COUNTY SHERIFF'S OFFICE SERGEANT CHARLES GORDON, in his individual capacity, COBB COUNTY SHERIFF'S OFFICE DEPUTY PAUL WILKERSON, in his individual capacity. | **JURY TRIAL DEMANDED** |
| Defendants. | |

## **PLAINTIFFS' COMPLAINT**

Plaintiffs, Tiffany Wingo as Administrator of the Estate of Kevil Wingo, Sr. Kieara Wingo, as surviving child of Kevil Wingo, Sr., Angel Calloway as mother and next friend of Erika Wingo, surviving minor child of Kevil Wingo, Sr., and Fatima Thomas, as mother and next friend of Kevil Wingo, Jr., surviving minor child of Kevil Wingo, Sr.  (hereinafter collectively referred to as "Plaintiffs") files this Complaint against Defendants Wellstar Health System, Inc., Annaleen Visser, R.N., Yvette Burton, R.N., Shanna Griffith, R.N., Kelly Jones, L.P.N., Samantha Garland, R.N., Shannea Hopkins, L.P.N., Cobb County Sheriff's Office Major Branson Harris, in his official capacity, Cobb County Sheriff's Office Sergeant Charles Gordon, in his official capacity, Cobb County Sheriff's Office Deputy Paul Wilkerson, in his official capacity, and state as follows:

## **PARTIES**

### 1.

Plaintiffs are the children of Kevil Wingo, Sr. and Administrator of his estate and all reside within the Northern District of Georgia and are subject to the jurisdiction of this Court.

### 2.

Defendant Wellstar Health System, Inc. (hereinafter referred to as "Wellstar") is a domestic non-profit corporation existing under the laws of Georgia with its principal place of business at 793 Sawyer Road, Marietta, GA 30062 and

may be served with a copy of the Summons and Complaint through its registered agent, Leo E. Reichert at 793 Sawyer Road, Marietta, GA 30062 and is subject to the jurisdiction of this court.

3.

At all times material hereto, Wellstar managed the day-to-day medical operations at the Cobb County Adult Detention Center (hereinafter referred to as "CCADC").

4.

Defendant Annaleen Visser is a registered nurse that was employed by Wellstar on September 28-29, 2019 and worked at the CCADC.  Ms. Visser resides at 816 Lazarus Drive, Woodstock, Georgia, 30188 and may be served with a copy of the Summons and Complaint at this address. This Defendant is subject to the jurisdiction and venue of this Court.

5.

On September 29, 2019, Nurse Annaleen Visser worked for Wellstar and was responsible for providing care, monitoring, and observing Kevil Wingo while he was housed in the Infirmary at the CCADC.

6.

On September 29, 2019, Nurse Annaleen Visser was acting under the color of law pursuant to Wellstar's contract with the CCADC and within the course and scope of her employment with Wellstar.

7.

Defendant Yvette Burton is a registered nurse that was employed by Wellstar on September 28-29, 2019 and worked at the CCADC. Ms. Burton resides at 3457 Laurel Knoll Court, Powder Springs, Georgia, 30127 and may be served with a copy of the Summons and Complaint at this address. This Defendant is subject to the jurisdiction and venue of this Court.

8.

On September 28-29, 2019, Nurse Yvette Burton worked for Wellstar and was responsible for providing care, monitoring, and observing Kevil Wingo while he was housed in the Infirmary at the CCADC.

9.

On September 28-29, 2019, Nurse Yvette Burton was acting under the color of law pursuant to Wellstar's contract with the CCADC and within the course and scope of her employment with Wellstar.

10.

Defendant Shanna Griffith is a registered nurse that was employed by Wellstar Health System, Inc. on September 28-29, 2019 and worked at the CCADC.  Ms. Griffith resides at 5033 Manning Drive, Douglasville, Georgia, 30135 and may be served with a copy of the Summons and Complaint at this address. This Defendant is subject to the jurisdiction and venue of this Court.

11.

On September 28-29, 2019, Nurse Shanna Griffith worked for Wellstar and was responsible for providing care, monitoring, and observing Kevil Wingo while he was housed in the Infirmary at the CCADC.

12.

On September 28-29, 2019, Nurse Shanna Griffith was acting under the color of law pursuant to Wellstar's contract with the CCADC and within the course and scope of her employment with Wellstar.

13.

Defendant Samantha Garland is a registered nurse that was employed by Wellstar Health System, Inc. on September 28-29, 2019 and worked at the CCADC.  Ms. Garland resides at 617 Lexington Way, Woodstock, Georgia, 30189 and may be served with a copy of the Summons and Complaint at this address. This Defendant is subject to the jurisdiction and venue of this Court.

14.

On September 29, 2019, Nurse Samantha Garland worked for Wellstar and was responsible for providing care, monitoring, and observing Kevil Wingo while he was housed in the Infirmary at the CCADC.

15.

On September 29, 2019, Nurse Samantha Garland was acting under the color of law pursuant to Wellstar's contract with the CCADC and within the course and scope of her employment with Wellstar.

16.

Defendant Kelly Jones is a licensed practical nurse that was employed by Wellstar Health System, Inc. on September 28-29, 2019 and worked at the CCADC.  Ms. Jones resides at 8198 Pine Cone Court, Villa Rica, GA 30180 and may be served with a copy of the Summons and Complaint at this address. This Defendant is subject to the jurisdiction and venue of this Court.

17.

On September 28-29, 2019, Kelly Jones worked for Wellstar and was responsible for providing care, monitoring, and observing Kevil Wingo while he was housed in the Infirmary at the CCADC.

18.

On September 28-29, 2019, Kelly Jones was acting under the color of law pursuant to Wellstar's contract with the CCADC and within the course and scope of her employment with Wellstar.

19.

Defendant Shannea Hopkins is a licensed practical nurse that was employed by Wellstar Health System, Inc. on September 28-29, 2019 and worked at the CCADC.  Ms. Hopkins resides at 13 Rocky Circle, White, GA 30184 and may be served with a copy of the Summons and Complaint at this address. This Defendant is subject to the jurisdiction and venue of this Court.

20.

On September 29, 2019, Shannea Hopkins worked for Wellstar and was responsible for providing care, monitoring, and observing Kevil Wingo while he was housed in the Infirmary at the CCADC.

21.

On September 29, 2019, Shannea Hopkins was acting under the color of law pursuant to Wellstar's contract with the CCADC and within the course and scope of her employment with Wellstar.

22.

On September 29, 2019 Defendant Cobb County Sheriff's Office Major Branson Harris was employed by the Cobb County Sheriff's Office and worked at the CCADC. Major Harris resides at 58 Liberty View Ct, Acworth, GA 30101 and may be served with a copy of the Summons and Complaint at this address. This Defendant is subject to the jurisdiction and venue of this Court.

23.

On September 29, 2019, Major Harris was acting under the color of law and within the course and scope of his employment with CCADC.

24.

On September 29, 2019, Defendant Cobb County Sheriff's Office Sergeant Charles Gordon was employed by the Cobb County Sheriff's Office and worked at the CCADC. Sergeant Gordon resides at 5379 Telford Cir, Powder Springs, GA 30127 and may be served with a copy of the Summons and Complaint at this address. This Defendant is subject to the jurisdiction and venue of this Court.

25.

On September 29, 2019, Sergeant Charles Gordon was acting under the color of law and within the course and scope of his employment with CCADC.

26.

On September 29, 2019, Defendant Deputy Paul Wilkerson was employed by the Cobb County Sheriff's Office and worked at the CCADC.   Deputy Wilkerson resides at 1068 Merchants Drive, Apt 826, Dallas, GA 30132 and may be served with a copy of the Summons and Complaint at this address. This Defendant is subject to the jurisdiction and venue of this Court.

27.

On September 29, 2019, Deputy Paul Wilkerson was acting under the color of law and within the course and scope of his employment with CCADC.

28.

The conduct of all the Defendants was within the exercise of State authority within the meaning of 42 U.S.C. § 1983.

## **JURISDICTION AND VENUE**

29.

This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, as well as the Eighth and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§1331, 1343, and the aforementioned constitutional and statutory provisions.

30.

This Court has jurisdiction over Plaintiffs' state tort claims pursuant to its ancillary and pendent jurisdiction under 28 U.S.C. § 1367

31.

Venue is proper in the Northern District of Georgia, Atlanta Division pursuant to 28 U.S.C. § 1391 (b) and N.D.L.R. 3.1B(3) because the event giving rise to this claim occurred in Cobb County, Georgia , which is situated within the district and divisional boundaries of the Atlanta Division of the Northern District of Georgia.

32.

Defendants all reside within the Northern District of Georgia and are subject to the jurisdiction of this Court.

33.

The matter in controversy exceeds this court's $75,000.00 jurisdictional limit, exclusive of interest and costs.

34.

Plaintiffs timely submitted an ante-litem notice and a copy of that ante litem notice is attached as Exhibit A.

## FACTUAL BACKGROUND

### 35.

Attached to this Complaint as Exhibit B is the Affidavit of Claire Teske, a licensed registered nurse, setting forth the standard of care and the breach of the standard of care for treatment of patients, including detainees, under these same or similar circumstances.  Nurse Teske's Affidavit is incorporated herein by reference as if the same was set forth herein verbatim.

### 36.

On September 23-24, 2019, Cobb County Police Department arrested Kevil Wingo for suspected drug possession of .2 grams of cocaine on a white piece of paper found in his ashtray.

### 37.

On September 24, 2019, Mr. Wingo was booked as a detainee at CCADC.

### 38.

From September 24, 2019 through September 27, 2019, Kevil Wingo was housed in the infirmary at the CCADC for suspected opiate detox.

### 39.

From September 24, 2019 through September 27, 2019, Wellstar medical providers at the CCADC took and recorded Mr. Wingo's vital signs including blood pressure and pulse while he was housed in the infirmary at the CCADC.

40.

On September 28, 2019, Kevil Wingo was in Three-South of the Cobb County Adult Detention Center and began to experience abdominal pain and sweats.

41.

On September 28, 2019, Kevil Wingo was moved to Four-South of the CCADC and while he was housed in that location, he experienced abdominal pain, vomiting and sweats.

42.

Deputy Devvin Campbell, Deputy Kyle Wedekind and Deputy Sherita Hicks witnessed Mr. Wingo sweating and complaining of abdominal pain.

43.

On September 28, 2019, CCADC Deputy Matthew Howard called the Infirmary and informed the Infirmary Nurse Yvette Burton that Mr. Wingo was vomiting.

44.

On September 28, 2019, Pill Nurse Natalie Chance called Nurse Yvette Burton and informed her that Mr. Wingo was sweating, vomiting and was in pain.

45.

On September 28, 2019, Nurse Yvette Burton communicated to Deputy Howard without physically evaluating Mr. Wingo that Mr. Wingo was detoxing and to have pill nurse give him medicine.

46.

On September 28, 2019, Nurse Yvette Burton had a telephone conference with Natalie Chance and told her that Mr. Wingo was detoxing, without physically evaluating Mr. Wingo.

47.

On September 28, 2019, while housed on Four-South Mr. Wingo asked Nurse Natalie Chance and CCADC deputies to go to the infirmary.

48.

On September 28, 2019, Mr. Wingo was taken to the infirmary in a wheelchair by Deputy Quentin Appleby.  While being transported to the infirmary Mr. Wingo stated to Deputy Appleby that he was having ulcer pain, that he wasn't going to make it and that he wanted to go to the hospital.  Deputy Appleby reported this information to Nurse Yvette Burton and other Wellstar medical staff when he arrived in the Infirmary with Mr. Wingo.

49.

Mr. Wingo was taken to the infirmary in a wheelchair because he had difficulty walking at that time.

50.

Mr. Wingo arrived in the infirmary on September 28, 2019 at 11:52 p.m. and at that time, he requested to go to the hospital, but the nurses and CCADC officers would not call for an ambulance and did not take him to the hospital.

51.

When Mr. Wingo arrived in the infirmary, neither Nurse Yvette Burton, Nurse Shanna Griffith nor Kelly Jones physically examined Mr. Wingo.

52.

Neither Nurse Yvette Burton, Nurse Griffith nor Kelly Jones called a physician regarding Mr. Wingo when he arrived in the infirmary or any time throughout the evening and early morning hours of September 28-29, 2019.

53.

Nurse Yvette Burton entered a note in Mr. Wingo's medical records stating that she had spoken with a Dr. Hindi and that Dr. Hindi admitted Mr. Wingo to the infirmary.

54.

Dr. Hindi was never called or involved in Mr. Wingo's care.

55.

After Mr. Wingo arrived in the infirmary, he was put in a cell where he was not removed until after 7:30 a.m. on September 29, 2019.

56.

Mr. Wingo had difficulty walking when he was initially placed in his cell upon admission to the infirmary.

57.

In the morning hours of September 29, 2019, Mr. Wingo was removed from his cell in the infirmary to be transferred to a padded Close Observation Cell located in the infirmary extension.

58.

Throughout the evening and early morning hours of September 28-29, 2019, Mr. Wingo complained of pain and communicated his complaints of pain to the Wellstar medical staff including Nurse Yvette Burton, Nurse Kelly Jones, and Nurse Shanna Griffith.

59.

At times throughout the evening and early morning hours of September 28-29, 2019, Mr. Wingo complained to Wellstar medical staff of issues with his ulcer and abdominal pain.

60.

Throughout the evening and early morning hours of September 28-29, 2019, Mr. Wingo asked Wellstar medical staff, including Nurse Yvette Burton and Nurse Shanna Griffith to go to the hospital.

61.

Nurse Kelly Jones was aware of Mr. Wingo's requests to go to the hospital throughout the evening and early morning hours of September 28-29, 2019.

62.

 Mr. Wingo was in physical distress throughout the evening and early morning hours of September 28 -29, 2019.

63.

Wellstar medical staff did not physically examine Mr. Wingo throughout the evening and early morning hours of September 28-29, 2019.

64.

After initially admitting Mr. Wingo to the infirmary on September 28, 2019, Wellstar medical staff did not check Mr. Wingo's vitals any other times throughout the evening and early morning hours of September 28-29, 2019.

65.

Nurse Shanna Griffith played cards on her computer at times during the early morning hours of September 29, 2019.

66.

At times, Nurse Shanna Griffith surfed the internet for non-medical related reasons during the early morning hours of September 29, 2019.

67.

At times, Nurse Shanna Griffith watched football on her computer at times during the early morning hours of September 29, 2019.

68.

On September 29, 2019, Nurse Shanna Griffith entered at least two notes for Mr. Wingo.

69.

At or around 3:54 a.m. on September 29, 2019, Nurse Shanna Griffith entered a note into Mr. Wingo's medical chart that included language that Mr. Wingo's original compliant was nausea and vomiting from detoxing off IV Heroin,

then changed complaint to ulcers, then Mr. Wingo stated he needed to go to hospital for penile discharge, his vitals were stable, and that he was in no acute distress.

70.

Nurse Yvette Burton and Nurse Kelly Jones observed Nurse Shanna Griffith enter the 3:54 note and approved same.

71.

Nurse Griffith did not check Mr. Wingo's vitals at or around 3:54 a.m. and did not know with medical certainty if Mr. Wingo's vitals were stable at that time.

72.

None of the Wellstar medical staff checked Mr. Wingo's vitals at or around 3:54 a.m. and could not have known if his vitals were stable at that time.

73.

Mr. Wingo did show signs of acute distress throughout early morning hours of September 29, 2019.

74.

At or around 5:40 a.m. on September 29, 2019, Nurse Griffith enters a note into Mr. Wingo's medical chart that "Pt able to eat 100% of breakfast tray.  No complaints of nausea or vomiting."

75.

Nurse Kelly Jones and Nurse Samantha Garland observed Nurse Griffith enter the 5:40 a.m. note and assisted her in entering same.

76.

Nurse Shanna Griffith did not personally observe Mr. Wingo's breakfast tray at any time during the morning hours of September 29, 2019.

77.

Nurse Kelly Jones did not personally observe Mr. Wingo's breakfast tray at any time during the morning hours of September 29, 2019.

78.

Nurse Samantha Garland did not personally observe Mr. Wingo's breakfast tray at any time during the morning hours of September 29, 2019.

79.

None of the Wellstar medical staff personally observed Mr. Wingo's breakfast tray at any time during the morning hours of September 29, 2019.

80.

On September 29, 2019, after Mr. Wingo was in the infirmary for at least seven and a half hours, Wellstar Charge Nurse Annaleen Visser had Mr. Wingo removed from the infirmary and taken to a padded Close Observation Cell.

81.

At or around 7:50 a.m. on September 29, 2019, Nurse Annaleen Visser entered a note in Mr. Wingo's medical chart that Mr. Wingo was being loud, disruptive, fighting with other inmates, pretending he can't walk and drug seeking.

82.

At the time, Nurse Visser entered the 7:50 note Mr. Wingo had already been taken to the padded Close Observation Cell.

83.

At or around 7:31 a.m. on September 29, 2019, Mr. Wingo exited the infirmary cell after the cell door was opened by Deputy Lynda Marshall and was on the ground in front of the nurses' station from 7:31 a.m. – 7:40 a.m.

84.

From 7:31 a.m. – 7:40 a.m. on September 29, 2019, Mr. Wingo was in physical distress in front of the nurses' station.

85.

From 7:28 a.m. – 7:32 a.m. Mr. Wingo appeared to faint or fall to the ground in his cell at least three times.  Two of those times were when he was in the front area of the cell and the third time he was in the shower area of the cell.

86.

None of the Wellstar medical personnel including Nurse Annaleen Visser, Nurse Samantha Garland, and Nurse Shannea Hopkins assisted Mr. Wingo while he was on the floor in front of the nursing station from 7:31 a.m. – 7:40 a.m. on September 29, 2019.

87.

At or around 7:31 a.m. Deputy Lynda Marshall opened Mr. Wingo's cell and he dropped to the ground in front of the nurses' station.

88.

At or around 7:31 a.m. on September 29, 2019, Sgt Charles Gordon entered the infirmary and saw Mr. Wingo on the floor in front of the nurses' station.

89.

Mr. Wingo was in physical distress and in need of immediate medical attention when Sergeant Gordon saw Mr. Wingo on the ground in front of the infirmary cell.

90.

In September 2019, Sergeant Gordon had been with the CCAD for 20 years and had experience dealing with inmates in need of medical attention.

91.

Sergeant Gordon was the Infirmary Supervisor on September 29, 2019.

92.

Per CCADC policies and procedures, Sergeant Gordon had the authority to call an ambulance for Mr. Wingo on September 29, 2019.

93.

At or around 7:40 a.m. Sergeant Gordon escorted Mr. Wingo from in front of his cell to a chair in front of the nurses' station by grabbing Mr. Wingo by his uniform collar and placing him in a chair.

94.

Mr. Wingo attempted to rest his head on a medical gurney in front of the nurses' station, but Sergeant Gordon would not allow Mr. Wingo to place his head on the gurney and pulled him back to his chair at least twice.

95.

At or around 7:43 a.m. on September 29, 2019, CCADC Watch Commander Major Branson Harris entered the infirmary and spoke with Nurse Annaleen Visser regarding moving Mr. Wingo.

96.

At the time, Major Branson Harris entered the infirmary Mr. Wingo was in obvious physical distress and needed immediate medical attention.

97.

Major Harris had been with the CCAD for 30 years and had experience dealing with inmates in need of medical attention.

98.

Per CCADC policies and procedures, Major Harris had the authority to call an ambulance for Mr. Wingo on September 29, 2019.

99.

Nurse Visser communicated to Major Branson Harris that Mr. Wingo was acting out, detoxing and should be removed to the isolated Close Observation Cell.

100.

At or around 7:46 a.m. Major Branson Harris with the assistance of Sergeant Gordon began to walk Mr. Wingo to the padded Close Observation Cell.

101.

Mr. Wingo was unable to walk from the infirmary to the Close Observation Cell and fell to the ground on the way.

102.

Neither Major Harris nor Sergeant Gordon took Mr. Wingo back to the infirmary after he fell to the ground on his way walking to the infirmary.

103.

Major Harris and Sergeant Gordon with the assistance of Deputy Nasie Mejia placed Mr. Wingo in a wheelchair and Mr. Wingo was wheeled to the Close Observation Cell.

104.

Mr. Wingo was too weak to walk to the padded Close Observation Cell.

105.

Major Harris, Sergeant Gordon, and Deputy Nasie Mejia then placed Mr. Wingo's body in the Close Observation Cell 18, removed Mr. Wingo's clothes and Major Harris placed a suicide smock on his back.

106.

Deputy Paul Wilkerson came to Mr. Wingo's cell while Major Harris, Sergeant Gordon and Deputy Mejia placed Mr. Wingo in the padded Close observation cell.

107.

Deputy Wilkerson put two cups of water in Mr. Wingo's Close Observation cell.

108.

At or around 7:50 a.m. Major Harris, Sergeant Gordon, and Deputy Mejia left the padded Close Observation cell Mr. Wingo was in and closed the door.

109.

Mr. Wingo was in obvious physical distress when he was placed in the padded Close Observation Cell and when Major Harris, Sgt Gordon and Deputy Mejia exited the padded Close Observation Cell.

110.

Mr. Wingo had a serious medical condition when he was removed from the infirmary and taken to the padded Close Observation Cell.

111.

Mr. Wingo's serious medical condition was obvious to non-medical people and he needed immediate medical care.

112.

Neither Sergeant Gordon nor Major Harris requested that Mr. Wingo receive any medical care after they put Mr. Wingo in the Close Observation Cell.

113.

Less than 12 minutes after Major Harris, Sergeant Gordon and Deputy Mejia left the padded Close Observation Cell Mr. Wingo was placed, Mr. Wingo never moved again on his own initiative.

114.

Deputy Paul Wilkerson was responsible for monitoring the padded Close Observation Cell Mr. Wingo was placed in.

115.

CCADC written policies state that Close Observation Cells are to be monitored every 15 minutes.

116.

CCADC practice is that Close Observation Cells are monitored every 12 minutes.

117.

The proper way to monitor a Close Observation cell is to physically look into the cell and determine if the detainee and/or inmate is breathing by looking at his/her chest rise and fall.

118.

Deputy Paul Wilkerson did not look into Mr. Wingo's cell on at least two occasions when he walked by Mr. Wingo's padded Close Observation Cell and scanned Mr. Wingo's cell indicating that he had monitored Mr. Wingo's cell.

119.

At or around 8:49 a.m. Deputy Wilkerson opened Mr. Wingo's padded Close Observation and noticed that he was not moving and was unresponsive.

120.

At or around 8:52 a.m. a Code Blue was called for Mr. Wingo.

121.

CCADC staff and Wellstar medical staff were unable to obtain a pulse, blood pressure or respiration for Mr. Wingo.  Mr. Wingo's skin was cool and clammy at that time and his stomach was distended. His pupils were fixed and non-reactive.  He was unable to follow verbal commands.

**COUNT I**
**VIOLATION OF SECTION 42 U.S.C. SECTION 1983**
**ALL DEFENDANTS**

122.

Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 121 as if fully stated herein.

123.

This count is asserted against all defendants in their individual capacities only.

124.

The conditions in which a pre-convicted detainee is confined is subject to scrutiny under the Eighth and Fourteenth Amendments of the United States Constitution and subject to actions under Section 1983.

125.

The acts of Sheriffs, deputies, nurses, and jail staff members in a detention facility in addressing an inmates' medical care are acts under color of state law.

126.

Defendant Wellstar had a contract with CCADC to provide medical services to inmates.   Accordingly, all medical personnel acting pursuant to that contract acted under color of state law.

127.

Defendants acted under color of State law under the circumstances of this case as detailed above.

128.

Mr. Wingo suffered a serious medical condition in that his ulcer had perforated and that he needed immediate medical care or he was going to die.

129.

Mr. Wingo's need for medical treatment was or should have been obvious to all defendants, but even if it was not Mr. Wingo communicated the issue with his ulcer throughout the evening and early morning hours of September 28-29, 2019.

130.

Defendants deprived Mr. Wingo of rights and privileges afforded to him under the Eighth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983.

131.

Defendants, individually and collectively, had an obligation to make sure that detainees/inmates at CCADC received reasonable medical care when needed.

132.

Defendants, individually and collectively, had an obligation to ensure that the serious medical needs of detainees/inmates detained at CCADC were timely and adequately addressed.

133.

Defendants failed to attend to Mr. Wingo's serious medical condition and did not provide him medical care when he was in obvious physical distress and needed medical care.

134.

Defendants' failure to adequately attend to Mr. Wingo's serious medical condition caused his death.

135.

Defendants' failure to adequately attend to Mr. Wingo's serious medical condition was in violation of the Eighth and Fourteenth Amendments of the United States Constitution.

136.

Defendants' conduct evinced a deliberate indifference to the serious medical needs and safety of Mr. Wingo.

137.

Defendants Nurse Annaleen Visser, Nurse Yvette Burton, Nurse Kelly Jones, Nurse Shanna Griffith, Nurse Samantha Garland and Nurse Shannea Hopkins violated Mr. Wingo's constitutional right to receive medical care when he was suffering from a serious medical condition by failing to provide him medical care while he was housed in the infirmary and failing to send him to the hospital after he repeatedly requested same and displayed obvious signs of physical distress.

138.

Nurse Annaleen Visser further violated Mr. Wingo's constitutional right to receive medical care after she was told by other Wellstar medical personnel that he could not breath and was asking for help, and Nurse Visser refused to examine Mr.

Wingo or check his vitals and refused to allow anyone else to examine Mr. Wingo or check his vitals.

139.

Defendants Major Harris, Sergeant Gordon and Deputy Wilkerson violated Mr. Wingo's constitutional right to receive medical care by failing to make sure that he received medical care in the infirmary after witnessing Mr. Wingo in obvious physical distress on numerous occasions from 7:31 a.m. through 9:00 a.m.

140.

Major Harris and Sergeant Gordon had both worked at the CCADC for over 30 and 20 years respectively and had witnessed individuals in medical distress and were both trained to identify individuals in medical distress.

141.

Major Harris and Sergeant Gordon witnessed Mr. Wingo experiencing a serious medical condition and unable to walk on his own.  Major Harris and Sergeant Gordon then placed Mr. Wingo in a wheelchair and wheeled him in a padded Close Observation Cell.

142.

Major Harris, Sergeant Gordon and Deputy Paul Wilkerson saw Mr. Wingo's condition when they placed him in the padded Close Observation Cell and knew or should have known that he was experiencing a serious medical

condition and needed medical attention.   They all ignored his serious medical condition and left him to die.

### 143.

Defendants knew or should have known that their failure to provide Mr. Wingo medical care could result in him suffering permanent injury or harm.

### 144.

Defendants acts showed a deliberate indifference to Mr. Wingo's medical condition and need for medical attention in violation of Eighth and Fourteenth Amendments of the United States Constitution.

### 145.

Defendants failure to provide Mr. Wingo medical care caused his death.

**COUNT II – NEGLIGENCE**
**WELLSTAR HEALTH SYSTEM, INC., NURSE ANNALEEN VISSER, NURSE YVETTE BURTON, NURSE SHANNA GRIFFITH, NURSE SAMANTHA GARLAND, NURSE KELLY JONES, NURSE SHANNEA HOPKINS**

### 146.

Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 145 above as if fully stated herein.

147.

Plaintiff asserts this count against Defendants Wellstar, Nurse Annaleen Visser, Nurse Yvette Burton, Nurse Shanna Griffith, Nurse Samantha Garland, Nurse Kelly Jones, and Nurse Shannea Hopkins (hereinafter collectively referred to as "Wellstar Defendants").

148.

At all material times hereto, Wellstar Defendants were charged with the duty of using due and proper care in treating, caring for, and attending to Mr. Kevil Wingo.

149.

Nurse Yvette Burton, Nurse Shanna Griffith and Nurse Kelly Jones were the nurses assigned to care for Mr. Wingo on September 28-29, 2019 from around 11:45 p.m. to 6:00 a.m.  Nurse Annaleen Visser, Nurse Samantha Garland and Nurse Shannea Hopkins were assigned to care for Mr. Wingo on September 29, 2019 from around 6:00 a.m. until he died.

150.

The standard of care for a registered nurse is the reasonable degree of care and skill which, under similar conditions and like circumstances, is ordinarily employed by the profession generally.

151.

The standard of care for registered nurses treating patients in general and in confinement includes:

a.  Assess the patient/client in a systematic, organized manner;

b.  Formulate a nursing diagnosis based on accessible, communicable, and recorded data (which is collected in a systematic and continuous manner);

c.  Plan care which includes goals and prioritized nursing approaches or measures derived from the nursing diagnoses;

d.  Implement strategies to provide for patient/client participation in health promotion, maintenance, and restoration;

e.  Initiate nursing actions to assist the patient/client to maximize his/her health capabilities;

f.  Evaluate with the patient/client the status of goal achievement as a basis for reassessment, reordering of priorities, new goal-setting and revision of the plan of nursing care;

g.  Communicate, collaborate, and function with other members of the health team to provide optimum care;

h.  Respect the dignity and rights of the patient/client regardless of socioeconomic status, personal attributes, or nature of health problems; and

i.  Provide nursing care without discrimination on the basis of diagnosis, age, sex, race, creed, or color.

152.

The standard of care for a licensed practical nurse treating patients in general and in confinement includes:

a.  Participating in patient assessment activities and the planning, implementation, and evaluation of the delivery of health care services and other specialized tasks when appropriately educated and consistent with board rules and regulations;

b.  Providing direct personal patient observation, care, and assistance in hospitals, clinics, nursing homes, or emergency treatment facilities, or other health care facilities in areas of practice including, but not limited to: coronary care, intensive care, emergency treatment, surgical care and recovery, obstetrics, pediatrics, outpatient services, dialysis, specialty labs, home health care, or other such areas of practice;

c.  Performing comfort and safety measures;

d.  Administering treatments and medications by various routes;

e.  Participating in the management and supervision of unlicensed personnel in the delivery of patient care; and

f.  Performing other specialized tasks as appropriately educated.

153.

Nurse Yvette Burton, Nurse Shanna Griffith, Nurse Annaleen Visser, and Nurse Samantha Garland had a duty to Mr. Wingo to practice nursing within the standard of care and violated the standard of care for registered nurses by failing to care for Mr. Wingo as indicated in Paragraph 151(a) – (i).

154.

Nurse Yvette Burton failed to send Mr. Wingo to the hospital for care and treatment when he initially presented to the infirmary and throughout the early morning hours of September 29, 2019 when Mr. Wingo was in obvious physical distress.

155.

Nurse Burton did not contact a physician regarding Mr. Wingo's care throughout the evening and early morning hours of September 28-29, 2019.

156.

Nurse Burton did not physically examine Mr. Wingo when she was contacted by deputies regarding his care and when he was housed in the infirmary.

157.

Nurse Shanna Griffith failed to send Mr. Wingo to the hospital for care and treatment when he initially presented to the infirmary and throughout the early

morning hours of September 29, 2019 when Mr. Wingo was in obvious physical distress.

158.

Nurse Griffith did not contact a physician regarding Mr. Wingo's care throughout the evening and early morning hours of September 28-29, 2019.

159.

Nurse Griffith did not physically examine Mr. Wingo when he was housed in the infirmary.

160.

Nurse Griffith did not care for Mr. Wingo and should have checked his vitals regularly and evaluated and assessed Mr. Wingo.

161.

Nurse Annaleen Visser did not properly care for Mr. Wingo and should have reviewed his chart when her shift began, evaluated, and examined Mr. Wingo when he was in obvious physical distress and checked his vitals when Mr. Wingo was in obvious physical distress.

162.

Nurse Visser failed to send Mr. Wingo to the hospital for care and treatment when she saw him in the infirmary in obvious physical distress.

163.

Nurse Visser did not contact a physician regarding Mr. Wingo's care throughout the morning of September 29, 2019.

164.

Nurse Visser did not physically examine Mr. Wingo when he was housed in the infirmary in obvious physical distress.

165.

Nurse Samantha Garland should have evaluated, examined, and cared for Mr. Wingo when she saw him in obvious physical distress.

166.

Nurse Garland failed to send Mr. Wingo to the hospital for care and treatment when was in obvious physical distress.

167.

Nurse Garland did not contact a physician regarding Mr. Wingo's care the morning of September 29, 2019.

168.

Nurse Garland did not physically examine Mr. Wingo when he was housed in the infirmary in obvious physical distress.

169.

Nurse Kelly Jones and Nurse Shannea Hopkins had a duty to Mr. Wingo to practice nursing within the standard of care and violated the standard of care for licensed practical nurses by failing to care for Mr. Wingo as indicated in Paragraph 152(a) – (f).

170.

Both Nurse Kelly Jones and Nurse Shannea Hopkins failed to care for Mr. Wingo at all when they saw that he was in physical distress and failed to check his vitals.

171.

The Wellstar nurses' failure to properly care for Mr. Kevil Wingo, Sr. caused his death on September 29, 2019.

172.

At all times pertinent hereto, Nurse Annaleen Visser, Nurse Yvette Burton, Nurse Shanna Griffith, Nurse Samantha Garland, Nurse Shannea Hopkins, and Nurse Kelly Jones were acting within the course and scope of their employment with Wellstar.

173.

Wellstar is liable for acts and omissions of the nurses stated in Paragraph 172 under the doctrine of respondeat superior, agency or apparent agency.

## COUNT III – NEGLIGENCE
## MAJOR BRANSON HARRIS, SERGEANT CHARLES GORDON AND DEPUTY PAUL WILKERSON

### 174.

Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 173 above as if fully stated herein.

### 175.

Plaintiff asserts this count against Major Branson Harris, Sergeant Charles Gordon, and Deputy Paul Wilkerson in their individual capacities only. (hereinafter collectively referred to as "CCADC Defendants")

### 176.

Providing medical care for inmates is a ministerial duty.

### 177.

CCADC Defendants must follow the written policies and procedures of the Cobb County Sheriff's Office ("CCSO").

### 178.

Following the CCSO's policies and procedures is a ministerial duty.

### 179.

CCSO policies and procedures provide that inmates shall have adequate and proper access to emergency medical care.  Medical staff shall ensure that prompt

medical attention (response) is provided in situations deemed a medical emergency.  Policy 2-06-04.00

180.

CCSO policies and procedures provide that staff shall be observant and responsive to signs of an emergency medical situation within the facility. Policy 2-06-04.01

181.

CCSO policies and procedures provide that the delivery of emergency medical services shall be a top priority, taking precedence over routine duties and responsibilities. Policy 2-06-04.01

182.

CCSO policies and procedures provide that the following medical conditions may constitute a medical emergency.

a. Head injury or severe bleeding.

b.  Severe burns.

c.  Serious breathing difficulties or breathing has stopped.

d.  No pulse.

e.  Seizures, convulsions or severe tremors

f.  Unconscious, fainting (unresponsive).

g.  Chest pains

h.  Other symptoms indicating a serious medical emergency.

i.  Any life-threatening injury or illness. Policy 2-06-04.01

183.

CCSO policies and procedures provide that inmates requiring emergency treatment beyond the facility's resources and capabilities shall be transported to a designated treatment facility or the nearest emergency room.  Inmates requiring increased monitoring or close observation may be placed in Close Observation Cells. Policy 2-3-07.01

184.

CCADC Defendants failed to provide Mr. Kevil Wingo emergency medical care in violation of the aforementioned CCSO policies and procedures despite Mr. Wingo's obvious need for emergency medical care when Major Harris and Sergeant Gordon took him from the infirmary to the Close Observation Cell.  At that time, Mr. Wingo had fainted, had difficulty breathing, was unable to walk on his own, was in severe pain, losing consciousness, and was in severe obvious pain.

185.

CCSO policies and procedures provide that Medical or security personnel may request placement of an inmate into Close Observation for reasons that include but are not limited to:

a.  Inmate exhibits signs of abnormal behavior (e.g. hearing voices);

b. Inmate is displaying marked change in behavior occurring over an extended period of time (e.g. refusal of means or shower);

c. Inmate refused to take medication; and

d. Inmate speaks of or acts on threats of self-harm or threatens to harm others.

Policy 2-03-07.01

186.

Mr. Kevil Wingo did not display signs of self-harm, refusal of meals or showers or a refusal to take medication.

187.

CCSO policies and procedures provide that Inmates placed in Close Observation shall require security staff to complete one or more forms for placement in Close Observation.  Those forms include:

a. Notice of Segregation: The watch commander shall complete this form when authorizing placement of inmates in Close Observation or for other circumstances.

b. Request for Placement in Close Observation: Any employee may complete this form for processing when requesting placement of inmates into Close Observation for various reasons.

c. Recommended Housing Assignment by Medical or Mental Health Staff: Any healthcare provider shall complete this form when requesting placement of inmates to be housed in Close Observation.

188.

The Request for Placement in Close Observation form includes an evaluation and assessment section that one must indicate that the inmate meets the criteria for placemen in a Close Observation Cell.

189.

The Request for Placement in Close Observation form is required to be completed to ensure that an inmate meets the requirements for placement in a Close Observation Cell and has been medically cleared for placement in same.

190.

When an inmate is placed in Close Observation an OMS facility incident report shall be generated by the staff members making the request and

a. Shall detail the reasons for requesting placement in Close Observation;

b. Employees immediate Supervisor shall be notified;

c. A copy of the facility incident report shall be provided to mental health professional; and

d. A copy of the facility incident report shall be forwarded to classification staff to affect a re-classification review.  Policy 2-03-07.01

191.

None of the CCADC Defendants completed any of the required forms and/or incident reports for Mr. Wingo to be placed in a Close Observation Cell.

192.

CCSO policies and procedures provide that the placement of inmates in a Close Observation Cell requires staff to conduct frequent and random observation/security rounds that shall not be more than 15 minutes apart. Policies 2-03-07.01; 2-03-01.00

193.

CCSO policies and procedures provide that monitoring of inmates in a Close Observation Cell shall include an unobstructed visual check to ensure the inmate's presence and physical well-being. Policy 2-03-07.01

194.

Deputy Paul Wilkerson did not properly monitor Mr. Wingo after he was placed in Close Observation Cell.

195.

Deputy Paul Wilkerson did not perform an unobstructed visual check to ensure Mr. Wingo's presence and physical well-being on at least two occasions while Mr. Wingo was housed in the Close Observation Cell.

196.

The CCADC Defendants violated one or more of the aforementioned CCSO policies and procedures.

197.

CCADC Defendants negligently performed or failed to perform their ministerial functions in failing to provide Mr. Wingo emergency medical care; in failing to call for an ambulance for Mr. Wingo when he was in physical distress in Infirmary and when they transported Mr. Wingo to padded Close Observation Cell; in failing to complete required evaluations and forms for Mr. Wingo to be placed in a Close Observation Cell; and in failing to properly monitor Mr. Wingo after he was placed in padded Close Observation Cell.

198.

Mr. Wingo's death was proximately caused by the CCADC Defendants as alleged herein.

## COUNT IV
## PUNTIVE DAMAGES AGAINST NURSE ANNALEEN VISSER

199.

Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 198 above as if fully stated herein.

200.

This Count is asserted against Nurse Annaleen Visser only.

201.

The acts and omissions of Annaleen Visser as alleged showed intent, willful misconduct, malice, fraud, wantonness, oppression and/or that entire want of care which raised the presumption of conscious indifference to the consequences entitling Plaintiffs to an award of punitive damages in an amount sufficient to deter Nurse Annaleen Visser from the same or similar actions in the future in accordance with O.C.G.A. § 51-12-5.1.

202.

Nurse Annaleen Visser is a trained registered nurse that has worked at the CCADC for over 20 years.

203.

Nurse Annaleen Visser harbored negative feelings against Mr. Wingo based on Mr. Wingo being a black male.

204.

Nurse Annaleen Visser harbors negative feelings against black people in general.

205.

Nurse Annaleen Visser routinely treated the white inmates more favorably than the black inmates.

206.

Nurse Annaleen Visser knew that if she withheld medical care to Kevil Wingo in his condition that he would die.

207.

Nurse Annaleen Visser's conduct was done with reckless disregard of Mr. Wingo's rights.

208.

The acts and omissions of Defendant Annaleen Visser justify an award of punitive damages to Plaintiffs.

## **DAMAGES**

209.

Plaintiffs are entitled to recover as Administrator of Kevil Wingo's Estate and as Mr. Wingo's Children for both Survivorship and Wrongful Death Claims including but not limited to Mr. Wingo's pain and suffering, medical, funeral, and other expenses, the full value of Mr. Wingo's life, mental anguish, loss of society, companionship, care, and guidance that was proximately caused by all Defendants for its Section 1983 violations and Negligence.

## <u>JURY TRIAL DEMANDED</u>

210.

Plaintiffs demand a trial by a jury on all matters that can be so tried.

WHEREFORE, Plaintiff respectfully requests this Court enter Judgment against Defendants for actual and compensatory damages, award punitive damages against Nurse Annaleen Visser, attorney fees, costs, and all other relief the Court deems just and equitable.

## <u>CERTIFICATION</u>

Plaintiffs' counsel certifies that this brief has been prepared with 14 Point Font.

This 3<u>rd</u> day of September, 2020.

Respectfully submitted,

s/ Timothy J. Gardner
**TIMOTHY J. GARDNER**
Georgia Bar No. 115430
**HENRIETTA G. BROWN**
Georgia Bar No. 253547
**Attorneys for Plaintiffs**

Gardner Trial Attorneys, LLC
3100 Cumberland Blvd.
Suite 1470
Atlanta, GA 30339
Phone:  770.693.8202
Fax:  404.393.9838
tjg@gardnertrialattorneys.com
hgb@gardnertrialattorneys.com

DOCKET 17

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIFFANY WINGO as Administrator  )
Of the Estate of KEVIL WINGO,  )
SR., KIEARA WINGO, as surviving  )      CIVIL ACTION FILE NO:
Child of KEVIL WINGO, SR.,  )           1:20-CV-03662-AT
ANGEL CALLOWAY, as mother  )
And next friend of ERIKA WINGO,  )
surviving minor child of KEVIL  )
WINGO, SR., and FATIMA  )
THOMAS, as mother and next friend  )
Of KEVIL WINGO, JR., surviving  )
Minor child of KEVIL WINGO, SR.  )
                                 )
         Plaintiffs,             )
                                 )
v.                               )
                                 )
WELLSTAR HEALTH SYSTEM,  )
INC., ANNALEEN VISSER, R.N.,  )
YVETTE BURTON, R.N., SHANNA )
GRIFFITH, R.N., KELLY JONES,  )
L.P.N., SAMANTHA GARLAND,  )
R.N., SHANNEA HOPKINS, L.P.N., )
COBB COUNTY SHERIFF'S  )
OFFICE MAJOR BRANSON  )
BRANSON HARRIS, in his  )
individual capacity, COBB COUNTY )
SHERIFF'S OFFICE SERGEANT  )
CHARLES GORDON, in his  )
Individual capacity, COBB COUNTY )
SHERIFF'S OFFICE DEPUTY  )
PAUL WILKERSON, in his  )
individual capacity.  )
                                 )
Defendants.  )

## ANSWER AND DEFENSES OF DEFENDANTS BRANSON HARRIS, CHARLES GORDON, AND PAUL WILKERSON TO PLAINTIFFS' COMPLAINT

COMES NOW defendants Major Branson Harris, Lt. Charles Gordon[1], and Paul Wilkerson, (hereinafter "Defendants") and hereby submit their Answer and Defenses to Plaintiffs' Complaint (Doc. 1), showing the Court as follows:

## FIRST DEFENSE

In whole or in part, Plaintiffs' Complaint fails to state a claim for relief against Defendants and should therefore be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## SECOND DEFENSE

Plaintiffs' alleged § 1983 claims against Defendants are barred as Defendants are entitled to qualified immunity.

## THIRD DEFENSE

Plaintiffs' alleged state-law claims against Defendants are barred by the doctrine of official act immunity as Defendants were acting solely in their official capacity with respect to all of Plaintiffs' alleged claims.

---

[1] The Complaint identifies Charles Gordon as "Sgt. Charles Gordon." Lt. Gordon is now a Lieutenant with the Cobb County Sheriff's Office.

**FOURTH DEFENSE**

Plaintiffs' claims do not support a claim for relief under 42 U.S.C. §1983, as any deprivation alleged therein does not rise to the level of a constitutional or federal law violation.

**FIFTH DEFENSE**

Plaintiffs' alleged claims under 42 U.S.C. §1983 are barred because Plaintiffs have failed to plead same with the specificity required to state a cause of action.

**SIXTH DEFENSE**

Defendants breached no duty to the Plaintiffs and/or to Kevil Wingo, Sr.

**SEVENTH DEFENSE**

Any injuries or damages allegedly sustained by the Plaintiffs and/or Kevil Wingo, Sr. were not directly or proximately caused by any action or inaction of Defendants.

**EIGHTH DEFENSE**

To the extent as may be shown by the evidence through discovery, Plaintiffs' alleged claims for injuries and damages are barred in whole or in part because of the actions and activities of Kevil Wingo, Sr. which contributed in whole or in part to Plaintiffs' alleged injuries or damages.

## NINTH DEFENSE

To the extent as may be shown by the evidence through discovery, Plaintiffs'
alleged claims for injuries and damages are barred in whole or in part because of the
actions and activities of others which contributed in whole or in part to Plaintiffs'
alleged injuries or damages.

## TENTH DEFENSE

To the extent as may be shown by the evidence through discovery, any loss
or damage allegedly suffered by Plaintiffs was the direct and proximate result of
Kevil Wingo, Sr.'s conduct and/or conduct of others for which Defendants are not
liable.

## ELEVENTH DEFENSE

Plaintiffs' alleged claims against Defendants are barred because they acted in
good faith and without malice at all times relevant to Plaintiffs' allegations.

## TWELFTH DEFENSE

To the extent as may be shown by the evidence through discovery, any loss
or damage allegedly suffered by Plaintiffs was caused by Kevil Wingo, Sr.'s failure
to exercise ordinary care.

## THIRTEENTH DEFENSE

Defendants have not violated any rights, privileges or immunities under the Constitution or laws of the United States or the State of Georgia or any political subdivision thereof, nor have defendants violated any act of Congress providing for the protection of civil rights.

## FOURTEENTH DEFENSE

Defendants assert any and all affirmative defenses set forth in Rule 8(c)(1) of the Federal Rules of Civil Procedure that are or may hereafter be applicable to this action. Defendants reserve the right to plead and prove such other defenses as may become known to them during the course of their investigation and discovery.

## FIFTEENTH DEFENSE

To the extent as may be shown by the evidence through discovery, all or some of the Plaintiffs may lack standing to assert some or all of the claims against Defendants.

## SIXTEENTH DEFENSE

These Defendants respond to the individually numbered paragraphs of Plaintiffs' Second Amended Complaint as follows:

## ANSWER TO: "PARTIES"

1.

Defendants can neither admit nor deny the allegations in paragraph 1 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

2.

Defendants can neither admit nor deny the allegations in paragraph 2 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

3.

Defendants admit the allegations in paragraph 3 of Plaintiffs' Complaint.

4.

Defendants can neither admit nor deny the allegations in paragraph 4 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

5.

Defendants can neither admit nor deny the allegations in paragraph 5 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

6.

Defendants can neither admit nor deny the allegations in paragraph 6 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

7.

Defendants can neither admit nor deny the allegations in paragraph 7 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

8.

Defendants can neither admit nor deny the allegations in paragraph 8 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth

thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

9.

Defendants can neither admit nor deny the allegations in paragraph 9 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

10.

Defendants can neither admit nor deny the allegations in paragraph 10 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

11.

Defendants can neither admit nor deny the allegations in paragraph 11 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

12.

Defendants can neither admit nor deny the allegations in paragraph 12 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

13.

Defendants can neither admit nor deny the allegations in paragraph 13 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

14.

Defendants can neither admit nor deny the allegations in paragraph 14 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

15.

Defendants can neither admit nor deny the allegations in paragraph 15 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth

thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

16.

Defendants can neither admit nor deny the allegations in paragraph 16 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

17.

Defendants can neither admit nor deny the allegations in paragraph 17 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

18.

Defendants can neither admit nor deny the allegations in paragraph 18 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

19.

Defendants can neither admit nor deny the allegations in paragraph 19 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

20.

Defendants can neither admit nor deny the allegations in paragraph 20 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

21.

Defendants can neither admit nor deny the allegations in paragraph 21 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

22.

Defendants admit the allegations in paragraph 22 of Plaintiffs' Complaint.

23.

Defendants admit the allegations in paragraph 23 of Plaintiffs' Complaint.

24.

Defendants admit the allegations in paragraph 24 of Plaintiffs' Complaint.

25.

Defendants admit the allegations in paragraph 25 of Plaintiffs' Complaint.

26.

Defendants admit the allegations in paragraph 26 of Plaintiffs' Complaint.

27.

Defendants admit the allegations in paragraph 27 of Plaintiffs' Complaint.

28.

Responding to the allegations in paragraph 28 of Plaintiffs' Complaint, defendants admit that they acted within the exercise of State authority within the meaning of 42 U.S.C. § 1983 at all times relevant to Plaintiffs' Complaint. These defendants can neither admit nor deny the allegations in paragraph 28 of Plaintiffs' Complaint with respect to the other defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

## ANSWER TO: "JURISDICTION AND VENUE"

29.

The allegations in paragraph 29 of Plaintiffs' Complaint contain conclusions of law to which no response is required. To the extent a response is required, defendants admit that Plaintiffs have brought claims pursuant to 42 U.S.C. §§ 1983 and 1988, as well as the Eighth and Fourteenth Amendments of the United States Constitution, but deny that they have violated any of Plaintiffs' constitutional rights. Defendants admit that jurisdiction is proper. Defendants deny any remaining allegations in paragraph 29 of Plaintiffs' Complaint.

30.

Defendants admit the allegations in paragraph 30 of Plaintiffs' Complaint.

31.

Defendants admit the allegations in paragraph 31 of Plaintiffs' Complaint.

32.

Responding to the allegations in paragraph 32 of Plaintiffs' Complaint, defendants admit that they are subject to the jurisdiction of this Court. These defendants can neither admit nor deny the allegations in paragraph 32 of Plaintiffs' Complaint with respect to the other defendants for lack of sufficient information to

form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

33.

Defendants can neither admit nor deny the allegations in paragraph 33 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

34.

The allegations in paragraph 34 of Plaintiffs' Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants state that Exhibit A to Plaintiffs' Complaint speaks for itself. Defendants deny any remaining allegations in paragraph 34 of Plaintiffs' Complaint.

ANSWER TO: "FACTUAL BACKGROUND"

35.

Responding to the allegations in paragraph 35 of Plaintiffs' Complaint, Defendants admit the affidavit of Clair Teske is attached to the Complaint. Further responding, to the extent Plaintiffs purport to incorporate Teske's affidavit into the Complaint verbatim, Defendants deny each and every allegation therein.

36.

On information and belief, Defendants admit the allegations in paragraph 36 of Plaintiffs' Complaint.

37.

Defendants admit the allegations in paragraph 37 of Plaintiffs' Complaint.

38.

Defendants admit the allegations in paragraph 38 of Plaintiffs' Complaint.

39.

Defendants can neither admit nor deny the allegations in paragraph 39 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

40.

Responding to the allegations in paragraph 40 of Plaintiffs' Complaint, Defendants admit that Kevil Wingo, Sr. was in Three-South of the Cobb County Adult Detention Center on September 28, 2019. Defendants can neither admit nor deny the remaining allegations in paragraph 40 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

- 15 -

41.

Responding to the allegations in paragraph 41 of Plaintiffs' Complaint, Defendants admit that Kevil Wingo, Sr. was moved to Four-South of the Cobb County Adult Detention Center on September 28, 2019. Defendants can neither admit nor deny the remaining allegations in paragraph 41 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

42.

Defendants can neither admit nor deny the allegations in paragraph 42 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

43.

Defendants can neither admit nor deny the allegations in paragraph 43 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

44.

Defendants can neither admit nor deny the allegations in paragraph 44 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

45.

Defendants can neither admit nor deny the allegations in paragraph 45 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

46.

Defendants can neither admit nor deny the allegations in paragraph 46 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

47.

Defendants can neither admit nor deny the allegations in paragraph 47 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth

thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

48.

Defendants can neither admit nor deny the allegations in paragraph 48 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

49.

Defendants can neither admit nor deny the allegations in paragraph 49 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

50.

Defendants can neither admit nor deny the allegations in paragraph 50 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

51.

Defendants can neither admit nor deny the allegations in paragraph 51 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

52.

Defendants can neither admit nor deny the allegations in paragraph 52 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

53.

Defendants can neither admit nor deny the allegations in paragraph 53 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

54.

Defendants can neither admit nor deny the allegations in paragraph 54 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth

thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

55.

Defendants can neither admit nor deny the allegations in paragraph 55 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

56.

Defendants can neither admit nor deny the allegations in paragraph 56 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

57.

Defendants can neither admit nor deny the allegations in paragraph 57 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

58.

Defendants can neither admit nor deny the allegations in paragraph 58 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

59.

Defendants can neither admit nor deny the allegations in paragraph 59 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

60.

Defendants can neither admit nor deny the allegations in paragraph 60 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

61.

Defendants can neither admit nor deny the allegations in paragraph 61 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth

thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

62.

Defendants can neither admit nor deny the allegations in paragraph 62 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

63.

Defendants can neither admit nor deny the allegations in paragraph 63 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

64.

Defendants can neither admit nor deny the allegations in paragraph 64 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

65.

Defendants can neither admit nor deny the allegations in paragraph 65 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

66.

Defendants can neither admit nor deny the allegations in paragraph 66 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

67.

Defendants can neither admit nor deny the allegations in paragraph 67 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

68.

Defendants can neither admit nor deny the allegations in paragraph 68 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth

thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

69.

Defendants can neither admit nor deny the allegations in paragraph 69 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

70.

Defendants can neither admit nor deny the allegations in paragraph 70 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

71.

Defendants can neither admit nor deny the allegations in paragraph 71 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

72.

Defendants can neither admit nor deny the allegations in paragraph 72 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

73.

Defendants can neither admit nor deny the allegations in paragraph 73 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

74.

Defendants can neither admit nor deny the allegations in paragraph 74 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

75.

Defendants can neither admit nor deny the allegations in paragraph 75 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth

thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

76.

Defendants can neither admit nor deny the allegations in paragraph 76 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

77.

Defendants can neither admit nor deny the allegations in paragraph 77 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

78.

Defendants can neither admit nor deny the allegations in paragraph 78 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

79.

Defendants can neither admit nor deny the allegations in paragraph 79 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

80.

Defendants can neither admit nor deny the allegations in paragraph 80 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

81.

Defendants can neither admit nor deny the allegations in paragraph 81 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

82.

Defendants can neither admit nor deny the allegations in paragraph 82 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth

thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

83.

Defendants can neither admit nor deny the allegations in paragraph 83 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

84.

Defendants can neither admit nor deny the allegations in paragraph 84 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

85.

Defendants can neither admit nor deny the allegations in paragraph 85 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

86.

Defendants can neither admit nor deny the allegations in paragraph 86 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

87.

Defendants can neither admit nor deny the allegations in paragraph 87 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

88.

Defendants admit the allegations in paragraph 88 of Plaintiffs' Complaint.

89.

Defendants can neither admit nor deny the allegations in paragraph 89 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

90.

Defendants admit the allegations in paragraph 90 of Plaintiffs' Complaint.

91.

Defendants admit the allegations in paragraph 91 of Plaintiffs' Complaint.

92.

Defendants deny the allegations in paragraph 92 of Plaintiffs' Complaint.

93.

Defendants deny the allegations in paragraph 93 of Plaintiffs' Complaint in the form and manner alleged.

94.

Defendants admit the allegations in paragraph 94 of Plaintiffs' Complaint.

95.

Defendants admit the allegations in paragraph 95 of Plaintiffs' Complaint.

96.

Defendants deny the allegations in paragraph 96 of Plaintiffs' Complaint.

97.

Defendants deny the allegations in paragraph 97 of Plaintiffs' Complaint in the form and manner alleged.

98.

Defendants deny the allegations in paragraph 98 of Plaintiffs' Complaint.

99.

Defendants admit the allegations in paragraph 99 of Plaintiffs' Complaint.

100.

Defendants admit the allegations in paragraph 100 of Plaintiffs' Complaint.

101.

Defendants deny the allegations in paragraph 101 of Plaintiffs' Complaint in the form and manner alleged.

102.

Defendants admit the allegations in paragraph 102 of Plaintiffs' Complaint.

103.

Defendants admit the allegations in paragraph 103 of Plaintiffs' Complaint.

104.

Defendants can neither admit nor deny the allegations in paragraph 104 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

105.

Defendants admit the allegations in paragraph 105 of Plaintiffs' Complaint.

106.

Defendants admit the allegations in paragraph 106 of Plaintiffs' Complaint.

107.

Defendants admit the allegations in paragraph 107 of Plaintiffs' Complaint.

108.

Defendants admit the allegations in paragraph 108 of Plaintiffs' Complaint.

109.

Defendants deny the allegations in paragraph 109 of Plaintiffs' Complaint.

110.

Defendants can neither admit nor deny the allegations in paragraph 110 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

111.

Defendants deny the allegations in paragraph 111 of Plaintiffs' Complaint.

112.

Defendants admit the allegations in paragraph 112 of Plaintiffs' Complaint.

113.

Defendants can neither admit nor deny the allegations in paragraph 113 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

114.

Defendants deny the allegations in paragraph 114 of Plaintiffs' Complaint in the form and manner alleged.

115.

Responding to the allegations in paragraph 115 of Plaintiffs' Complaint, Defendants state that CCADC's written policies speak for themselves, and defendants deny the allegations in paragraph 115 of Plaintiffs' Complaint to the extent they do not accurately represent the CCADC's written policies.

116.

Defendants admit the allegations in paragraph 116 of Plaintiffs' Complaint.

117.

Defendants can neither admit nor deny the allegations in paragraph 117 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth

thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

118.

Defendants deny the allegations in paragraph 118 of Plaintiffs' Complaint in the form and manner alleged.

119.

Defendants admit the allegations in paragraph 119 of Plaintiffs' Complaint.

120.

Defendants admit the allegations in paragraph 120 of Plaintiffs' Complaint.

121.

Defendants can neither admit nor deny the allegations in paragraph 121 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

ANSWER TO: "COUNT I
VIOLATION OF SECTION 42 U.S.C. SECTION 1983
ALL DEFENDANTS

122.

Defendants incorporate as if fully set forth herein all defenses and responses to Paragraphs 1-122 of Plaintiffs' Complaint.

- 34 -

123.

Responding to the allegations in paragraph 123 of Plaintiffs' Complaint, Defendants admit that Plaintiffs have asserted a claim against them in their individual capacities but deny that they are liable to Plaintiffs on said claim.

124.

The allegations in paragraph 124 of Plaintiffs' Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 124 of Plaintiffs' Complaint in the form and manner alleged.

125.

The allegations in paragraph 125 of Plaintiffs' Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 125 of Plaintiffs' Complaint in the form and manner alleged, and admit only that their actions in addressing Kevil Wingo, Sr.'s medical care were under color of state law.

126.

Defendants can neither admit nor deny the allegations in paragraph 126 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth

thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

127.

The allegations in paragraph 127 of Plaintiffs' Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 127 of Plaintiffs' Complaint in the form and manner alleged, and admit only that their actions in addressing Kevil Wingo, Sr.'s medical care were under color of state law.

128.

Defendants can neither admit nor deny the allegations in paragraph 128 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

129.

Defendants deny the allegations in paragraph 129 of Plaintiffs' Complaint.

130.

Defendants deny the allegations in paragraph 130 of Plaintiffs' Complaint with respect to themselves. These defendants can neither admit nor deny the allegations in paragraph 130 of Plaintiffs' Complaint with respect to the other

defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

131.

Defendants deny the allegations in paragraph 131 of Plaintiffs' Complaint, in the form and manner alleged, with respect to themselves. These defendants can neither admit nor deny the allegations in paragraph 131 of Plaintiffs' Complaint with respect to the other defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

132.

Defendants deny the allegations in paragraph 132 of Plaintiffs' Complaint, in the form and manner alleged, with respect to themselves. These defendants can neither admit nor deny the allegations in paragraph 132 of Plaintiffs' Complaint with respect to the other defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

133.

Defendants deny the allegations in paragraph 133 of Plaintiffs' Complaint with respect to themselves. These defendants can neither admit nor deny the

allegations in paragraph 133 of Plaintiffs' Complaint with respect to the other defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

134.

Defendants deny the allegations in paragraph 134 of Plaintiffs' Complaint with respect to themselves. These defendants can neither admit nor deny the allegations in paragraph 134 of Plaintiffs' Complaint with respect to the other defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

135.

Defendants deny the allegations in paragraph 135 of Plaintiffs' Complaint with respect to themselves. These defendants can neither admit nor deny the allegations in paragraph 135 of Plaintiffs' Complaint with respect to the other defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

136.

Defendants deny the allegations in paragraph 136 of Plaintiffs' Complaint with respect to themselves. These defendants can neither admit nor deny the allegations in paragraph 136 of Plaintiffs' Complaint with respect to the other

defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

137.

Defendants can neither admit nor deny the allegations in paragraph 137 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

138.

Defendants can neither admit nor deny the allegations in paragraph 138 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

139.

Defendants deny the allegations in paragraph 139 of Plaintiffs' Complaint.

140.

Responding to the allegations in paragraph 140 of Plaintiffs' Complaint, defendants admit the allegations with respect to Lt. Gordon and deny the allegations with respect to Major Harris.

141.

Defendants deny the allegations in paragraph 141 of Plaintiffs' Complaint in the form and manner alleged.

142.

Defendants deny the allegations in paragraph 142 of Plaintiffs' Complaint.

143.

Defendants deny the allegations in paragraph 143 of Plaintiffs' Complaint.

144.

Defendants deny the allegations in paragraph 144 of Plaintiffs' Complaint.

145.

Defendants deny the allegations in paragraph 145 of Plaintiffs' Complaint.

ANSWER TO: "COUNT II—NEGLIGENCE
WELLSTAR HEALTH SYSTEM, INC., NURSE ANNALEEN VISSER, NURSE
YVETTE BURTON, BURSE SHANNA GRIFFITH, NURSE SAMANTHA
GARLAND, NURSE KELLY JONES, NURSE SHANNEA HOPKINS"

146.

Defendants incorporate as if fully set forth herein all defenses and responses to Paragraphs 1-145 of Plaintiffs' Complaint.

147.

Paragraph 147 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this

paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

148.

Paragraph 148 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

149.

Paragraph 149 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

150.

Paragraph 150 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

151.

Paragraph 151 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph, along with subparagraphs "a" through "i" thereof.

152.

Paragraph 152 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph, along with subparagraphs "a" through "f" thereof.

153.

Paragraph 153 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

154.

Paragraph 154 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this

paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

155.

Paragraph 155 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

156.

Paragraph 156 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

157.

Paragraph 157 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

158.

Paragraph 158 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

159.

Paragraph 159 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

160.

Paragraph 160 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

161.

Paragraph 161 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this

paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

162.

Paragraph 162 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

163.

Paragraph 163 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

164.

Paragraph 164 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

165.

Paragraph 165 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

166.

Paragraph 166 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

167.

Paragraph 167 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

168.

Paragraph 168 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this

paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

169.

Paragraph 169 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

170.

Paragraph 170 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

171.

Paragraph 171 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

172.

Paragraph 172 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

173.

Paragraph 173 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

## ANSWER TO: "COUNT III—NEGLIGENCE MAJOR BRANSON HARRIS, SERGEANT CHARLES GORDON AND DEPUTY PAUL WILKERSON"

174.

Defendants incorporate as if fully set forth herein all defenses and responses to Paragraphs 1-173 of Plaintiffs' Complaint.

175.

Responding to the allegations in paragraph 175 of Plaintiffs' Complaint, Defendants admit that Plaintiffs have asserted a claim against them in their individual capacities but deny that they are liable to Plaintiffs on said claim.

176.

The allegations in paragraph 176 of Plaintiffs' Complaint contain conclusions of law to which no response is required. To the extent a response is required, defendants deny the allegations in paragraph 176 of Plaintiffs' Complaint.

177.

Defendants deny the allegations in paragraph 177 of Plaintiffs' Complaint in the form and manner alleged.

178.

Defendants deny the allegations in paragraph 178 of Plaintiffs' Complaint in the form and manner alleged.

179.

Responding to the allegations in paragraph 179 of Plaintiffs' Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 179 of Plaintiffs' Complaint to the extent they misrepresent the CCSO policies and procedures.

180.

Responding to the allegations in paragraph 180 of Plaintiffs' Complaint, Defendants state that the CCSO policies and procedures speak for themselves.

Defendants deny the allegations in paragraph 180 of Plaintiffs' Complaint to the extent they misrepresent the CCSO policies and procedures.

181.

Responding to the allegations in paragraph 181 of Plaintiffs' Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 181 of Plaintiffs' Complaint to the extent they misrepresent the CCSO policies and procedures.

182.

Responding to the allegations in paragraph 182 of Plaintiffs' Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 182 of Plaintiffs' Complaint to the extent they misrepresent the CCSO policies and procedures.

183.

Responding to the allegations in paragraph 183 of Plaintiffs' Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 183 of Plaintiffs' Complaint to the extent they misrepresent the CCSO policies and procedures.

184.

Defendants deny the allegations in paragraph 184 of Plaintiffs' Complaint.

185.

Responding to the allegations in paragraph 185 of Plaintiffs' Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 185 of Plaintiffs' Complaint to the extent they misrepresent the CCSO policies and procedures.

186.

Defendants can neither admit nor deny the allegations in paragraph 186 of Plaintiffs' Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

187.

Responding to the allegations in paragraph 187 of Plaintiffs' Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 187 of Plaintiffs' Complaint to the extent they misrepresent the CCSO policies and procedures.

188.

Responding to the allegations in paragraph 188 of Plaintiffs' Complaint, Defendants state that the CCSO "Request for Placement in Close Observation" form speaks for itself. Defendants deny the allegations in paragraph 188 of Plaintiffs'

Complaint to the extent they misrepresent the CCSO policies and procedures and related forms.

189.

Responding to the allegations in paragraph 189 of Plaintiffs' Complaint, Defendants state that the CCSO "Request for Placement in Close Observation" form speaks for itself. Defendants deny the allegations in paragraph 189 of Plaintiffs' Complaint to the extent they misrepresent the CCSO policies and procedures and related forms.

190.

Responding to the allegations in paragraph 190 of Plaintiffs' Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 190 of Plaintiffs' Complaint to the extent they misrepresent the CCSO policies and procedures.

191.

Defendants deny the allegations in paragraph 191 in the form and manner alleged.

192.

Responding to the allegations in paragraph 192 of Plaintiffs' Complaint, Defendants state that the CCSO policies and procedures speak for themselves.

Defendants deny the allegations in paragraph 192 of Plaintiffs' Complaint to the extent they misrepresent the CCSO policies and procedures.

193.

Responding to the allegations in paragraph 193 of Plaintiffs' Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 193 of Plaintiffs' Complaint to the extent they misrepresent the CCSO policies and procedures.

194.

Defendants deny the allegations in paragraph 194 of Plaintiffs' Complaint.

195.

Defendants deny the allegations in paragraph 195 of Plaintiffs' Complaint.

196.

Defendants deny the allegations in paragraph 196 of Plaintiffs' Complaint.

197.

Defendants deny the allegations in paragraph 197 of Plaintiffs' Complaint.

198.

Defendants deny the allegations in paragraph 198 of Plaintiffs' Complaint.

ANSWER TO: "COUNT IV

PUNITIVE DAMAGES AGAINST NURSE ANNALEEN VISSER"

199.

Defendants incorporate as if fully set forth herein all defenses and responses to Paragraphs 1-198 of Plaintiffs' Complaint.

200.

Paragraph 200 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

201.

Paragraph 201 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

202.

Paragraph 202 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

203.

Paragraph 203 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

204.

Paragraph 204 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

205.

Paragraph 205 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

206.

Paragraph 206 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this

paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

207.

Paragraph 207 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

208.

Paragraph 208 of Plaintiffs' Complaint contains no allegations directed at these Defendants such that no response is required from them. To the extent this paragraph requires a response from these Defendants, they deny the allegations of this Paragraph.

ANSWER TO: "DAMAGES"

209.

Defendants deny the allegations in paragraph 209 of Plaintiffs' Complaint.

ANSWER TO: "JURY TRIAL DEMANDED"

210.

Responding to the allegations in paragraph 210 of Plaintiffs' Complaint, Defendants admit that Plaintiffs have demanded a jury trial.

211.

Responding to the unnumbered paragraph of Plaintiffs' Complaint following paragraph 210 and beginning "WHEREFORE," and constituting plaintiffs' prayer for relief, Defendants deny all allegations and further deny that Plaintiffs are entitled to any of the relief requested from them in form, type, or amount, under any theory at law or in equity.

212.

Except as expressly admitted, denied, or otherwise responded to, Defendants deny all allegations in Plaintiffs' Complaint.

WHEREFORE, having fully listed its defenses and having fully answered the complaint, Defendants pray as follows:

(a) That the judgment be entered in favor of Defendants and against the Plaintiffs on the complaint;

(b) That the costs of this action, including attorneys' fees, be cast against Plaintiffs; and

(c) That the Court grant such other relief as it may deem just and proper.

**DEFENDANTS DEMAND A TRIAL BY JURY**

Respectfully submitted, this 30th day of September, 2020.

**COBB COUNTY ATTORNEY'S OFFICE**

*/s/ Lauren S. Bruce*
Lauren S. Bruce
*Assistant County Attorney*
Georgia Bar No. 796642
H. William Rowling
*County Attorney*
Georgia Bar No. 617225

100 Cherokee Street, Suite 350
Marietta, GA 30090
770-528-4000 (telephone)
770-528-4010 (facsimile)

**FREEMAN MATHIS & GARY, LLP**

*/s/ Sun S. Choy*
Sun S. Choy
Georgia Bar No. 025148
Wesley C. Jackson
Georgia Bar No. 336891

100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

*Attorneys for Defendants Branson Harris, Charles Gordon, and Paul Wilkerson*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing

**ANSWER AND DEFENSES OF DEFENDANTS BRANSON HARRIS, CHARLES GORDON, AND PAUL WILKERSON TO PLAINTIFFS' COMPLAINT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants and via United States Postal Service postage prepaid to:

Timothy J. Gardner
Gardner Trial Attorneys, LLC
3100 Cumberland Blvd.
Suite 1470
Atlanta, GA 30339

This 30th day of September, 2019.

**FREEMAN MATHIS & GARY, LLP**
*/s/ Sun S. Choy*
Sun S. Choy
Georgia Bar No. 025148
schoy@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

- 59 -

DOCKET 166

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| TIFFANY WINGO as Administrator of the Estate of KEVIL WINGO, SR., KIEARA WINGO, as surviving child of KEVIL WINGO, SR., ERIKA WINGO, surviving child of KEVIL WINGO, SR., and TERI FIELDS, ESQ., Conservator of KEVIL WINGO, JR., surviving minor child of KEVIL WINGO, Sr. <br><br> Plaintiffs, <br><br> v. <br><br> MAJOR BRANSON HARRIS, individually, LIEUTENTANT CHARLES GORDON, individually, DEPUTY PAUL WILKERSON, individually, DEPUTY BRITTON MCPHEE, individually, DEPUTY LYNDA MARSHALL, individually, JOHN DOES 1-10, and JANE DOES 1-10, <br><br> Defendants. | CIVIL ACTION NO. 1:20-CV-03662-VMC |

## PLAINTIFFS' THIRD AMENDED COMPLAINT

Plaintiffs, Tiffany Wingo as Administrator of the Estate of Kevil Wingo, Sr. Kieara Wingo, as surviving child of Kevil Wingo, Sr., Erika Wingo, as surviving child of Kevil Wingo, Sr., and Teri Fields, Esq. as Conservator of Kevil Wingo, Jr., surviving minor child of Kevil Wingo, Sr.  (hereinafter collectively referred to as "Plaintiffs") files this Third Amended Complaint against Defendants Major Branson Harris, individually, Lieutenant Charles Gordon, individually, Deputy Paul

Wilkerson, individually, Deputy Britton McPhee, individually, Deputy Lynda Marshall, individually, John Does 1-10 and Jane Does 1-10, and state as follows:

## <u>PARTIES</u>

1.

Plaintiffs are the children of Kevil Wingo, Sr. and Administrator of his estate and all reside within the Northern District of Georgia and are subject to the jurisdiction of this Court.

2.

Kevil Wingo, Sr. died at the Cobb County Adult Detention Center (hereinafter referred to as the "CCADC") on September 29, 2019, from a perforated ulcer that the Cobb County Sheriff Office defendants deliberately ignored and refused him adequate medical treatment in violation of his clearly established constitutional right to receive adequate medical treatment while being detained by the Cobb County Sheriff's Office.

3.

On September 28-29, 2019, Cobb County Sheriff's Office was responsible for the housing, detention and management of inmates and detainees at the CCADC and tasked with providing adequate medical care to inmates and detainees at the CCADC.

4.

On September 28-29, 2019, Defendant Cobb County Sheriff's Office Major Branson Harris was employed by the Cobb County Sheriff's Office and worked at the CCADC. This Defendant is subject to the jurisdiction and venue of this Court.

5.

On September 28-29, 2019, Major Harris was acting under the color of law and within the course and scope of his employment with CCADC.

6.

On September 28-29, 2019, Defendant Cobb County Sheriff's Office Lieutenant Charles Gordon was employed by the Cobb County Sheriff's Office and worked at the CCADC. This Defendant is subject to the jurisdiction and venue of this Court.

7.

On September 28-29, 2019, Lieutenant Charles Gordon was acting under the color of law and within the course and scope of his employment with CCADC.

8.

On September 28-29, 2019, Defendant Deputy Paul Wilkerson was employed by the Cobb County Sheriff's Office and worked at the CCADC. This Defendant is subject to the jurisdiction and venue of this Court.

9.

On September 28-29, 2019, Deputy Paul Wilkerson was acting under the color of law and within the course and scope of his employment with CCADC.

10.

On September 28-29, 2019, Defendant Deputy Britton McPhee was employed by the Cobb County Sheriff's Office and worked at the CCADC. This Defendant is subject to the jurisdiction and venue of this Court.

11.

On September 28-29, 2019, Deputy Britton McPhee was acting under the color of law and within the course and scope of his employment with CCADC.

12.

On September 28-29, 2019, Defendant Deputy Lynda Marshall was employed by the Cobb County Sheriff's Office and worked at the CCADC. This Defendant is subject to the jurisdiction and venue of this Court.

13.

On September 28-29, 2019, Deputy Lynda Marshall was acting under the color of law and within the course and scope of his employment with CCADC.

14.

The conduct of all the named Defendants was within the exercise of State authority within the meaning of 42 U.S.C. § 1983.

15.

John Does 1-10 and Jane Does 1-10 are unidentified employees of the Cobb County Sheriff's Office who were responsible for Kevil Wingo, Sr.'s death and had a constitutional responsibility to provide inmates and detainees at the CCADC adequate medical care and/or violated the Cobb County Sheriff's Office policies and procedures for its employees with respect to handling medical emergencies.

## **JURISDICTION AND VENUE**

16.

This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, as well as the Eighth and Fourteenth Amendment of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§1331, 1343, and the aforementioned constitutional and statutory provisions.

17.

This Court has jurisdiction over Plaintiffs' state tort claims pursuant to its ancillary and pendent jurisdiction under 28 U.S.C. § 1367

18.

Venue is proper in the Northern District of Georgia, Atlanta Division pursuant to 28 U.S.C. § 1391 (b) and N.D.L.R. 3.1B(3) because the event giving rise to this claim occurred in Cobb County, Georgia, which is situated within the district and divisional boundaries of the Atlanta Division of the Northern District of Georgia.

19.

Some or all Defendants reside within the Northern District of Georgia and are subject to the jurisdiction of this Court.

20.

The matter in controversy exceeds this court's $75,000.00 jurisdictional limit, exclusive of interest and costs.

21.

Plaintiffs timely submitted an ante-litem notice and a copy of that ante litem notice is attached as Exhibit A.

## FACTUAL BACKGROUND

22.

On September 23-24, 2019, Cobb County Police Department arrested Kevil Wingo for suspected drug possession of .2 grams of cocaine on a white piece of paper found in his ashtray.

23.

On September 24, 2019, Mr. Wingo was booked as a detainee at the CCADC.

24.

On September 28, 2019, Kevil Wingo was in Three-South of the CCADC and began to experience abdominal pain and sweats.

25.

On September 28, 2019, Kevil Wingo was moved to Four-South of the CCADC and while he was housed in that location, he experienced abdominal pain, vomiting and sweats.

26.

CCADC Deputies Devvin Campbell, Kyle Wedekind and Sherita Hicks witnessed Mr. Wingo sweating and complaining of abdominal pain.

27.

On September 28, 2019, CCADC Deputy Matthew Howard called the Infirmary and informed the staff that Mr. Wingo was vomiting.

28.

On September 28, 2019, while housed on Four-South Mr. Wingo asked CCADC deputies to go to the emergency room.

29.

On September 28, 2019, Mr. Wingo was taken to the infirmary in a wheelchair by Deputy Quentin Appleby.  While being transported to the infirmary Mr. Wingo stated to Deputy Appleby that he was having ulcer pain, that he wasn't going to make it and that he wanted to go to the hospital.  When Deputy Appleby arrived in the Infirmary with Mr. Wingo, Deputy Appleby reported this information to infirmary staff including Defendant Britton McPhee.

7

30.

Mr. Wingo was taken to the infirmary in a wheelchair because he had difficulty walking at that time.

31.

Mr. Wingo arrived in the infirmary on September 28, 2019, at 11:52 p.m. and at that time, he requested to go to the hospital, but the CCADC officers did not call for an ambulance and did not take him to the hospital.

32.

Upon arrival in the infirmary Mr. Wingo fell out of his wheelchair in pain and the jail staff, including Defendant Deputy Britton McPhee, did not take any steps to call an ambulance for him so that he could be taken to the emergency room.

33.

Mr. Wingo had difficulty walking when he was initially placed in his cell upon admission to the infirmary and Deputy Britton McPhee witnessed Mr. Wingo's labored walking.

34.

After Mr. Wingo arrived in the infirmary, he was put in a cell where he was not removed until after 7:30 a.m. on September 29, 2019, by Defendant Deputy Lynda Marshall.

35.

In the morning hours of September 29, 2019, Mr. Wingo was removed from his cell in the infirmary to be transferred to a padded Close Observation Cell.

36.

Throughout the evening and early morning hours of September 28-29, 2019, Mr. Wingo complained of pain and communicated his complaints of pain to infirmary staff, Deputy Britton McPhee, Deputy Lynda Marshall, Lieutenant Gordon and Major Branson Harris.

37.

At times throughout the evening and early morning hours of September 28-29, 2019, Mr. Wingo complained in the infirmary of issues with his ulcer and abdominal pain.

38.

Mr. Wingo complained to Defendant Deputy Britton McPhee several times that he was having issues with his ulcer and needed to go to the emergency room.

39.

At one point, Defendant Deputy Britton McPhee interviewed Mr. Wingo regarding his medical situation and witnessed Mr. Wingo vomiting.  Deputy McPhee did not call for an ambulance for him or ask that he receive adequate medical attention.

40.

Deputy Britton McPhee knew that Mr. Wingo was in agonizing pain throughout the evening and did not report this information to his superiors and or request that an ambulance be called for Mr. Wingo.

41.

Throughout the evening and early morning hours of September 28-29, 2019, Mr. Wingo communicated to infirmary staff, Deputy Britton McPhee, Deputy Lynda Marshall, Lieutenant Gordan, Major Harris and Deputy Wilkerson that he wanted to go to the hospital.

42.

Mr. Wingo was in obvious physical distress throughout the evening and early morning hours of September 28 -29, 2019.

43.

At or around 5:40 a.m. on September 29, 2019, an infirmary staff member enters a note into Mr. Wingo's medical chart that "Pt able to eat 100% of breakfast tray.  No complaints of nausea or vomiting."  This information was communicated to the infirmary staff member by Deputy Britton McPhee who did not actually observe whether the information he reported was true.

44.

From 7:28 a.m. – 7:32 a.m. Mr. Wingo appeared to faint or fall to the ground in his cell at least three times in his cell.  Two of those times were when he was in the front area of the cell and the third time, he was in the shower area of the cell.

45.

Deputy Lynda Marshall observed Mr. Wingo faint and did not call for medical assistance, an ambulance, alert superiors or demand that he be taken to the emergency room.

46.

At or around 7:31 a.m. Deputy Lynda Marshall opened Mr. Wingo's cell, and he dropped to the ground in front of her.

47.

At or around 7:31 a.m. on September 29, 2019, Mr. Wingo exited the infirmary cell after the cell door was opened by Deputy Lynda Marshall and was on the ground in front of the nurses' station from 7:31 a.m. – 7:40 a.m. where he received no medical attention.

48.

Deputy Lynda Marshall did not attempt to assist Mr. Wingo in any way as he laid on the jail floor in agonizing pain.  Deputy Marshall also did not call for an ambulance or request that any medical attention be given to Mr. Wingo.

49.

11

Deputy Lynda Marshall laughed and was jovial as Mr. Wingo laid on the jail floor in severe pain.

50.

At or around 7:31 a.m. on September 29, 2019, Lieutenant Charles Gordon entered the infirmary and saw Mr. Wingo on the floor in front of him in agonizing pain.

51.

Mr. Wingo was in physical distress and in need of immediate medical attention when Lieutenant Gordon saw Mr. Wingo on the ground in front of the infirmary cell.

52.

In September 2019, Lieutenant Gordon had been with the CCADC for 20 years and had experience dealing with inmates in need of medical attention.

53.

Lieutenant Gordon was the Infirmary Supervisor on September 29, 2019.

54.

Per CCADC policies and procedures, Lieutenant Gordon had the authority to call an ambulance for Mr. Wingo on September 29, 2019.

55.

From 7:31 a.m. – 7:40 a.m. on September 29, 2019, Mr. Wingo was in physical distress in front of CCADC Deputy Lynda Marshall and Lieutenant Gordon. Neither of them attempted to assist Mr. Wingo in any way or address his medical needs.  Neither of them addressed any of the medical concerns Mr. Wingo was having.  Neither of them called for an ambulance to take Mr. Wingo to the hospital as he requested repeatedly.

56.

Instead of helping Mr. Wingo, at or around 7:40 a.m. Lieutenant Gordon grabbed Mr. Wingo by his detainee uniform collar and placed him in a chair where Mr. Wingo had difficulty sitting upright.

57.

Mr. Wingo attempted to rest his head on a medical gurney, but Lieutenant Gordon would not allow Mr. Wingo to place his head on the gurney and pulled him back by his collar to his chair at least twice ignoring Mr. Wingo's need for medical attention.

58.

At or around 7:43 a.m. on September 29, 2019, CCADC Watch Commander Major Branson Harris entered the infirmary and spoke to the staff about moving Mr. Wingo to a padded Close Observation Cell.

59.

At the time, Major Branson Harris entered the infirmary Mr. Wingo was in obvious physical distress and needed immediate medical attention.

60.

Major Branson Harris had been with the CCADC for 30 years and had experience dealing with inmates in need of medical attention.

61.

Per CCADC policies and procedures, Major Branson Harris had the authority to call an ambulance for Mr. Wingo on September 29, 2019.

62.

Major Branson Harris did not attempt to speak with Mr. Wingo regarding his medical condition after witnessing Mr. Wingo in agonizing pain.  Major Harris did not call for an ambulance or address any of Mr. Wingo's medical needs. Major Harris was completely indifferent to Mr. Wingo.

63.

Instead of calling an ambulance for Mr. Wingo, Major Branson Harris made the decision that Mr. Wingo should be moved to an isolated Close Observation Padded Cell, stripped of his clothes, and placed in a suicide smock.

64.

Mr. Wingo was not showing any signs of being suicidal and was never questioned about being suicidal.

65.

On September 29, 2019, after Mr. Wingo was in the infirmary for at least seven and a half hours, CCADC Deputy Lynda Marshall, Lieutenant Charles Gordon, Major Branson Harris and Deputy Paul Wilkerson removed Mr. Wingo from the infirmary and placed him in a padded Close Observation Cell.

66.

At or around 7:46 a.m. Major Branson Harris with the assistance of Lieutenant Gordon began to walk Mr. Wingo to the padded Close Observation Cell.

67.

As Major Branson Harris and Lieutenant Charles Gordon escorted Mr. Wingo from the infirmary to the padded cell, Deputy Lynda Marshall laughed with and clapped her hands.  She did not attempt to get Mr. Wingo any medical help or call for an ambulance.

68.

Mr. Wingo was unable to walk from the infirmary to the Close Observation Cell and fell to the ground on the way.

69.

Neither Major Branson Harris nor Lieutenant Charles Gordon took Mr. Wingo back to the infirmary after he fell to the ground on his way walking to the infirmary or called for an ambulance to take Mr. Wingo to the hospital.

70.

Instead, Major Branson Harris and Lieutenant Charles Gordon with the assistance of Deputy Nasie Mejia placed Mr. Wingo in a wheelchair and Mr. Wingo was wheeled to the padded Close Observation Cell.

71.

Mr. Wingo was too weak to walk to the padded Close Observation Cell.

72.

Major Branson Harris, Lieutenant Charles Gordon, and Deputy Nasie Mejia then placed Mr. Wingo's body in the padded Close Observation Cell 18, removed Mr. Wingo's clothes and Major Harris placed a suicide smock on his back.

73.

Deputy Paul Wilkerson came to Mr. Wingo's cell while Major Branson Harris, Lieutenant Charles Gordon and Deputy Mejia placed Mr. Wingo in the padded Close observation cell.

74.

Deputy Paul Wilkerson put two cups of water in Mr. Wingo's padded Close Observation cell.

75.

At or around 7:50 a.m. Major Branson Harris, Lieutenant Charles Gordon, and Deputy Mejia left the padded Close Observation cell 18 and closed the door.

76.

Mr. Wingo was in obvious physical distress when he was placed in the padded Close Observation Cell and when Major Branson Harris, Lieutenant Charles Gordon, Deputy Mejia and Deputy Paul Wilkerson exited the padded Close Observation Cell.

77.

Mr. Wingo had a serious medical condition when he was removed from the infirmary and taken to the padded Close Observation Cell and none of the CCADC staff did anything to address his medical condition.

78.

Mr. Wingo's serious medical condition was obvious to non-medical personnel, and he needed immediate medical care.

79.

Neither Deputy Lynda Marshall, Lieutenant Charles Gordon, Major Branson Harris or Deputy Paul Wilkerson requested that Mr. Wingo receive any medical care after they put him in the padded Close Observation Cell.

80.

Less than 12 minutes after Major Branson Harris and Lieutenant Charles Gordon left the padded Close Observation Cell Mr. Wingo was placed, Mr. Wingo never moved again on his own initiative.

81.

Deputy Paul Wilkerson was responsible for monitoring the padded Close Observation Cell Mr. Wingo was placed in.

82.

CCADC written policies state that Close Observation Cells are to be monitored every 15 minutes.

83.

CCADC practice is that Close Observation Cells are monitored every 12 minutes.

84.

The proper way to monitor a Close Observation cell is to physically look into the cell and determine if the detainee and/or inmate is breathing by looking at his/her chest rise and fall.

85.

Deputy Paul Wilkerson did not look into Mr. Wingo's cell on at least two occasions when he walked by Mr. Wingo's padded Close Observation Cell but yet scanned Mr. Wingo's cell indicating that he had monitored Mr. Wingo's cell.

86.

At or around 8:49 a.m. Deputy Paul Wilkerson opened Mr. Wingo's padded Close Observation and noticed that he was not moving and was unresponsive.

87.

At or around 8:52 a.m. a Code Blue was called for Mr. Wingo.

88.

CCADC staff and infirmary staff were unable to obtain a pulse, blood pressure or respiration for Mr. Wingo.  Mr. Wingo's skin was cool and clammy at that time and his stomach was distended. His pupils were fixed and non-reactive.  He was unable to follow verbal commands.

89.

Mr. Wingo died from a perforated gastric ulcer.

## COUNT I
## VIOLATION OF SECTION 42 U.S.C. SECTION 1983
## ALL DEFENDANTS – DELIBERATE INDIFFERENCE

90.

Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 89 as if fully stated herein.

91.

The conditions in which a pre-convicted detainee is confined is subject to scrutiny under the Eighth and Fourteenth Amendments of the United States Constitution and subject to actions under Section 1983.

92.

The acts of Sheriffs, deputies, and jail staff members in a detention facility in addressing detainees and/or inmates' medical care are acts under color of state law.

93.

Defendants acted under color of State law under the circumstances of this case as detailed in this Complaint.

94.

On September 28-29, 2019, Mr. Kevil Wingo suffered a serious medical condition in that his ulcer had perforated and that he needed immediate medical care, or he was going to die.

95.

Mr. Wingo's need for medical treatment was or should have been obvious to CCADC staff, but even if it was not Mr. Wingo communicated the issue with his ulcer throughout the evening and early morning hours of September 28-29, 2019, to Deputy Britton McPhee, Deputy Lynda Marshall, Lieutenant Charles Gordon and Major Branson Harris.

96.

All Defendants deprived Mr. Wingo of rights and privileges afforded to him under the Eighth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983.

97.

All Defendants, individually and collectively, had an obligation to make sure that detainees/inmates at CCADC received reasonable medical care when needed.

98.

All Defendants, individually and collectively, had an obligation to ensure that the serious medical needs of detainees/inmates detained at CCADC were timely and adequately addressed.

99.

Defendants failed to attend to Mr. Wingo's serious medical condition and did not provide him medical care when he was in obvious physical distress and needed medical care.

100.

Defendants' failure to adequately attend to Mr. Wingo's serious medical condition caused his death.

101.

Defendants' failure to adequately attend to Mr. Wingo's serious medical condition was in violation of the Eighth and Fourteenth Amendments of the United States Constitution.

102.

Defendants' conduct evinced a deliberate indifference to the serious medical needs and safety of Mr. Kevil Wingo, Sr.

103.

Defendants Major Branson Harris, Lieutenant Charles Gordon, Deputy Britton McPhee, Deputy Lynda Marshall, and Deputy Paul Wilkerson violated Mr. Wingo's constitutional right to receive adequate medical care by failing to make sure that he received medical care in the infirmary after witnessing Mr. Wingo in obvious physical distress on numerous occasions from September 28th – September 29th, 2019 and by failing to call for an ambulance for Mr. Wingo because they were deliberately indifferent to his medical needs based on the custom and practice of former Cobb County Sheriff Neil Warren and former Chief Deputy Sheriff Sonya Allen.

104.

Deputy Britton McPhee, Deputy Lynda Marshall, Deputy Paul Wilkerson, Major Branson Harris and Lieutenant Charles Gordon all had prior experience in witnessing individuals in medical distress.

105.

Major Branson Harris and Lieutenant Charles Gordon had both worked at the CCADC for over 30 and 20 years respectively and had witnessed individuals in medical distress and were both trained to identify individuals in medical distress.

106.

Deputy Britton McPhee, Deputy Lynda Marshall, Deputy Paul Wilkerson, Major Branson Harris and Lieutenant Charles Gordon all witnessed Mr. Wingo

experiencing a serious medical condition and unable to walk on his own. Major Harris and Lieutenant Gordon then placed Mr. Wingo in a wheelchair and wheeled him in a padded Close Observation Cell.

107.

Deputy Lynda Marshall, Major Branson Harris, Lieutenant Charles Gordon and Deputy Paul Wilkerson saw Mr. Wingo's condition when they placed him in the padded Close Observation Cell and knew or should have known that he was experiencing a serious medical condition and needed medical attention. They all ignored his serious medical condition and left him to die.

108.

Deputy Britton McPhee witnessed Mr. Wingo's inability to walk, vomiting and fainting throughout the early morning hours of September 29, 2019 for over six (6) hours and was completely indifferent to his medical needs and desire to go to the emergency room.

109.

All Defendants knew or should have known that their failure to provide Mr. Wingo medical care could result in him suffering permanent injury or harm.

110.

All Defendants' acts showed a deliberate indifference to Mr. Wingo's medical condition and need for medical attention in violation of Eighth and Fourteenth Amendments of the United States Constitution.

## COUNT II – NEGLIGENCE
**MAJOR BRANSON HARRIS, LIEUTENANT CHARLES GORDON, DEPUTY LYNDA MARSHALL, DEPUTY BRITTON MCPHEE AND DEPUTY PAUL WILKERSON**

111.

Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 110 above as if fully stated herein.

112.

Providing medical care for inmates is a ministerial duty.

113.

CCADC officers and deputies must follow the written policies and procedures of the Cobb County Sheriff's Office ("CCSO").

114.

Following the CCSO's policies and procedures is a ministerial duty.

115.

CCSO policies and procedures provide that inmates shall have adequate and proper access to emergency medical care.  Medical staff shall ensure that prompt medical attention (response) is provided in situations deemed a medical emergency. Policy 2-06-04.00

116.

CCSO policies and procedures provide that staff shall be observant and responsive to signs of an emergency medical situation within the facility. Policy 2-06-04.01

117.

CCSO policies and procedures provide that the delivery of emergency medical services shall be a top priority, taking precedence over routine duties and responsibilities. Policy 2-06-04.01

118.

CCSO policies and procedures provide that the following medical conditions may constitute a medical emergency.

a. Head injury or severe bleeding.

b. Severe burns.

c. Serious breathing difficulties or breathing has stopped.

d. No pulse.

e. Seizures, convulsions or severe tremors

f. Unconscious, fainting (unresponsive).

g. Chest pains

h. Other symptoms indicating a serious medical emergency.

i. Any life-threatening injury or illness. Policy 2-06-04.01

119.

CCSO policies and procedures provide that inmates requiring emergency treatment beyond the facility's resources and capabilities shall be transported to a designated treatment facility or the nearest emergency room.  Inmates requiring increased monitoring or close observation may be placed in Close Observation Cells. Policy 2-3-07.01

120.

Defendants Deputy Britton McPhee, Deputy Lynda Marshall, Deputy Paul Wilkerson, Lieutenant Charles Gordan and Major Branson Harris all failed to provide Mr. Kevil Wingo emergency medical care in violation of the aforementioned CCSO policies and procedures despite Mr. Wingo's obvious need for emergency medical care when these defendants observed Mr. Wingo in the infirmary and took him from the infirmary to the Close Observation Cell.  At that time, Mr. Wingo had fainted, had difficulty breathing, was unable to walk on his own, was in severe pain, losing consciousness, and was in severe obvious pain for over seven and a half (7 ½) hours.

121.

CCSO policies and procedures provide that Medical or security personnel may request placement of an inmate into Close Observation for reasons that include but are not limited to:

26

a.  Inmate exhibits signs of abnormal behavior (e.g. hearing voices);

b.  Inmate is displaying marked change in behavior occurring over an extended period of time (e.g. refusal of means or shower);

c.  Inmate refused to take medication; and

d.  Inmate speaks of or acts on threats of self-harm or threatens to harm others.

Policy 2-03-07.01

122.

Mr. Kevil Wingo did not display signs of self-harm, refusal of meals or showers or a refusal to take medication.

123.

CCSO policies and procedures provide that Inmates placed in Close Observation shall require security staff to complete one or more forms for placement in Close Observation.  Those forms include:

a.  Notice of Segregation: The watch commander shall complete this form when authorizing placement of inmates in Close Observation or for other circumstances.

b.  Request for Placement in Close Observation: Any employee may complete this form for processing when requesting placement of inmates into Close Observation for various reasons.

c.  Recommended Housing Assignment by Medical or Mental Health Staff: Any healthcare provider shall complete this form when requesting placement of inmates to be housed in Close Observation.

124.

The Request for Placement in Close Observation form includes an evaluation and assessment section that one must indicate that the inmate meets the criteria for placemen in a Close Observation Cell.

125.

The Request for Placement in Close Observation form is required to be completed to ensure that an inmate meets the requirements for placement in a Close Observation Cell and has been medically cleared for placement in same.

126.

When an inmate is placed in Close Observation an OMS facility incident report shall be generated by the staff members making the request and

a.   Shall detail the reasons for requesting placement in Close Observation;

b.  Employees immediate Supervisor shall be notified;

c.  A copy of the facility incident report shall be provided to mental health professional; and

d.  A copy of the facility incident report shall be forwarded to classification staff to affect a re-classification review.  Policy 2-03-07.01

127.

None of the CCADC Defendants completed any of the required forms and/or incident reports for Mr. Wingo to be placed in a Close Observation Cell.

128.

CCSO policies and procedures provide that the placement of inmates in a Close Observation Cell requires staff to conduct frequent and random observation/security rounds that shall not be more than 15 minutes apart. Policies 2-03-07.01; 2-03-01.00

129.

CCSO policies and procedures provide that monitoring of inmates in a Close Observation Cell shall include an unobstructed visual check to ensure the inmate's presence and physical well-being. Policy 2-03-07.01

130.

Deputy Paul Wilkerson did not properly monitor Mr. Wingo after he was placed in Close Observation Cell.

131.

Deputy Paul Wilkerson did not perform an unobstructed visual check to ensure Mr. Wingo's presence and physical well-being on at least two occasions while Mr. Wingo was housed in the Close Observation Cell.

132.

Defendants violated one or more of the aforementioned CCSO policies and procedures.

133.

Defendants Deputy Britton McPhee, Deputy Lynda Marshall, Deputy Paul Wilkerson, Lieutenant Charles Gordon and Major Branson Harris negligently performed or failed to perform their ministerial functions in:

a.  failing to provide Mr. Wingo emergency medical care;

b.  failing to call for an ambulance for Mr. Wingo when he was in physical distress in Infirmary and when they transported Mr. Wingo to padded Close Observation Cell;

c.  failing to complete required evaluations and forms for Mr. Wingo to be placed in a Close Observation Cell; and

d.  failing to properly monitor Mr. Wingo after he was placed in padded Close Observation Cell.

134.

Mr. Wingo's death was proximately caused by the Defendants' failure to perform ministerial acts as alleged above.

## <u>COUNT III</u>
## PUNITIVE DAMAGES AND ATTORNEYS' FEES

135.

Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 134 above as if fully stated herein.

136.

The acts and omissions of defendants as alleged show intent, willful misconduct, malice, fraud, wantonness, oppression and/or that entire want of care which raised the presumption of conscious indifference to the consequences entitling Plaintiffs to an award of punitive damages in an amount sufficient to deter Defendants from the same or similar actions in the future in accordance with 42 U.S.C. Section 1983.

137.

Defendants were malicious towards Mr. Wingo because he was a detainee at the CCADC and did not believe he was entitled to the right to adequate medical care as secured by the United States Constitution.

138.

Defendants' conduct was done with reckless disregard of Mr. Wingo's rights and all CCADC detainees and inmates similarly situated to Mr. Wingo.

139.

The acts and omissions of Defendants justify an award of punitive damages to Plaintiffs.

140.

Per 42 U.S.C. Section 1983 Plaintiffs are entitled to attorney fees for bringing this action.

## COUNT IV
## BAD FAITH AND STUBBORN LITIGIOUSNESS

141.

Plaintiff re-alleges and incorporates herein the allegations contained in Paragraphs 1-140 as though fully stated herein.

142.

There is no bona fide controversy as to liability, and as a result Defendants has been stubbornly litigious, have acted in bad faith, and have caused Plaintiffs unnecessary expenses under O.C.G.A. 13-6-11.

143.

Defendants' actions entitle Plaintiffs to recover attorney's fees and expenses of litigation.

## DAMAGES

144.

Plaintiffs are entitled to recover as Administrator of Kevil Wingo's Estate and as Mr. Wingo's Children for both Survivorship and Wrongful Death Claims including but not limited to Mr. Wingo's pain and suffering, medical, funeral, and other expenses, the full value of Mr. Wingo's life, mental anguish, loss of society, companionship, care, and guidance that was proximately caused by all Defendants

for its Section 1983 violations and Negligence. Plaintiffs are also entitled to punitive damages and attorneys' fees under <u>42 U.S.C. Section 1983</u> and <u>O.C.G.A. 13-6-11</u>.

## **<u>JURY TRIAL DEMANDED</u>**

145.

Plaintiffs demand a trial by a jury on all matters that can be so tried.

WHEREFORE, Plaintiffs respectfully requests this Court enter Judgment against Defendants for actual and compensatory damages, punitive damages, attorney fees, costs, and all other relief the Court deems just and equitable.

This  <u>23rd</u>  day of February, 2023.

Respectfully submitted,

<u>s/ Timothy J. Gardner</u>
**TIMOTHY J. GARDNER**
Georgia Bar No. 115430
**HENRIETTA G. BROWN**
Georgia Bar No. 253547

***Attorneys for Plaintiffs***

Gardner Trial Attorneys, LLC
3100 Cumberland Blvd.
Suite 1470
Atlanta, GA 30339
Phone:  770.693.8202
Fax:  404.393.9838
tjg@gardnertrialattorneys.com
hgb@gardnertrialattorneys.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1(D), the undersigned hereby certifies that the foregoing document has been prepared in Times New Roman 14, a font and type selection approved by the Northern District of Georgia in LR 5.1(B) and LR 5.1(C).

This __23rd__ day of February, 2023.

**GARDNER TRIAL ATTORNEYS, LLC**

/s/ Timothy J. Gardner
**TIMOTHY J. GARDNER**
Georgia Bar No. 115430
**HENRIETTA G. BROWN**
Georgia Bar No. 253547

***Attorneys for Plaintiffs***

3100 Cumberland Blvd.
Suite 1470
Atlanta, GA 30339
Phone:  770.693.8202
Fax:  404.393.9838
tjg@gardnertrialattorneys.com
hgb@gardnertrialattorneys.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on February 23, 2023, I electronically filed Plaintiffs' Third Amended Complaint using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Sun S. Choy, Esq.
Wesley C. Jackson, Esq.
Marisa M. Beller, Esq.
Freeman Mathis & Gary, LLP
100 Galleria Pkwy, Suite 1600
Atlanta, GA 30339-5948

H. William Rowling, Jr., Esq.
Lauren S. Bruce, Esq.
Cobb County Attorney's Office
100 Cherokee Street, Suite 350
Marietta, GA 30090

**GARDNER TRIAL ATTORNEYS, LLC**

/s/ Timothy J. Gardner
**TIMOTHY J. GARDNER**
Georgia Bar No. 115430
**HENRIETTA G. BROWN**
Georgia Bar No. 253547

***Attorneys for Plaintiffs***

3100 Cumberland Blvd.
Suite 1470
Atlanta, GA 30339
Phone:  770.693.8202
Fax:  404.393.9838
tjg@gardnertrialattorneys.com
hgb@gardnertrialattorneys.com



June 5, 2020

**VIA OVERNIGHT MAIL**
**& EMAIL mike.boyce@cobbcounty.org**
Cobb County Board of Commissioners
C/O Mike Boyce, Commission Chairman
100 Cherokee Street
Marietta, Georgia 30090

**VIA OVERNIGHT MAIL**
Cobb County Attorney
H. William Rowling, Jr., Esq.
100 Cherokee Street, Suite 350
Marietta, GA 30090

**VIA OVERNIGHT MAIL**
**& EMAIL neil.warren@cobbcounty.org**
Cobb County Sheriff's Office
C/O Sheriff Neil Warren
185 Roswell Street, NE
Marietta, GA 30060

**VIA OVERNIGHT MAIL**
**& EMAIL Risk.Management@doas.ga.gov**
State of Georgia
Department of Administrative Services
Risk Management Division
200 Piedmont Avenue, S.E.
Suite 1804 West Tower
Atlanta, GA 30334

   **Re:**   ***ANTE LITEM NOTICE AND PRESENTATION OF CLAIM***
        ***AGAINST COBB COUNTY SHERIFF'S OFFICE***

   ***Our Clients:***   Estate of Kevil Wingo, Tiffany Wingo, Kieara
             Wingo, Erika Wingo, and Kevil Wingo, Jr.
   ***Matter Number:*** WING-19-10-01543
   ***Dates of Injury:***  September 28-29, 2019

Dear Sirs/Madams:

   Please be advised that our law firm represents Mr. Kevil Wingo's Family, including his sister Tiffany Wingo, daughter Kieara Wingo, daughter Erika Wingo, son Kevil Wingo, Jr., and the Estate of Kevil Wingo (hereinafter collectively referred to as the "Estate") against the Cobb County Sheriff's Office, Cobb County Sheriff Neil Warren, and Cobb County Sheriff's Officers including, but not limited to Major B Harris, Sergeant Gordon, Deputy Wilkerson, Deputy White, Deputy Marshall, Deputy Sewodor, Deputy Mack, Deputy Davis, Deputy Mejia, and Deputy S Hicks . Our claims relate to the injuries and death of Kevil Wingo (D.O.B. 12/18/1982 and SOID #000833191) while an inmate at the Cobb County Adult Detention Center (hereinafter referred to as "CCADC") at 1825 County Services Parkway, SW, Marietta, GA, 30008, from September 23, 2019 through September 29, 2019.  You are hereby put on notice:



June 5, 2020
Page **2** of **3**

A)     Mr. Wingo died at CCADC on September 29, 2019.  The cause of Mr. Wingo's death was "Complications of Perforated Gastric Ulcer with Peritonitis".  This condition could have been easily treated had Mr. Wingo been taken to an emergency room after his repeated requests at CCADC.

Mr. Wingo was first detained at CCADC on September 23, 2020 and began experiencing severe stomach pains, nausea, severe sweats and instability on September 28, 2019.  Mr. Wingo voiced his complaints to Cobb County Sheriff's Officers, and he was eventually taken to the jail infirmary where his complaints and repeated requests to go the emergency room were ignored.

In the morning hours of September 29, 2019, Mr. Wingo was barely able to walk and again cried for help to the jail's medical staff and officers.  The nursing staff refused to evaluate and/or examine Mr. Wingo and wanted him removed from the infirmary so that they did not have to hear his cries for help or see his pain.  Cobb County Sheriff's Officers, knowing that Mr. Wingo was in severe distress and unable to walk removed Mr. Wingo from the infirmary in violation of Cobb County Sheriff's Office Policies and Procedures and placed Mr. Wingo in an isolation cell reserved for suicidal inmates.

Cobb County Sheriff Officers observing Mr. Wingo unable to walk used a wheelchair to dump Mr. Wingo's almost lifeless body into an isolation cell located outside the infirmary. The officers then stripped Mr. Wingo of his clothes leaving him naked; threw a green suicide smock on his back; placed two cups of Styrofoam water cups in his cell; and left Mr. Wingo to die.  Mr. Wingo did not show any signs of life again about 10 minutes after the officers left his cell.  Mr. Wingo's lifeless body was not discovered until almost an hour after the officers dumped him to die.

Based on Mr. Wingo's isolated cell housing and medical status, Cobb County Sheriff's Officers were to monitor Mr. Wingo's isolated cell on a staggered timed interval in accordance with Cobb County Sheriff's Office Policies and Procedures.  The officers failed to monitor Mr. Wingo and therefore did not attempt any life saving measures on Mr. Wingo until about an hour after he appeared lifeless.  Cobb County Sheriff's Office also did not use proper medical equipment to save Mr. Wingo's life either because (1) the officers were either not trained on how to use the equipment properly, (2) failed to use the equipment properly, or (3) the equipment was not maintained properly and did not work.

Cobb County Sheriff's Office failed to provide Mr. Wingo appropriate medical care and did nothing to save Mr. Wingo's life after having several opportunities to do so. The officers never should have taken Mr. Wingo out of the infirmary and put him in an isolated cell thereby withholding necessary medical care Mr. Wingo needed.

June 5, 2020
Page **3** of **3**

An Estate, Survivorship and Wrongful Death Claim will be brought arising out of the death of Kevil Wingo. The basis for the claim will be violation of State laws including negligence, cruelty to inmates, violation of Cobb County Sheriff's Office Ministerial Duties and Policies and Procedures, and Federal Claims pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of Mr. Wingo's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment and be accorded due process under the United States Constitution. Cobb County Sheriff's Office and its officers further violated Mr. Wingo's United States Constitutional 14th Amendment right to Due Process and to provide medical care to a detained but not convicted United States citizen.

B)     The nature of the losses our clients have and/or continue to suffer include, but are not limited to, wrongful death, conscious pain and suffering, survivorship claims, personal physical injury, pain and suffering, mental anguish including the apprehension of imminent death, lost wages, medical related expenses, funeral expenses, punitive damages, cost of litigation, attorneys' fees plus additional estate and wrongful death claims.

C)     The amount of the loss claimed is fifty million dollars ($50,000,000.00).


Please accept this as the Estate's notice of claim and legal ante litem notice pursuant to O.C.G.A. § 36-11.1, et seq and O.C.G.A. § 50-21-26 et. Seq. with regard to all claims against Cobb County, the Cobb County Sheriff's Department, State of Georgia, and Cobb County Sheriff Neil Warren and his deputies. Please review this notice and contact me so that we may determine if this matter can be amicably resolved or if we need to file suit.

Thank you for your time and attention to this matter.


Very truly,

GARDNER TRIAL ATTORNEYS

Timothy J. Gardner

3100 Cumberland Blvd., Suite 1470 | Atlanta, Georgia 30339
(770) 693-8202 | inquiries@gardnertrialattorneys.com | gardnertrialattorneys.com

September 03, 2020

Dear Customer,

The following is the proof-of-delivery for tracking number: 770639753586

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Receptionist/Front Desk |
| Signed for by: | K.NORELL | Delivery Location: | 185 ROSWELL STREET NE |
| Service type: | FedEx Standard Overnight | | MARIETTA, GA, 30060 |
| Special Handling: | Deliver Weekday;<br>Adult Signature Required | Delivery date: | Jun 8, 2020 09:27 |

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 770639753586 | Ship Date: | Jun 5, 2020 |
| | | Weight: | 0.5 LB/0.23 KG |

**Recipient:**
Sheriff Neil Warren, Cobb County Sheriff's Office
185 Roswell Street, NE
MARIETTA, GA, US, 30060

**Shipper:**
Timothy Gardner, Gardner Trial Attorneys, LLC
3100 Cumberland Blvd.
Suite 1470
Atlanta, GA, US, 30339

**Reference**                    WING-19-10-01543



Thank you for choosing FedEx



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

September 03, 2020

Dear Customer,

The following is the proof-of-delivery for tracking number: 770640182134

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Receptionist/Front Desk |
| Signed for by: | G.MIDDLETON | Delivery Location: | 2 MLK JR DR SE 1804 |
| Service type: | FedEx Standard Overnight | | ATLANTA, GA, 30334 |
| Special Handling: | Deliver Weekday;<br>Adult Signature Required | Delivery date: | Jun 8, 2020 08:22 |

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 770640182134 | Ship Date: | Jun 5, 2020 |
| | | Weight: | 0.5 LB/0.23 KG |

Recipient:
Risk Management Division, Department of Administrative Servic
200 Piedmont Avenue, S.E.
Suite 1804 West Tower
ATLANTA, GA, US, 30334

Shipper:
Timothy Gardner, Gardner Trial Attorneys, LLC
3100 Cumberland Blvd.
Suite 1470
Atlanta, GA, US, 30339

Reference                WING-19-10-01543



Thank you for choosing FedEx



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

September 03, 2020

Dear Customer,

The following is the proof-of-delivery for tracking number: 770640070311

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Receptionist/Front Desk |
| Signed for by: | J.TRAN | Delivery Location: | 100 CHEROKEE ST 350 300 |
| Service type: | FedEx Standard Overnight | | MARIETTA, GA, 30090 |
| Special Handling: | Deliver Weekday;<br>Adult Signature Required | Delivery date: | Jun 8, 2020 10:10 |

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 770640070311 | Ship Date: | Jun 5, 2020 |
| | | Weight: | 0.5 LB/0.23 KG |

**Recipient:**
Mike Boyce, Commission Chairman, Cobb County Board of Commissioners
100 Cherokee Street
MARIETTA, GA, US, 30090

**Shipper:**
Timothy Gardner, Gardner Trial Attorneys, LLC
3100 Cumberland Blvd.
Suite 1470
Atlanta, GA, US, 30339

**Reference**            WING-19-10-01543



Thank you for choosing FedEx



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

September 03, 2020

Dear Customer,

The following is the proof-of-delivery for tracking number: 770640154053

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Receptionist/Front Desk |
| Signed for by: | J.TRAN | Delivery Location: | 100  CHEROKEE ST  350 300 |
| Service type: | FedEx Standard Overnight | | MARIETTA, GA, 30090 |
| Special Handling: | Deliver Weekday;<br>Adult Signature Required | Delivery date: | Jun 8, 2020 10:10 |

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 770640154053 | Ship Date: | Jun 5, 2020 |
| | | Weight: | 0.5 LB/0.23 KG |

**Recipient:**
H. William Rowling, Jr., Esq., Cobb County Attorneys Office
100 Cherokee Street
Suite 350
MARIETTA, GA, US, 30090

**Shipper:**
Timothy Gardner, Gardner Trial Attorneys, LLC
3100 Cumberland Blvd.
Suite 1470
Atlanta, GA, US, 30339

**Reference**          WING-19-10-01543



Thank you for choosing FedEx



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

DOCKET 175

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIFFANY WINGO as Administrator )
Of the Estate of KEVIL WINGO, )
SR., *et al.* )
 )
    Plaintiffs, )
 )
v. )    CIVIL ACTION FILE NO:
 )    1:20-CV-03662-VMC
MAJOR BRANSON HARRIS, )
Individually, *et al.* )
    Defendants. )

**ANSWER AND DEFENSES OF DEFENDANTS BRANSON HARRIS,
CHARLES GORDON, PAUL WILKERSON, BRITTON MCPHEE, AND
LYNDA MARSHALL TO PLAINTIFFS' THIRD AMENDED COMPLAINT**

COME NOW Defendants Branson Harris, Charles Gordon, Paul Wilkerson, Britton McPhee, and Lynda Marshall (hereinafter "Defendants") and hereby submit their Answer and Defenses to Plaintiffs' Third Amended Complaint ("Complaint") (Doc. 166), showing the Court as follows:

**FIRST DEFENSE**

In whole or in part, Plaintiffs' Third Amended Complaint fails to state a claim for relief against Defendants and should therefore be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## SECOND DEFENSE

Plaintiffs' alleged § 1983 claims against Defendants in their individual capacities are barred as Defendants are entitled to qualified immunity.

## THIRD DEFENSE

Plaintiffs' alleged state-law claims against Defendants in their individual capacities are barred by the doctrine of official act immunity as Defendants were acting solely in their official capacity with respect to all of Plaintiffs' alleged claims.

## FOURTH DEFENSE

Plaintiffs' claims do not support a claim for relief under 42 U.S.C. §1983, as any deprivation alleged therein does not rise to the level of a constitutional or federal law violation.

## FIFTH DEFENSE

Plaintiffs' alleged claims under 42 U.S.C. §1983 are barred because Plaintiffs have failed to plead same with the specificity required to state a cause of action.

## SIXTH DEFENSE

Defendants breached no duty to the Plaintiffs and/or to Kevil Wingo, Sr.

**SEVENTH DEFENSE**

Any injuries or damages allegedly sustained by the Plaintiffs and/or Kevil Wingo, Sr. were not directly or proximately caused by any action or inaction of Defendants.

**EIGHTH DEFENSE**

To the extent as may be shown by the evidence through discovery, Plaintiffs' alleged claims for injuries and damages are barred in whole or in part because of the actions and activities of Kevil Wingo, Sr. which contributed in whole or in part to Plaintiffs' alleged injuries or damages.

**NINTH DEFENSE**

To the extent as may be shown by the evidence through discovery, Plaintiffs' alleged claims for injuries and damages are barred in whole or in part because of the actions and activities of others which contributed in whole or in part to Plaintiffs' alleged injuries or damages.

**TENTH DEFENSE**

To the extent as may be shown by the evidence through discovery, any loss or damage allegedly suffered by Plaintiffs was the direct and proximate result of Kevil Wingo, Sr.'s conduct and/or conduct of others for which Defendants are not liable.

## ELEVENTH DEFENSE

Plaintiffs' alleged claims against Defendants are barred because they acted in good faith and without malice at all times relevant to Plaintiffs' allegations.

## TWELFTH DEFENSE

To the extent as may be shown by the evidence through discovery, any loss or damage allegedly suffered by Plaintiffs was caused by Kevil Wingo, Sr.'s failure to exercise ordinary care.

## THIRTEENTH DEFENSE

Defendants have not violated any rights, privileges or immunities under the Constitution or laws of the United States or the State of Georgia or any political subdivision thereof, nor have Defendants violated any act of Congress providing for the protection of civil rights.

## FOURTEENTH DEFENSE

Defendants assert any and all affirmative defenses set forth in Rule 8(c)(1) of the Federal Rules of Civil Procedure that are or may hereafter be applicable to this action. Defendants reserve the right to plead and prove such other defenses as may become known to them during the course of their investigation and discovery.

## FIFTEENTH DEFENSE

To the extent as may be shown by the evidence through discovery, all or some Plaintiffs may lack standing to assert some or all of the claims against Defendants.

## SIXTEENTH DEFENSE

The imposition of punitive damages against Defendants would violate their rights under the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and the Georgia Constitution.

## SEVENTEENTH DEFENSE

These Defendants respond to the individually numbered paragraphs of Plaintiffs' Third Amended Complaint as follows:

ANSWER TO: "PARTIES"

1.

Defendants can neither admit nor deny the allegations in paragraph 1 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

2.

Responding to the allegations in paragraph 2 of Plaintiffs' Third Amended

Complaint, Defendants admit only that Kevil Wingo, Sr. died at the Cobb County

Adult Detention Center on September 29, 2019. Defendants deny the remaining

allegations in paragraph 2 of Plaintiffs' Third Amended Complaint.

3.

The allegations in paragraph 3 of Plaintiffs' Third Amended Complaint

contain conclusions of law to which no response is required. To the extent a

response is required, Defendants deny the allegations in paragraph 3 of Plaintiffs'

Third Amended Complaint in the form and manner alleged.

4.

Defendants admit the allegations in paragraph 4 of Plaintiffs' Third

Amended Complaint.

5.

Defendants admit the allegations in paragraph 5 of Plaintiffs' Third

Amended Complaint.

6.

Defendants admit the allegations in paragraph 6 of Plaintiffs' Third

Amended Complaint.

7.

Defendants admit the allegations in paragraph 7 of Plaintiffs' Third
Amended Complaint.

8.

Defendants admit the allegations in paragraph 8 of Plaintiffs' Third
Amended Complaint.

9.

Defendants admit the allegations in paragraph 9 of Plaintiffs' Third
Amended Complaint.

10.

Defendants admit the allegations in paragraph 10 of Plaintiffs' Third
Amended Complaint.

11.

Defendants admit the allegations in paragraph 11 of Plaintiffs' Third
Amended Complaint.

12.

Defendants admit the allegations in paragraph 12 of Plaintiffs' Third
Amended Complaint.

13.

Defendants admit the allegations in paragraph 13 of Plaintiffs' Third Amended Complaint.

14.

Responding to the allegations in paragraph 14 of Plaintiffs' Third Amended Complaint, Defendants admit that they acted within the exercise of State authority within the meaning of 42 U.S.C. § 1983 at all times relevant to Plaintiffs' Third Amended Complaint. Defendants can neither admit nor deny the allegations in paragraph 14 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

15.

Defendants can neither admit nor deny the allegations in paragraph 15 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

<u>ANSWER TO: "JURISDICTION AND VENUE"</u>

16.

The allegations in paragraph 16 of Plaintiffs' Third Amended Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants admit that Plaintiffs have brought claims pursuant to 42 U.S.C. §§ 1983 and 1988, as well as the Eighth and Fourteenth Amendments of the United States Constitution, but deny that they have violated any of Plaintiffs' constitutional rights. Defendants admit that jurisdiction is proper against them. Defendants deny any remaining allegations in paragraph 16 of Plaintiffs' Third Amended Complaint.

17.

The allegations in paragraph 17 of Plaintiffs' Third Amended Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants admit the allegations in paragraph 17 of Plaintiffs' Third Amended Complaint.

18.

Defendants admit the allegations in paragraph 18 of Plaintiffs' Third Amended Complaint.

19.

Responding to the allegations in paragraph 19 of Plaintiffs' Third Amended Complaint, Defendants admit that they are subject to the jurisdiction of this Court. Defendants can neither admit nor deny the allegations in paragraph 19 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

20.

Defendants can neither admit nor deny the allegations in paragraph 20 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

21.

The allegations in paragraph 21 of Plaintiffs' Third Amended Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants state that Exhibit A to Plaintiffs' Third Amended Complaint speaks for itself. Defendants deny any remaining allegations in paragraph 21 of Plaintiffs' Third Amended Complaint.

ANSWER TO: "FACTUAL BACKGROUND"

22.

On information and belief, Defendants admit the allegations in paragraph 22 of Plaintiffs' Third Amended Complaint.

23.

Defendants admit the allegations in paragraph 23 of Plaintiffs' Third Amended Complaint.

24.

Responding to the allegations in paragraph 24 of Plaintiffs' Third Amended Complaint, Defendants admit that Kevil Wingo, Sr. was in Three-South of the Cobb County Adult Detention Center on September 28, 2019. Defendants can neither admit nor deny the remaining allegations in paragraph 24 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

25.

Responding to the allegations in paragraph 25 of Plaintiffs' Third Amended Complaint, Defendants admit that Kevil Wingo, Sr. was moved to Four-South of the Cobb County Adult Detention Center on September 28, 2019. Defendants can

neither admit nor deny the remaining allegations in paragraph 25 of Plaintiffs'
Third Amended Complaint for lack of sufficient information to form a belief as to
the truth thereof such that said allegations are denied, and put Plaintiffs upon strict
proof of the same.

26.

Defendants can neither admit nor deny the allegations in paragraph 26 of
Plaintiffs' Third Amended Complaint for lack of sufficient information to form a
belief as to the truth thereof such that said allegations are denied, and put Plaintiffs
upon strict proof of the same.

27.

Defendants can neither admit nor deny the allegations in paragraph 27 of
Plaintiffs' Third Amended Complaint for lack of sufficient information to form a
belief as to the truth thereof such that said allegations are denied, and put Plaintiffs
upon strict proof of the same.

28.

Defendants can neither admit nor deny the allegations in paragraph 28 of
Plaintiffs' Third Amended Complaint for lack of sufficient information to form a
belief as to the truth thereof such that said allegations are denied, and put Plaintiffs
upon strict proof of the same.

29.

Responding to the allegations in paragraph 29 of Plaintiffs' Third Amended Complaint, Defendants deny that Appleby reported any information regarding Mr. Wingo's condition to McPhee. Further responding, Defendants can neither admit nor deny the remaining allegations in paragraph 29 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

30.

Defendants can neither admit nor deny the allegations in paragraph 30 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

31.

Defendants can neither admit nor deny the allegations in paragraph 31 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

32.

Responding to the allegations in paragraph 32 of Plaintiffs' Third Amended Complaint, Defendants admit only that Deputy McPhee did not call an ambulance for Mr. Wingo. Further responding, Defendants can neither admit nor deny the allegations in paragraph 32 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

33.

Defendants can neither admit nor deny the allegations in paragraph 33 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

34.

Defendants admit the allegations in paragraph 34 of Plaintiffs' Third Amended Complaint.

35.

Defendants can neither admit nor deny the allegations in paragraph 35 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a

belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

36.

Defendants deny as stated the allegations in paragraph 36 of Plaintiffs' Third Amended Complaint.

37.

Defendants can neither admit nor deny the allegations in paragraph 37 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

38.

Defendants deny the allegations in paragraph 38 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

39.

Defendants deny the allegations in paragraph 39 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

40.

Defendants deny the allegations in paragraph 40 of Plaintiffs' Third Amended Complaint.

41.

Defendants deny as stated the allegations in paragraph 41 of Plaintiffs' Third Amended Complaint.

42.

Defendants deny as stated the allegations in paragraph 42 of Plaintiffs' Third Amended Complaint.

43.

Defendants deny the allegations in paragraph 43 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

44.

Defendants can neither admit nor deny the allegations in paragraph 44 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

45.

Defendants deny the allegations in paragraph 45 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

46.

Defendants admit the allegations in paragraph 46 of Plaintiffs' Third Amended Complaint.

47.

Defendants can neither admit nor deny the allegations in paragraph 47 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

48.

Defendants deny the allegations in paragraph 48 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

49.

Defendants deny the allegations in paragraph 49 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

50.

Responding to the allegations in paragraph 50 of Plaintiffs' Third Amended Complaint, Defendants admit only that at or around 7:31 a.m. on September 29, 2019, Defendant Gordon entered the infirmary and saw Mr. Wingo on the floor in front of the nurses' station. Defendants deny the remaining allegations in

paragraph 50 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

51.

Defendants can neither admit nor deny the allegations in paragraph 51 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

52.

Defendants admit the allegations in paragraph 52 of Plaintiffs' Third Amended Complaint.

53.

Defendants admit the allegations in paragraph 53 of Plaintiffs' Third Amended Complaint.

54.

Defendants deny the allegations in paragraph 54 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

55.

Defendants deny the allegations in paragraph 55 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

56.

Defendants deny the allegations in paragraph 56 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

57.

Defendants deny the allegations in paragraph 57 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

58.

Defendants admit the allegations in paragraph 62 of Plaintiffs' Third Amended Complaint.

59.

Defendants deny the allegations in paragraph 59 of Plaintiffs' Third Amended Complaint.

60.

Defendants deny the allegations in paragraph 60 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

61.

Defendants deny the allegations in paragraph 61 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

62.

Defendants deny the allegations in paragraph 62 of Plaintiffs' Third Amended Complaint.

63.

Defendants deny the allegations in paragraph 63 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

64.

Defendants can neither admit nor deny the allegations in paragraph 64 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

65.

Defendants deny the allegations in paragraph 65 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

66.

Defendants admit the allegations in paragraph 66 of Plaintiffs' Third Amended Complaint.

67.

Defendants deny the allegations in paragraph 67 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

68.

Defendants deny the allegations in paragraph 68 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

69.

Responding to the allegations in paragraph 69 of Plaintiffs' Third Amended Complaint, Defendants admit that neither Major Harris nor Lt. Gordon took Mr. Wingo back to the infirmary or called for an ambulance to take Mr. Wingo to the hospital. Defendants can neither admit nor deny the remaining allegations in paragraph 69 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

70.

Defendants admit the allegations in paragraph 70 of Plaintiffs' Third Amended Complaint.

71.

Defendants can neither admit nor deny the allegations in paragraph 71 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

72.

Defendants admit the allegations in paragraph 72 of Plaintiffs' Third Amended Complaint.

73.

Defendants admit the allegations in paragraph 73 of Plaintiffs' Third Amended Complaint.

74.

Defendants admit the allegations in paragraph 74 of Plaintiffs' Third Amended Complaint.

75.

Defendants admit the allegations in paragraph 75 of Plaintiffs' Third Amended Complaint.

76.

Defendants deny the allegations in paragraph 76 of Plaintiffs' Third Amended Complaint.

77.

Defendants can neither admit nor deny the allegations in paragraph 77 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

78.

Defendants deny the allegations in paragraph 78 of Plaintiffs' Third Amended Complaint.

79.

Defendants admit the allegations in paragraph 79 of Plaintiffs' Third Amended Complaint.

80.

Defendants can neither admit nor deny the allegations in paragraph 80 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

81.

Defendants deny the allegations in paragraph 81 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

82.

Responding to the allegations in paragraph 82 of Plaintiffs' Third Amended Complaint, Defendants state that CCADC's written policies speak for themselves, and Defendants deny the allegations in paragraph 86 of Plaintiffs' Third Amended Complaint to the extent they do not accurately represent the CCADC's written policies.

83.

Defendants deny the allegations in paragraph 83 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

84.

Defendants can neither admit nor deny the allegations in paragraph 84 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

85.

Defendants deny the allegations in paragraph 85 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

86.

Defendants admit the allegations in paragraph 86 of Plaintiffs' Third Amended Complaint.

87.

Defendants admit the allegations in paragraph 87 of Plaintiffs' Third Amended Complaint.

88.

Defendants can neither admit nor deny the allegations in paragraph 88 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

89.

Defendants can neither admit nor deny the allegations in paragraph 89 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

ANSWER TO: "COUNT I
VIOLATION OF SECTION 42 U.S.C. SECTION 1983—ALL DEFENDANTS—
DELIBERATE INDIFFERENCE"

90.

Defendants incorporate as if fully set forth herein all defenses and responses to Paragraphs 1-89 of Plaintiffs' Third Amended Complaint.

91.

The allegations in paragraph 91 of Plaintiffs' Third Amended Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 91 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

92.

The allegations in paragraph 92 of Plaintiffs' Third Amended Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 92 of Plaintiffs' Third Amended Complaint in the form and manner alleged, and admit only that their actions in addressing Kevil Wingo, Sr.'s medical care were under color of state law.

93.

The allegations in paragraph 93 of Plaintiffs' Third Amended Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 93 of Plaintiffs' Third Amended Complaint in the form and manner alleged, and admit only that their actions in addressing Kevil Wingo, Sr.'s medical care were under color of state law.

94.

Defendants can neither admit nor deny the allegations in paragraph 94 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

95.

Defendants deny the allegations in paragraph 95 of Plaintiffs' Third Amended Complaint.

96.

Defendants deny the allegations in paragraph 96 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 96 of Plaintiffs' Third Amended Complaint with

respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

97.

Defendants deny the allegations in paragraph 97 of Plaintiffs' Third Amended Complaint, in the form and manner alleged, with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 97 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

98.

Defendants deny the allegations in paragraph 98 of Plaintiffs' Third Amended Complaint, in the form and manner alleged, with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 98 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

99.

Defendants deny the allegations in paragraph 99 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 99 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

100.

Defendants deny the allegations in paragraph 100 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 100 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

101.

Defendants deny the allegations in paragraph 101 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 101 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a

belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

102.

Defendants deny the allegations in paragraph 102 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 102 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

103.

Defendants deny the allegations in paragraph 103 of Plaintiffs' Third Amended Complaint.

104.

Defendants deny the allegations in paragraph 104 of Plaintiffs' Third Amended Complaint.

105.

Responding to the allegations in paragraph 105 of Plaintiffs' Third Amended Complaint, Defendants admit the allegations with respect to Lt. Gordon and deny the allegations with respect to Major Harris.

- 30 -

106.

Defendants deny the allegations in paragraph 106 of Plaintiffs' Third Amended Complaint.

107.

Defendants deny the allegations in paragraph 107 of Plaintiffs' Third Amended Complaint.

108.

Defendants deny the allegations in paragraph 108 of Plaintiffs' Third Amended Complaint.

109.

Defendants deny the allegations in paragraph 109 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 109 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

110.

Defendants deny the allegations in paragraph 110 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor

deny the allegations in paragraph 110 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

<u>ANSWER TO: "COUNT II—NEGLIGENCE—MAJOR BRANSON HARRIS, LIEUTENANT CHARLES GORDON, DEPUTY LYNDA MARSHALL, DEPUTY BRITTON MCPHEE AND DEPUTY PAUL WILKERSON"</u>

111.

Defendants incorporate as if fully set forth herein all defenses and responses to Paragraphs 1-110 of Plaintiffs' Third Amended Complaint.

112.

The allegations in paragraph 112 of Plaintiffs' Third Amended Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 112 of Plaintiffs' Third Amended Complaint.

113.

Defendants deny the allegations in paragraph 113 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

114.

Defendants deny the allegations in paragraph 114 of Plaintiffs' Third Amended Complaint in the form and manner alleged.

115.

Responding to the allegations in paragraph 115 of Plaintiffs' Third Amended Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 115 of Plaintiffs' Third Amended Complaint to the extent they misrepresent the CCSO policies and procedures.

116.

Responding to the allegations in paragraph 116 of Plaintiffs' Third Amended Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 116 of Plaintiffs' Third Amended Complaint to the extent they misrepresent the CCSO policies and procedures.

117.

Responding to the allegations in paragraph 117 of Plaintiffs' Third Amended Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 117 of Plaintiffs' Third

Amended Complaint to the extent they misrepresent the CCSO policies and procedures.

118.

Responding to the allegations in paragraph 118 of Plaintiffs' Third Amended Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 118 of Plaintiffs' Third Amended Complaint to the extent they misrepresent the CCSO policies and procedures.

119.

Responding to the allegations in paragraph 119 of Plaintiffs' Third Amended Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 119 of Plaintiffs' Third Amended Complaint to the extent they misrepresent the CCSO policies and procedures.

120.

Defendants deny the allegations in paragraph 120 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 120 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a

belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

121.

Responding to the allegations in paragraph 121 of Plaintiffs' Third Amended Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 121 of Plaintiffs' Third Amended Complaint to the extent they misrepresent the CCSO policies and procedures.

122.

Defendants can neither admit nor deny the allegations in paragraph 122 of Plaintiffs' Third Amended Complaint for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs upon strict proof of the same.

123.

Responding to the allegations in paragraph 123 of Plaintiffs' Third Amended Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 123 of Plaintiffs' Third Amended Complaint to the extent they misrepresent the CCSO policies and procedures.

- 35 -

124.

Responding to the allegations in paragraph 124 of Plaintiffs' Third Amended Complaint, Defendants state that the CCSO "Request for Placement in Close Observation" form speaks for itself. Defendants deny the allegations in paragraph 150 of Plaintiffs' Third Amended Complaint to the extent they misrepresent the CCSO policies and procedures and related forms.

125.

Responding to the allegations in paragraph 125 of Plaintiffs' Third Amended Complaint, Defendants state that the CCSO "Request for Placement in Close Observation" form speaks for itself. Defendants deny the allegations in paragraph 151 of Plaintiffs' Third Amended Complaint to the extent they misrepresent the CCSO policies and procedures and related forms.

126.

Responding to the allegations in paragraph 126 of Plaintiffs' Third Amended Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 126 of Plaintiffs' Third Amended Complaint to the extent they misrepresent the CCSO policies and procedures.

127.

Defendants deny the allegations in paragraph 127 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 127 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

128.

Responding to the allegations in paragraph 128 of Plaintiffs' Third Amended Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 128 of Plaintiffs' Third Amended Complaint to the extent they misrepresent the CCSO policies and procedures.

129.

Responding to the allegations in paragraph 129 of Plaintiffs' Third Amended Complaint, Defendants state that the CCSO policies and procedures speak for themselves. Defendants deny the allegations in paragraph 129 of Plaintiffs' Third Amended Complaint to the extent they misrepresent the CCSO policies and procedures.

130.

Defendants deny the allegations in paragraph 130 of Plaintiffs' Third Amended Complaint.

131.

Defendants deny the allegations in paragraph 131 of Plaintiffs' Third Amended Complaint.

132.

Defendants deny the allegations in paragraph 132 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 132 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

133.

Defendants deny the allegations in paragraph 133 of Plaintiffs' Third Amended Complaint.

134.

Defendants deny the allegations in paragraph 134 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor

deny the allegations in paragraph 134 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

## ANSWER TO: "COUNT III—PUNITIVE DAMAGES AND ATTORNEYS' FEES"

### 135.

Defendants incorporate as if fully set forth herein all defenses and responses to Paragraphs 1-134 of Plaintiffs' Third Amended Complaint.

### 136.

Defendants deny the allegations in paragraph 136 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 136 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

### 137.

Defendants deny the allegations in paragraph 137 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 137 of Plaintiffs' Third Amended Complaint

with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

138.

Defendants deny the allegations in paragraph 138 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 168 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

139.

Defendants deny the allegations in paragraph 139 of Plaintiffs' Third Amended Complaint with respect to themselves. Defendants can neither admit nor deny the allegations in paragraph 139 of Plaintiffs' Third Amended Complaint with respect to the other Defendants for lack of sufficient information to form a belief as to the truth thereof such that said allegations are denied, and put Plaintiffs on strict proof of the same.

140.

Defendants deny the allegations in paragraph 140 of Plaintiffs' Third Amended Complaint.

## ANSWER TO: "BAD FAITH AND STUBBORN LITIGIOUSNESS"

141.

Defendants incorporate as if fully set forth herein all defenses and responses to Paragraphs 1-140 of Plaintiffs' Third Amended Complaint.

142.

Defendants deny the allegations in paragraph 142 of Plaintiffs' Third Amended Complaint.

143.

Defendants deny the allegations in paragraph 143 of Plaintiffs' Third Amended Complaint.

## ANSWER TO: "DAMAGES"

144.

Defendants deny the allegations in paragraph 144 of Plaintiffs' Third Amended Complaint.

## ANSWER TO: "JURY TRIAL DEMANDED"

### 145.

Responding to the allegations in paragraph 145 of Plaintiffs' Third Amended Complaint, Defendants admit that Plaintiffs have demanded a jury trial.

### 146.

Responding to the unnumbered paragraph of Plaintiffs' Third Amended Complaint following paragraph 145 and beginning "WHEREFORE," and constituting Plaintiffs' prayer for relief, Defendants deny all allegations and further deny that Plaintiffs are entitled to any of the relief requested from them in form, type, or amount, under any theory at law or in equity.

### 173.

Except as expressly admitted, denied, or otherwise responded to, Defendants deny all allegations in Plaintiffs' Third Amended Complaint.

WHEREFORE, having fully listed its defenses and having fully answered the complaint, Defendants pray as follows:

(a) That the judgment be entered in favor of Defendants and against the Plaintiffs on the complaint;

(b) That the costs of this action, including attorneys' fees, be cast against Plaintiffs; and

(c) That the Court grant such other relief as it may deem just and proper.

## DEFENDANTS DEMAND A TRIAL BY JURY

Respectfully submitted, this 9th day of May, 2023.

**COBB COUNTY ATTORNEY'S OFFICE**

*/s/ Lauren S. Bruce*
Lauren S. Bruce
*Assistant County Attorney*
Georgia Bar No. 796642
Lauren.bruce@cobbcounty.org
H. William Rowling
*County Attorney*
Georgia Bar No. 617225
William.rowling@cobbcounty.org

100 Cherokee Street, Suite 350
Marietta, GA 30090
770-528-4000 (telephone)
770-528-4010 (facsimile)

**FREEMAN MATHIS & GARY, LLP**

*/s/ Wesley C. Jackson*
Sun S. Choy
Georgia Bar No. 025148
schoy@fmglaw.com
Wesley C. Jackson
Georgia Bar No. 336891
wjackson@fmglaw.com
Marisa M. Beller
Georgia Bar No. 845893
marisa.beller@fmglaw.com

100 Galleria Parkway

- 43 -

Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing

**<u>ANSWER AND DEFENSES OF DEFENDANTS BRANSON HARRIS,
CHARLES GORDON, PAUL WILKERSON, BRITTON MCPHEE, AND
LYNDA MARSHALL TO PLAINTIFFS' THIRD AMENDED COMPLAINT</u>**

to the Clerk of Court using the CM/ECF system which will automatically send

electronic mail notification of such filing to counsel of record who are CM/ECF

participants and via United States Postal Service postage prepaid to:

Timothy J. Gardner
Gardner Trial Attorneys, LLC
3100 Cumberland Blvd.
Suite 1470
Atlanta, GA 30339

This 9th day of May, 2023.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Wesley C. Jackson*
Wesley C. Jackson
Georgia Bar No. 336891
wjackson@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

DOCKET 191-4

Tiffany Wingo, et al. vs Former Cobb County Sheriff Neil Warren, et al.
Deputy Lynda Marshall                                    September 15, 2022

---

Page 2

```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF GEORGIA
                   ATLANTA DIVISION
TIFFANY WINGO as Administrator
of the Estate of KEVIL WINGO,
SR., KIEARA WINGO, as surviving
child of KEVIL WINGO, SR.,
ANGEL CALLOWAY, as mother and
next friend of ERIKA WINGO,
surviving minor child of KEVIL
WINGO, SR., and FATIMA THOMAS,
as mother and next friend of
KEVIL WINGO, JR., surviving
minor child of KEVIL WINGO, Sr.,
        Plaintiffs,        CIVIL ACTION FILE
     vs.                   NO. 1:20-CV-03662-VMC
FORMER COBB COUNTY SHERIFF NEIL
WARREN, individually, FORMER
COBB COUNTY CHIEF DEPUTY SHERIFF
SONYA ALLEN, individually, MAJOR
BRANSON HARRIS, individually,
LIEUTENANT  CHARLES GORDON,
individually, DEPUTY PAUL WILKERSON,
individually, DEPUTY BRITTON MCPHEE,
individually, DEPUTY LYNDA MARSHALL,
individually, JOHN DOES 1-10, and JANE
DOES 1-10,
        Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~
           VIDEOTAPED DEPOSITION OF
             DEPUTY LYNDA MARSHALL
              September 15, 2022
                  8:57 a.m.
              100 Galleria Parkway
                  Suite 1600
               Atlanta, Georgia
           Joel P. Moyer, CCR 2745
```

1    APPEARANCES OF COUNSEL
2  On behalf of the Plaintiffs:
3    TIMOTHY J. GARDNER, Esquire
       Gardner Trial Attorneys, LLC
4      3100 Cumberland Boulevard
       Suite 1470
5      Atlanta, Georgia 30339-5939
       (770) 693-8202
6      tjg@gardnertrialattorneys.com
7  On behalf of the Defendants Major Branson Harris,
   Lieutenant Charles Gordon, Deputy Paul Wilkerson,
8  Deputy Britton McPhee, Deputy Lynda Marshall:
9    SUN S. CHOY, Esquire
       KATHRYN M. WHITE, Esquire
10     Freeman Mathis & Gary, LLP
       100 Galleria Parkway
11     Suite 1600
       Atlanta, Georgia 30339
12     (770) 818-0000
       schoy@fmglaw.com
13     kathryn.white@fmglaw.com
14  On behalf of the Defendants Former Sheriff Neil
    Warren, and Former Chief Deputy Sheriff
15  Sonya Allen:
16     BRIAN R. DEMPSEY, Esquire
       Carothers & Mitchell LLC
17     1809 Buford Highway
       Buford, Georgia 30518
18     (770) 932-3552
       brian.dempsey@carmitch.com
19
    Videographer:
20
       Brian Stephens
21
22
23
24
25

---

Page 3

1         INDEX TO EXAMINATIONS
2  WITNESS:  DEPUTY LYNDA MARSHALL
3  EXAMINATION                      PAGE
4  By Mr. Gardner                      4
5
              - - -
6
7
       INDEX TO PREVIOUSLY MARKED EXHIBITS
8
   PLAINTIFF'S EXHIBITS              PAGE
9
   Exhibit 4    2-06-04.00 Emergency Medical Care   96
10
   Exhibit 7    Request for Placement in Close  120
11              Observation, blank
12 Exhibit 10   Offender Management System excerpt  121
                for Kevil Wingo
13
14
15 (Plaintiff's Exhibits listed above were marked in
16 prior depositions and therefore copies have not
17 been attached.)
18
19
20
21
22
23
24
25

---

Page 4

1  Videotaped deposition of DEPUTY LYNDA MARSHALL
2           September 15, 2022
3         THE VIDEOGRAPHER:  We are on the
4  record.  Today's date is September 15th, 2022, and
5  the time is approximately 8:57 a.m.
6         This will be the videotaped deposition
7  of Lynda Marshall.  Will the attorneys present
8  please state their names and whom they represent.
9         MR. GARDNER:  Timothy Gardner for the
10 plaintiffs.
11         MR. CHOY:  Sun Choy and Kathryn White
12 on behalf of Defendants Britton McPhee, Lynda
13 Marshall, Charles Gordon, Branson Harris, and Paul
14 Wilkerson.
15         MR. DEMPSEY:  Brian Dempsey for
16 Defendants Neil Warren and Sonya Allen.
17         THE VIDEOGRAPHER:  Will the court
18 reporter please swear the witness.
19         DEPUTY LYNDA MARSHALL,
20 having been first duly sworn, was examined and
21 testified as follows:
22             EXAMINATION
23 BY MR. GARDNER:
24    Q     Can you please state your name for the
25 record?

Elizabeth Gallo
COURT REPORTING, LLC

Tiffany Wingo, et al. vs Former Cobb County Sheriff Neil Warren, et al.
Deputy Lynda Marshall                                        September 15, 2022

Page 17

1  odd -- odd jobs.  I think right now he works at
2  GameStop.
3      Q      You communicate with them regularly?
4      A      Oh, yes, sir.
5      Q      You ever talk to them about this case?
6      A      No, not really.
7      Q      Are you married now?
8      A      No, sir.
9      Q      Were you married in September of 2019?
10     A      No, sir.
11     Q      Do you have any formal medical
12  training?
13     A      Formal medical training?
14     Q      Yes.
15     A      No, sir, just first aid that we get.
16     Q      When you say first aid that you get,
17  what do you mean by that?
18     A      The first aid classes.
19     Q      First aid classes from the jail?
20     A      Yes.
21     Q      Or where?
22     A      Yes.  They -- we -- we get sent to
23  training for first aid, basic first aid, actually.
24     Q      Yes.  Any other medical training
25  outside of basic first aid?

Page 18

1      A      No, sir.
2      Q      And when you say "basic first aid,"
3  what do you mean by that?
4      A      They teach you CPR, like shock, heat
5  problems.
6      Q      I missed the last.
7      A      Heat problems.
8      Q      Heat?
9      A      Yeah, like just a basic.  Cuts, burns.
10     Q      Is that all you can remember?
11     A      Pretty much.  I mean, it's just the
12  basic class.
13     Q      Where do you currently work?
14     A      I'm retired.
15     Q      And are you retired from the Cobb
16  County Sheriff's Office?
17     A      I did.
18     Q      Sorry?
19     A      Yes, sir.
20     Q      How long did you work there?
21     A      A little over 27 years.
22     Q      And when did you retire?
23     A      April the 28th of this year.
24     Q      During the 27 years that you worked at
25  the Cobb County Sheriff's Office, did you have any

Page 19

1  other jobs?
2      A      Part-times through the sheriff's
3  office.
4      Q      Okay.  What does than mean?
5      A      Like security, you know, at the bowling
6  alley, that kind of thing.
7      Q      Okay.  So you would work security every
8  now and then for different places?
9      A      Occasionally.
10     Q      Anything else outside of security?
11     A      No, sir.
12     Q      No.  27 years ago, taking us back to --
13  sheesh, a long time.  It's in the '90s; right?
14     A      '95.
15     Q      '95?
16     A      Yes, sir.
17     Q      Is that when you started there, in
18  1995?
19     A      Yes, sir.
20     Q      Do you remember what month you started
21  there?
22     A      January.
23     Q      Did you have a job before you started
24  at the sheriff's office?
25     A      Yes, sir.

Page 20

1      Q      Where did you work before that?
2      A      I don't remember.  Right before, I
3  don't...
4      Q      Do you recall any of the jobs you've
5  had outside of the sheriff's office and doing
6  security at different places while you worked at
7  the sheriff's office?
8      A      The -- are you asking what jobs I've
9  held other than being a deputy sheriff?
10     Q      Yes, ma'am.
11     A      I've been in management at the movie
12  store.
13     Q      Okay.
14     A      And fast food restaurants.
15     Q      Anything else?
16     A      Mostly fast food.
17     Q      Is that all you can recall right now?
18     A      Yes, sir.
19     Q      No other law enforcement positions
20  outside of the sheriff's office?
21     A      No, sir, just through the sheriff's
22  office like at -- like I said, at the skating rink
23  and at the apartment complex for the first little
24  bit.
25     Q      Okay.

Tiffany Wingo, et.al. vs Former Cobb County Sheriff Neil Warren, et al.
Deputy Lynda Marshall                                    September 15, 2022

Page 137

1  you were working at the Cobb County Sheriff's
2  Office; correct?
3      A    Yes, sir.
4      Q    And you were working in the morning?
5      A    Yes, sir.
6      Q    You started your shift at 6:00 a.m.?
7      A    Yes, sir.
8      Q    And you were work -- you were assigned
9  to the infirmary?
10     A    Yes, sir.
11     Q    Do you know Kevil Wingo?
12     A    I know the name --
13     Q    Okay.
14     A    -- obviously.
15     Q    How do you know the name?
16     A    From the jail.
17     Q    Do you recall an incident involving
18  Kevil Wingo?
19     A    Yes, sir.
20     Q    What -- what do you recall?
21     A    He was an inmate that died while in our
22  custody.
23     Q    Anything else?
24     A    Just dealings throughout the morning
25  with him.

Page 138

1      Q    Can you kind of go over that for me?
2  What are the dealings that you had?  Like just tell
3  me everything you remember about it.
4      A    He was in the infirmary for detox.  He
5  hollered throughout the morning that he needed to
6  go to the hospital, and said he couldn't breathe.
7  It had been passed on that he had gotten into
8  folks', inmate -- other inmates in the cell blocks'
9  belongings.
10         I had been told that by inmates when I
11  pulled them for first appearance.  I tried to talk
12  to him at one point trying to ask what he meant,
13  you know, because I had said, if you are talking to
14  me, you are breathing, but what do you mean?  Is it
15  hard to breathe?  Hurt to breathe?
16         He just said, I cannot breathe.  I need
17  to go to the hospital.
18         And I turned and told the nurses.  I
19  was told that he was just trying to go to the
20  hospital, he was detoxing, drug seeking, that he
21  was okay.
22         At one point I was told that they were
23  fixing to fight in the cell he was in, so I went to
24  get him out.  When I went to open the door, he was
25  leaning on it.  And I don't know if he fell or if

Page 139

1  he was -- came out, went down playingly, but he
2  went down on the ground.  And he sat there, and he
3  stated again he wanted to go to the hospital.
4         I told the nurses.  But at this time, I
5  called the supervisor and let him know what was
6  going on because I couldn't put him back in there.
7  The inmates were threatening to hurt him if I did.
8      Q    What happened after that?
9      A    A supervisor came down, talked to him a
10  little bit, put him in a chair, helped him get to a
11  chair.  They eventually decided that he would go to
12  the extension pad on close obs.
13     Q    Then what happened?
14     A    They took him to the extension.
15     Q    Then after that?
16     A    I wasn't in the extension, but escort
17  him to the extension.
18     Q    So you didn't have any contact with him
19  after that?
20     A    No, sir.
21     Q    So after Mr. Wingo left the infirmary
22  to the extension, you didn't have any more contact
23  with him?
24     A    No, sir.
25     Q    Okay.  You said they made a decision to

Page 140

1  put him on close obs?
2      A    Annaleen, the nurse, the chief -- head
3  nurse, whatever it's called, charge nurse, had said
4  that they could put him on close obs.  I had no
5  room in the infirmary, and I had somebody already
6  in my pad, so that was a decision for someone else
7  to decide where he needed to go or where he could
8  go.
9      Q    Someone other than you?
10     A    Someone other than me.
11     Q    Okay.  Who made that decision of where
12  he went?
13     A    I do not know.  I do know that the
14  sergeant had me call the major.  The major came
15  down.  He spoke with Annaleen, or Nurse Visser.
16  And then he was placed and taken -- they decided --
17  I guess they, he -- I do not know.  I was not the
18  one making that decision.
19     Q    Did the major make the decision to send
20  him to close obs?
21     A    No.  Annaleen -- well, I don't know who
22  made that -- Annaleen wanted him put on close obs.
23     Q    All right.  Do you know if the major
24  made the decision to put him on -- to take him to
25  close obs?

Tiffany Wingo, et.al. vs Former Cobb County Sheriff Neil Warren, et al.
Deputy Lynda Marshall                                                September 15, 2022

---

Page 145

1    A    Yes.
2    Q    And that's where the padded cell is
3  located?
4    A    Uh-huh (affirmative).
5    Q    All right.  And that padded cell there,
6  is that -- was that a close observation cell?
7    A    Yes.
8    Q    So Britton McPhee, what did he tell you
9  about Mr. Wingo?  What did he pass on to you?
10 Sorry.
11   A    He told me that he had been hollering,
12 that he had to go -- needed to go to the hospital,
13 that he was disruptive.  He said the nurses said
14 he's just detoxing which is the same thing my -- my
15 nurses had said.
16        He did tell me that he had eaten that
17 morning but that he had been getting into the other
18 inmates' stuff.  He did say to watch because there
19 was some tension in there.  And that's what I --
20   Q    Okay.  Did he tell you that he had
21 eaten all of his food?
22   A    If I'm not mistaken, he did.
23   Q    When Deputy McPhee told you those
24 things, did you go and look at Mr. Wingo's cell?
25 Did you evaluate things?  Did you do anything after

---

Page 146

1  you received that information?
2    A    After a pass-on, we always have to do a
3  round just to verify, you know, A, the count and
4  just sort of check things out.  At that time, if
5  I'm not mistaken, I don't -- I honestly don't know
6  what was going on in that cell.  But had there been
7  a issue, obviously, I would have done something,
8  but most people were sleeping about that time.
9    Q    Okay.  Did you ever approach
10 Mr. Wingo's cell that morning?
11   A    Yes, sir.
12   Q    Okay.  What did you approach his
13 cell -- when was the first time you approached his
14 cell?
15   A    When I did the rounds.
16   Q    Okay.  Did you -- when you did the
17 rounds, did you have to stop at his cell in
18 particular for any reason, or did everything appear
19 to be okay or...
20   A    During the security rounds, I honestly
21 don't remember.  I did have to go to his cell
22 7:30-ish to pull out folks for first appearance.
23   Q    Okay.  Prior to that, did you ever have
24 to open his cell or speak to anyone in his cell?
25   A    I don't remember, sir.

---

Page 147

1    Q    Okay.  So you started at 6:00, and you
2  can recall going to his cell at 7:30 for first
3  appearance?
4    A    Yes.  I had to pull somebody out --
5    Q    Pull someone out for first appearance?
6    A    Uh-huh (affirmative).
7    Q    Did you hear Mr. Wingo at all during
8  that period of time?
9    A    Yes.
10   Q    Okay.  When you say "yes," what do you
11 mean by you heard him?
12   A    He was hollering.
13   Q    And when he was hollering, what was he
14 saying?
15   A    He couldn't breathe, I want to -- that
16 he wanted to go to the hospital.
17   Q    And that was before you went to get
18 someone out for first appearance?
19   A    Uh-huh (affirmative).
20   Q    So you could hear him through his cell?
21   A    Uh-huh (affirmative).
22   Q    Yes?
23   A    Yes, sir.
24   Q    Okay.  About how frequently was he
25 hollering that he couldn't breathe and that he

---

Page 148

1  wanted to go to the hospital before you went up to
2  his cell for first appearance?
3    A    I -- I don't know how frequently.  I
4  mean, at least a few times.
5    Q    Was it loud?
6    A    Yes, sir.
7    Q    Was he saying anything else?
8    A    No, sir.
9    Q    When he -- when you heard him hollering
10 a few times before you approached his cell at
11 around 7:30-ish, was he on the intercom, or was it
12 just him vocalizing and you were able to hear it
13 through his -- through the cell windows?
14   A    I think it was just through this --
15 doors, windows.
16   Q    In the cell that Mr. Wingo was in
17 the infirmary, I think it was Cell Number 8.  Do
18 you remember?
19   A    Uh-huh, yes.  It was 8.
20   Q    It was 8.  Is there an emergency
21 distress button in there?
22   A    Yes, sir.
23   Q    Okay.  And that emergency distress
24 button transmits to the nursing station?
25   A    Yes, sir.

---

Tiffany Wingo, et al. vs Former Cobb County Sheriff Neil Warren, et al.
Deputy Lynda Marshall                                    September 15, 2022

---

Page 149

1    Q      And then the nurses can communicate or
2  whoever can communicate with the inmates through
3  that --
4    A      Yes.
5    Q      -- station?
6    A      Yes, sir.
7    Q      Do you know if Mr. Wingo had pressed
8  that emergency distress button?
9    A      I do not know, sir.
10   Q      Is that something you can hear when
11 they do that?
12   A      Yes, if the nurses -- I could hear if
13 they were talking to him.  I do not recall them --
14 I don't know.
15   Q      Okay.  When Mr. Wingo was hollering
16 that he couldn't breathe and wanted to go to the
17 hospital prior you going to his cell around
18 7:30-ish, did anyone respond to those statements?
19   A      I did.  I talked to him.  I asked him,
20 because I talked to the nurses.  I told them that
21 he was -- what he was saying.
22          But I also tried to ask him as far as
23 when he's saying he's not breathing, describe, you
24 know -- I said, because you are breathing because
25 you are speaking.  But is it hard to breathe?  Does

---

Page 150

1  it hurt to breathe?  I tried to get him to describe
2  it so I could give them more information.
3          All he could tell me is, I cannot
4  breathe.  I want to go to the hospital.  So that's
5  all I could tell them.
6    Q      So prior to you approaching his cell
7  for first appearance, you went to his cell to speak
8  to him?
9    A      I'm not sure if I spoke to him when I
10 was there or before.  I don't remember exactly.
11 But I was talking to him about that because I asked
12 him, but he would not describe anything.
13   Q      How long into your shift did you first
14 start hearing Mr. Wingo make the statements that he
15 couldn't breathe and wanted to go to the hospital?
16   A      I don't know what time he started.
17   Q      Okay.  Was it shortly after?
18   A      Not too long, but I don't have a time
19 frame.  I don't --
20   Q      Okay.
21   A      I don't know.
22   Q      Did you see any of the nurses respond
23 to those statements when he said that he couldn't
24 breathe and needed to go -- or wanted to go to the
25 hospital?

---

Page 151

1    A      No, sir.
2          MR. GARDNER:  You need a break?
3          MR. CHOY:  I'm good.
4          MR. GARDNER:  Okay.
5          MR. CHOY:  Thanks.  Appreciate it.
6  BY MR. GARDNER:
7    Q      So the first time I saw you -- I looked
8  at the videos too, naturally.  And you've seen the
9  videos as well; right?
10   A      I don't know how long of them,
11 but I've --
12   Q      Okay.
13   A      I've seen --
14   Q      Did you watch the -- from the time that
15 you started until the time that you first went to
16 the cell?  It's like an hour and a half, from 6:00
17 to 7:30.  Did you watch all that time?
18   A      The whole time?  No, sir.
19   Q      No.  Okay.
20          You recall going up to his cell
21 around -- I have it at around 6 -- 7:26.
22   A      Okay.
23   Q      Okay.  I can show you.  You want me to
24 show you?
25   A      I mean, no.  I believe -- because

---

Page 152

1  that's probably when I was fixing to get him ready
2  to pull first appearance.
3    Q      I'm going refer to it eventually
4  anyway, so I might as well pull it up.
5    A      Okay --
6    Q      You know what I'm saying?  So...
7          I'm pulling up Video IPC 035, which is
8  the nurses station-3-L136-092919 06.00.00_MPEG,
9  which was produced to me by the Cobb County
10 Sheriff's Office.  And this is one view of the
11 nurses station on September 29.  Is that the
12 nurses station in the infirmary in that video?
13   A      Can I turn it --
14   Q      Yeah, yeah.  Turn it.  Make yourself
15 comfortable.  You want us to turn it to you?
16          MR. CHOY:  You need to --
17   A      That's good.  I just need to be able to
18 see it.
19 BY MR. GARDNER:
20   Q      Well, maybe not that far because now my
21 videographer can't see what we're doing.
22   A      Oh, I'm sorry.
23   Q      Does that work for you?
24   A      That's fine.
25   Q      Does that work for you, Deputy

---

Tiffany Wingo, et.al. vs Former Cobb County Sheriff Neil Warren, et al.
Deputy Lynda Marshall                                    September 15, 2022

Page 157

1  morning?
2      A      No, sir.
3      Q      Do you know what he was at the door
4  for?
5      A      Probably to talk and say he wasn't
6  breathing.
7      Q      Okay.  And --
8      A      Or wanted to go to the hospital, either
9  way.
10     Q      Okay.  And did you stop doing what
11 you're doing for first appearance and address those
12 comments?
13     A      Not until after I had everybody
14 secured.
15     Q      Okay.  So you had to make sure that
16 this inmate for first appearance was secure before
17 you spoke to Mr. Wingo?
18     A      At that time, yes.  I was securing an
19 inmate.
20     Q      Okay.
21     A      Although -- okay.  Go ahead.
22     Q      No.  I'm just going to play it from
23 7:28:34.  Okay?  Did you see that at 7:28:39?
24     A      No, sir.
25     Q      Did you see it in the video?

Page 158

1      A      I saw it in the video, yes, sir.
2      Q      Okay.  What did you see in the video?
3      A      It appeared that Mr. Wingo fell.
4      Q      Okay.  Did it appear that he fainted?
5      A      It appeared like it.  I don't know.  I
6  did not see it at the time, no.
7      Q      Okay.  Did that -- what you saw in the
8  video, did that look voluntary, or did it look --
9  could you tell if it was voluntary or involuntary?
10     A      I don't know what -- I don't know.
11     Q      Okay.  Did you hear him fall?
12     A      No, I did not.
13     Q      Okay.  So at this point at 7:28:52, you
14 moved the inmate to sit down and wait for first
15 appearance?
16     A      Uh-huh (affirmative).
17     Q      And where do you go?
18     A      Probably if it's...
19     Q      Do you know where you went?
20     A      Depending on the time, I could be going
21 to do a round or I -- because you have to do the
22 close obs rounds every -- so I could be doing a --
23 getting -- to go do a round.
24     Q      Okay.
25     A      I don't -- I don't know what I was

Page 159

1  doing at that time.
2      Q      Was the first appearance inmate secured
3  at that point?  After you put the restraints on
4  them and sat them down, was the first appearance
5  inmate secured?
6      A      That one was, yes.
7      Q      Okay.  Did you go back to Mr. Wingo's
8  cell to talk to him at that point about the
9  statements he made with respect to not being able
10 to breathe and wanting to go to the hospital?
11     A      I don't -- I don't know.  I don't
12 remember.
13     Q      Well, do you see --
14     A      I do --
15     Q      -- yourself do that --
16     A      Not -- not yet.  I know at one point
17 they said they were fixing to fight, and I went
18 ahead and pulled him out.
19     Q      Right.  I'm not talking about then
20 though.  Independent of that, outside of that,
21 right after you secured the inmate, did you go back
22 to Mr. Wingo's cell to talk to him about his
23 statements that he was making when he was at the
24 door?
25     A      Not immediately, no, sir.

Page 160

1      Q      Okay.  Let's play it from 7:29:21.  Did
2  you see Mr. Wingo knock on the door there at
3  7:29:27?
4      A      I see it on the video.
5      Q      Yeah.  Were you able to hear that when
6  you were in there?
7      A      I don't know.  I would have responded
8  had I.
9      Q      Okay.  So you must not have heard it?
10     A      I would assume not.
11     Q      Okay.  I'm going to play it from 7:29.
12 Did you see that at 7:29:30?
13     A      On the video, yes, sir.
14     Q      Okay.  And what did you see at 7:29:30?
15     A      It looked as though he fell or fainted
16 or tripped.
17     Q      Okay.  He may have tripped right there?
18     A      I don't -- I don't know because he was
19 right there near the beds.  I don't know.
20     Q      Was he standing straight up and then
21 went straight back?
22     A      I don't know if he went straight back.
23     Q      Okay.
24     A      I couldn't see that.
25     Q      Okay.  I'll just play it for you again

Tiffany Wingo, et al. vs Former Cobb County Sheriff Neil Warren, et al.
Deputy Lynda Marshall                                          September 15, 2022

Page 161

```
 1   then.  I'm just going to press play, I guess.
 2              Did you see it that time at 7:29:30?
 3       A    I don't know if he went straight back
 4   or not, to be honest.
 5       Q    Okay.
 6       A    Even -- even looking at it.
 7       Q    Yeah.  You couldn't -- you can't tell
 8   from that video?
 9       A    I can't tell, no, sir.
10       Q    When you were there, did you see him
11   fall that second time?
12       A    No, sir.
13       Q    Do you remember where you were at that
14   time?
15       A    Probably over near the desk.  Or,
16   again, at that time I could have been doing a round
17   or -- I don't know.
18       Q    Okay.
19       A    But I do know that --
20       Q    All right.  I'll just continue to play
21   it from there.
22       A    The nurse and --
23       Q    Is that you there at 7:29:45?
24       A    Yes, that is me.
25       Q    Okay.  And are you approaching
```

Page 162

```
 1   Mr. Wingo's cell?
 2       A    Yes.
 3       Q    Why are you approaching his cell at
 4   that time?
 5       A    Because they said that he was going to
 6   fight.  They were going to fight.
 7       Q    Okay.  And do you know why they were
 8   going to fight?
 9       A    No.  The nurse just said that they're
10   fixing to fight.
11       Q    And so --
12       A    So I went to go see what was going on,
13   go to talk to them.
14       Q    Okay.  And what did you see?
15       A    They were standing up.  They were
16   yelling.
17       Q    Okay.
18       A    And I know, if I'm not mistaken, on my
19   way over I got on the radio, and that's probably
20   when I called for the sergeant.
21       Q    Okay.  Do you always call the sergeant
22   when you see someone fighting?
23       A    Well, probably, depending if I'm
24   working by myself, yeah.
25       Q    Okay.
```

Page 163

```
 1       A    If they're fixing to fight, I've got to
 2   have someplace to put folks.
 3       Q    Okay.  I'll just play it from 7:29:50.
 4   Are you talking to the inmates inside the cell at
 5   that point?
 6       A    Possibly.  And I was getting the lock
 7   off of the chain and talking on the radio, it
 8   looked like.
 9       Q    Okay.  But you're at the cell door at
10   that time; right?
11       A    Uh-huh (affirmative).
12       Q    And so -- I'll just play it from
13   7:29:57.  Did you see Mr. Wingo fall when you were
14   at the cell door?
15       A    No, sir, I didn't.
16       Q    But you had the door open at that time;
17   correct?
18       A    I did.
19       Q    And you were looking inside the cell?
20       A    No, sir.  It looked like I was
21   unlocking the chain.  I just was unlocking the
22   lock.
23       Q    So you had your head turned away from
24   the cell?
25       A    It looks like it, yes, sir.
```

Page 164

```
 1       Q    Okay.
 2       A    Because I didn't see him fall.
 3       Q    Were you able to hear him fall?
 4       A    I don't know.
 5       Q    Did he tell you that he had fell?
 6       A    He may have.  I don't know.  I don't
 7   remember him -- like I said, I don't know the -- I
 8   don't remember.  I know I was pulling him out.
 9       Q    You don't remember if he told you he
10   fell though?
11       A    I don't remember.
12       Q    Now, when you gave your statements to
13   the criminal investigation division and internal
14   affairs, that was much closer in time to this event
15   than when I'm questioning you right now; right?
16       A    Okay.
17       Q    Correct?
18       A    Oh, yes.
19       Q    And you understand those interviews
20   were recorded?
21       A    Oh, yes.
22       Q    Right.  Do you recall telling them that
23   Mr. Wingo told you that he fell?
24       A    I don't remember.  But if I -- if I
25   said it, then -- then he did.
```

Tiffany Wingo, et.al. vs Former Cobb County Sheriff Neil Warren, et al.
Deputy Lynda Marshall                                           September 15, 2022

---

Page 169

1    Q    Okay.  So when you opened the door, did
2  he go to the ground?
3    A    Yes, sir.
4    Q    Okay.  And was he on the ground?
5    A    Yes, sir.
6    Q    Did he stay on the ground until
7  Sergeant Gordon came?
8    A    Yes, sir.
9    Q    And you said that he sat up, or did he
10 lay on the ground?
11   A    I do not remember, but I think he
12 eventually sat up.
13   Q    Okay.
14   A    I think he laid there for a minute, but
15 I do not remember a hundred percent.
16   Q    All right.  But he did lay there in
17 front of you?
18   A    Yes, sir.
19   Q    Okay.  And when he laid there in front
20 of you, did he tell you he was having difficulty
21 breathing?
22   A    He said he wanted to go to the
23 hospital.
24   Q    Okay.  Did he tell you he was having
25 difficulty breathing?

---

Page 170

1    A    At that time, I do not know.  He may
2  have.
3    Q    Okay.
4    A    There's a good possibility because he
5  had said that a lot.
6    Q    And did the nurses come over and check
7  him out at that time?
8    A    No, sir.
9    Q    Okay.  Did you tell the nurses they
10 need to come over and check him out?
11   A    No, sir.  I told the nurses that he is
12 still saying he has -- he can't breathe, wants to
13 go to the hospital.
14   Q    Okay.  Did anyone do anything for him
15 medically while he was laying on the floor in front
16 of you?
17   A    No.  None of the nurses did anything.
18   Q    Okay.  Did any security personnel do
19 anything for him medically --
20   A    For him medically?
21   Q    -- while he was laying on the floor?
22 Yes.
23   A    No, sir.
24   Q    Did anyone do any first aid for him?
25   A    No, sir.

---

Page 171

1    Q    Okay.  Did you attempt to help him off
2  the floor when he went to the -- down on the floor
3  in front of you?
4    A    No, sir.  Sergeant Gordon helped him
5  up.
6    Q    Was Mr. Wingo, when he went to the
7  floor after you opened up the cell door, was he
8  doing anything else other than just laying there?
9    A    Yeah.  He was trying to grab somebody's
10 pitcher of Gatorade or water.  I don't know what
11 was in it.
12   Q    Okay.  So you're saying -- you're
13 saying that he was trying to grab someone's
14 pitcher?
15   A    He did grab someone's pitcher of -- I
16 don't know if it was Gatorade or water.  But when
17 they're detoxing, they give them a little pitcher
18 to give them extra fluids.
19   Q    And what did he do with that pitcher?
20   A    Tried -- started -- well, he was going
21 to start drinking it.  And I told him -- because
22 somebody was yelling at him.  But it wasn't his, so
23 I took it away from him.
24   Q    So you removed -- you took it from him?
25   A    Yes.

---

Page 172

1    Q    And what did you do with the pitcher?
2    A    I set it to the side.
3    Q    Where?
4    A    But -- honestly, I don't know if it was
5  outside the cell or inside the cell, but I had told
6  the other inmate I would get him some more later.
7    Q    So you grabbed the pitcher, and then
8  you took it and put it somewhere?
9    A    Probably off to the side, yes.
10   Q    Okay.  Because Mr. Wingo had took it
11 from someone?
12   A    From somebody else.
13   Q    Right.  And then what was the reason
14 for calling Sergeant Gordon?
15   A    Because they were fixing to fight.
16   Q    Okay.  Now, you had seen Mr. Wingo in
17 the infirmary before; correct, before this day?
18   A    Yes, sir.
19   Q    Okay.  When was the last time you saw
20 him in the infirmary?
21   A    It was like the week before or the time
22 before when we worked, and our schedule is weird.
23   Q    Yeah.
24   A    So it's -- it could have been just two
25 days before or three days before, something.

---

Tiffany Wingo, et.al. vs Former Cobb County Sheriff Neil Warren, et al.
Deputy Lynda Marshall                                    September 13, 2022

Page 173

1    Q      Sometime within the last week?
2    A      Yes, sir.
3    Q      Okay.  What was he in the -- was he in
4  the infirmary when you saw him last?
5    A      Yes.
6    Q      What was he in the infirmary for?
7    A      Detox.
8    Q      Did he get discharged from the
9  infirmary?
10   A      Yes, sir.
11   Q      And where did he get discharged to?
12   A      Population.
13   Q      Do you know how long he was in the
14 infirmary when you saw him before?
15   A      No, sir.
16   Q      How many days?
17   A      No, sir.
18   Q      Okay.  Do you know if he had been in
19 there since the time he had been admitted?
20   A      I do not know, sir.
21   Q      You've seen other detoxing patients get
22 discharged from the infirmary?
23   A      Yes, sir.
24   Q      Is it normal for them to get detoxed
25 and then come back down to the infirmary?

Page 174

1    A      Normal?  No.  Has that happened?  Yes.
2    Q      Okay.  Is it your understanding that
3  detoxing is a medical condition?
4    A      Yes, sir.
5    Q      Okay.  And do you -- do you understand
6  that people have had adverse reactions when they're
7  detoxing?
8    A      Yes, sir.
9    Q      Do you understand that detoxing could
10 kill you?
11   A      I did not know that.  I know you can
12 have seizures and stuff like that, or so I'm told.
13 I don't know everything having to do with it.
14   Q      Could detoxing lead to a medical
15 emergency as defined in the policies and procedures
16 that I showed you?
17   A      Yes, sir.
18   Q      Okay.
19   A      It could.
20   Q      Is detoxing something that you need to
21 watch?
22   A      Yes, sir.
23   Q      Now, when Sergeant Gordon came in, you
24 were standing above Mr. Wingo?
25   A      Above or beside, near.

Page 175

1    Q      You were near Mr. Wingo?
2    A      Probably.
3    Q      Yeah.  Was Mr. Wingo's behavior unusual
4  to you?
5    A      Define "unusual."
6    Q      Well, you define "unusual."  What does
7  "unusual" mean to you?
8    A      Well, to -- I mean, he acted -- I have
9  seen people act like that detoxing.  He acted as
10 though he was a person detoxing.
11   Q      Yeah.  So you've seen like actively
12 detoxing or at the end stage, the beginning stage,
13 or do you know the differences?
14   A      I do not know the differences, but
15 I've -- when I've been working in the infirmary and
16 they say he's detoxing, I have seen stumbling.  I
17 have seen, you know, slurring of words.  I've seen,
18 you know, unsteady.  Actually, there have been
19 seizures.
20          I mean, it -- I -- but I don't know
21 what stage any of that is or what that means.  They
22 say he's detoxing.  If something happens like that
23 or if they're unsteady, they say, well, that's
24 because he's detoxing.  I -- you know, again, I
25 don't know, but that's what I've been told.

Page 176

1    Q      Have you seen people faint from
2  detoxing?
3    A      Faint?  Stumble, I guess.  I have seen
4  that.  I have seen them act out.
5    Q      So you've seen them faint?
6    A      I don't know if I've seen them faint,
7  but I have seen them act out.  I've seen --
8    Q      Have you seen them fall to the ground
9  from detoxing?
10   A      I've seen them stumble, yes.
11   Q      So you have seen them fall to the
12 ground?
13   A      I've seen them stumble, yes.  If they
14 fall all the way -- sometimes they catch
15 themselves.
16   Q      Okay.  But you've seen them go all the
17 way to the ground from detoxing?
18   A      I have.
19   Q      Okay.  And in those situations, did
20 medical come and check the person out or do
21 anything for them?
22   A      I'll -- I let them know, and then it
23 depends on the nurse.  Sometimes if they get up
24 right away, they're like, I'm okay, they'll ask did
25 they hit their head or anything like that.  If they

Case 1:20-cv-03662-VMC  Document 191-4  Filed 07/11/23  Page 45 of 83
Tiffany Wingo, et al. vs Former Cobb County Sheriff Neil Warren, et al.
USCA11 Case: 24-10933  Document: 31-1  Date Filed: 06/11/2024  Page: 236 of 238
Deputy Lynda Marshall                                    September 15, 2022

Page 177

1  haven't hit their head and they're just stumbling
2  around, they don't always come, no.
3      Q    Is detoxing a medical -- a serious
4  medical issue?
5      A    That's up to medical.  I don't know
6  what it would be considered.
7      Q    Okay.  Is it a medical issue?
8      A    It is a medical issue.
9      Q    Can you distinguish a serious medical
10 issue from a medical issue that's not serious?
11 Like is there a difference to you, or you don't
12 know because you don't have any medical training?
13     A    I'm not sure what you're looking for.
14 As far as a serious medical issue, if I think
15 somebody's having a seizure, I call a code blue.
16     Q    Okay.
17     A    If I -- you know, that kind of -- to me
18 that's serious, but I don't know how serious
19 seizures are to people.  But I know it's something
20 I would call a code blue for.
21     Q    Right.  Well, a seizure's a medical
22 emergency as defined in the policies; right?
23     A    Right.
24     Q    And so I guess what I'm asking you:
25 Are you able to tell the difference between

Page 178

1  something that's serious and not serious that may
2  not rise to the level of medical emergency?
3      A    I don't know, sir.  I don't --
4      Q    Well, a moment ago you just told me you
5  don't know if detoxing is a serious medical issue.
6  That's up to medical.
7      A    I mean, I know it's a medical issue,
8  yes.
9      Q    Okay.  Is it a serious medical issue?
10     A    I don't know.  I know -- I think it can
11 be.  Whether it is, I don't know.
12     Q    Okay.  But it can be a serious medical
13 issue?
14     A    I think so.
15     Q    When Sergeant Gordon came in, was
16 Mr. Wingo still lying on the ground?  You want me
17 to show you -- you know what I mean?  Would you
18 prefer if I show you?
19     A    Sure.
20     Q    I mean, I can do that.  I'm going to
21 show you a different angle.
22          What time are we at there?  It's
23 7:30:58.  Okay.
24          So this is a different view of the
25 nurses station, right, from Camera IPC 036.  Is

Page 179

1  that a different view of the nurses station?
2      A    Yes, sir.
3      Q    And that's on September 29th, 2019?
4      A    Yes, sir.
5      Q    Okay.  And that time starts at 6:00;
6  yes?
7      A    Yes.
8      Q    All right.  I'm going to take us to
9  7:30.
10          All right.  It's now 7:31:17.  Is
11 Sergeant Gordon coming in?
12     A    Yes, sir.
13     Q    All right.  And where is Mr. Wingo?
14     A    Oh, he just rolled out onto the floor.
15     Q    Okay.  So is he laying on the floor?
16     A    Yes, sir.
17     Q    All right.  Was he not on the floor
18 before?
19     A    Not like that, no, sir.
20     Q    Oh.  How was he before?
21     A    I mean, he -- he just rolled over.  I
22 don't -- like I said, I don't know exactly how he
23 was, but I just saw him roll into that position --
24     Q    Right.
25     A    -- when the sarge got there.

Page 180

1      Q    Do you think he's faking right there?
2      A    I have no idea.
3      Q    Do you think he's playing around?
4      A    I don't know.
5      Q    Do you think he's messing around?
6      A    According to the nurses, he is.
7      Q    Okay.  How about according to you from
8  what you observed right there?  Are you observing
9  him messing around?
10     A    From what the nurses told me, yes, it
11 would appear he is --
12     Q    Okay.
13     A    -- messing around.
14     Q    All right.  So when you --
15     A    From what they're saying, that he's
16 detoxing, he's just trying to -- yes.
17     Q    Okay.  So at this point right now, you
18 think he's just playing?
19     A    I don't know what he's saying to him.
20 I mean, I don't --
21     Q    Did you kneel down and try to hear him
22 better, or did you have any trouble hearing him?
23 Did you have any trouble hearing Mr. Wingo?
24     A    At that time, I don't -- I honestly
25 don't know if I was listening to what he was saying

Tiffany Wingo, et al. vs Former Cobb County Sheriff Neil Warren, et al.
Deputy Lynda Marshall                                        September 15, 2022

Page 185

1  close obs at this point?
2      A    I wasn't planning to send him.
3      Q    Was anyone planning to send him that
4  you know of at that point?
5      A    The nurse -- the nurse had said that he
6  could go.
7      Q    Okay.  And did Sergeant Gordon make the
8  decision that he could go at that time?
9      A    I don't -- I don't know if he made the
10  decision that he could go, but he told me to find
11  out where he could go, if there was a place in --
12  because I had no room.
13      Q    So Sergeant Gordon asked you to go find
14  someplace that he could go?
15      A    Well, he asked me to make the phone
16  call, so I called the extension.  And then if I'm
17  not mistaken, I had to call Major Harris.
18      Q    Okay.  And so, first, you called the
19  extension, and then you called Major Harris?
20      A    I believe so.
21      Q    What did you call the extension for?
22      A    To see if they had a pad available.
23      Q    And who did you speak to?  Did you
24  speak to anyone when you called the extension?
25      A    Yes, sir.

Page 186

1      Q    Who did you speak to?
2      A    Deputy Wilkerson.
3      Q    Okay.  Do you recall that conversation?
4      A    Yes, sir.
5      Q    What did you say to Deputy Wilkerson,
6  and what did he say to you?
7      A    I asked if he had a pad available, and
8  he did, so...
9      Q    Did you say anything else?
10      A    I did say that we had one that was
11  wanting to go to the hospital, was playing games.
12      Q    Anything else?
13      A    Yes, sir.  I called him an idiot --
14      Q    Okay.
15      A    -- because I was told he was playing
16  games, which it appeared he was at that time.
17      Q    Okay.  Did you say anything else?
18      A    No, sir.  I don't think so.
19      Q    What did Sergeant -- I mean, Deputy
20  Wilkerson say to you?
21      A    He -- he hemmed and hawed, but he
22  asked -- he did eventually say he had a pad
23  available.  He asked who it was for.  He asked if I
24  had somebody in my pad, which I did, and I told him
25  who.  He asked who.

Page 187

1      He asked if mental health was here, and
2  I said no.  I think that was the whole -- the
3  conversation, I think.
4      Q    All right.  So when you contacted
5  Deputy Wilkerson to find out if there was a -- you
6  were looking for a pad?
7      A    Uh-huh (affirmative).
8      Q    Yes?
9      A    Yes, sir.
10      Q    That's a padded cell; correct?
11      A    Correct.
12      Q    And that's where you-all wanted to
13  place Mr. Wingo for close observation?
14      A    It had been discussed, yes.
15      Q    Okay.  Discussed amongst you, Sergeant
16  Gordon, and the nurse?
17      A    Well, the nurse wanted to place him on
18  close obs.
19      Q    Okay.
20      A    I had nowhere to place him.  That was
21  going to be the only available place to put him.
22      Q    All right.  So the nurse wanted to put
23  him in close obs.
24      A    Correct.
25      Q    Correct?

Page 188

1      A    Right.
2      Q    And so then you and Sergeant Gordon
3  then made the decision to find out where you could
4  put him?
5      A    Where we could put him, yes.
6      Q    And then you found a padded cell --
7      A    Correct.
8      Q    -- in the infirmary extension?
9      A    Correct.
10      Q    And then it was determined that he
11  should go there?
12      A    Yes, I guess so.  That's how it works.
13      Q    Is that correct?
14      A    Yes, sir.
15      Q    When you contacted Deputy Wilkerson --
16      A    Yes, sir.
17      Q    -- you told him that you have an idiot
18  over there playing games.
19      A    Yes, sir.
20      Q    Correct?
21      A    Yes, sir.
22      Q    Why did you call Mr. Wingo an idiot?
23      A    Well, at that time, I had been told
24  he's detoxing, he's playing games, he's drug
25  seeking.  And essentially, that's the way he was

Tiffany Wingo, et al. vs Former Cobb County Sheriff Neil Warren, et al.
Deputy Lynda Marshall                                          September 15, 2022

Page 213

1    Q      Okay.  And to you, that was him playing
2  as he was falling because you were pushing on -- he
3  was pushing on the door when you opened it?
4    A      Right, like he was trying to push his
5  way out.  But when he -- and he knew I was fixing
6  to open the door, so...
7    Q      You also told Major Harris that he's
8  not and you were watching him?
9    A      Yes.
10   Q      All right.  So you had been watching
11 him throughout the time that he was in the
12 infirmary?
13   A      When possible, yes, sir.
14   Q      Okay.  And you watched him prior to
15 contacting Major Harris?
16   A      Yes, sir.
17   Q      Okay.  And so when you told him that
18 he's playing like he's falling but he's not because
19 you're watching him, that was that time period
20 before you contacted Major Harris?
21   A      Yes, sir.  I never saw him fall.
22   Q      But you were watching him?
23   A      Not -- okay.  I have other duties to
24 do.  He's not the only inmate down there.  So, no,
25 I was not sitting right there staring at him the

Page 214

1  entire time of my shift.
2    Q      All right.  You didn't tell Major
3  Harris he's playing like he's falling, but I
4  didn't -- I haven't seen him the entire time, so I
5  don't know?
6    A      I haven't seen him fall.
7    Q      Okay.  Have you told me about all the
8  conversations with Gordon that you can recall on
9  September 29?
10   A      I think so.
11   Q      Okay.  Now, at some point -- and let's
12 go back the video.  I'm going to go back to the
13 Nurses View 1 from the Camera IPC 035, and we'll go
14 back to when -- so it's 7:39, and that's about
15 eight, nine minutes or so after Sergeant Gordon
16 came down; is that correct?
17   A      Yes, sir.
18   Q      Do you want me to show you when
19 Sergeant Gordon -- he came down at 7:31.
20   A      Correct.
21   Q      Okay.  Is Mr. Wingo still on the floor
22 at that time?
23   A      Yes, sir.
24   Q      Is Sergeant Gordon getting him up now?
25   A      Yes, sir.

Page 215

1    Q      Do you know if Mr. Wingo was able to
2  stand up on his own?
3    A      Looks like Sergeant Gordon reached down
4  to get him -- you know, help pull him up.
5    Q      All right.  Do you know if he was able
6  to stand up on his own?
7    A      I don't know at that point if he -- I
8  mean, like I said, he reached down to help him.  I
9  don't know if he could have or not.
10   Q      All right.  Did you ask him if he could
11 stand up on his own?
12   A      No, sir.
13   Q      Did you ask Sergeant Gordon, hey, can
14 he stand up on his own?
15   A      No, sir.
16   Q      But you did see Sergeant Gordon get him
17 up?
18   A      Yes, sir.
19   Q      Okay.  Did you tell Major Harris that
20 Mr. Wingo had been on the ground for about nine
21 minutes?
22   A      No, sir.
23   Q      Is this Sergeant Gordon walking him
24 over to the chair?
25   A      Yes, sir.

Page 216

1    Q      That's at 7:40:26; yes?
2    A      Oh.  Yes, sir.
3    Q      Did -- how did Sergeant Gordon walk him
4  over to the chair?
5    A      He used the back of his shirt to guide
6  him across, walk him over.
7    Q      Is that how inmates are typically
8  transported from one area to another place, is you
9  grab the back of their shirt?
10   A      Not usually, no, sir.
11   Q      Okay.  How are inmates typically
12 transported?
13   A      Usually by an arm, sometimes arm and
14 shirt depending on, you know, how they're acting.
15   Q      Okay.  Do you know the reason Sergeant
16 Gordon grabbed him by the back of his shirt to take
17 him over to the chair?
18   A      No, sir.
19   Q      Were you critical of the way that he
20 grabbed Mr. Wingo and took him to the chair?
21   A      No, sir.
22   Q      Did it seem appropriate for the
23 circumstances?
24   A      I mean, I don't know why he did it, so
25 I can't -- I mean...